FILED
JUN 0 9 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person, | ) ) ) ) |
| Plaintiff, | ) ) 06CV3173 |
| vs. | ) JUDGE FILIP ) MAG. JUDGE VALDEZ ) |
| CITY OF CHICAGO, a Municipal corporation, and JOHN AND JANE DOES, Unknown Officers, Agents, Servants and/or Employees of the CHICAGO POLICE DEPARTMENT, | ) JURY TRIAL DEMANDED ) ) ) ) |
| Defendants. | ) |

## COMPLAINT AT LAW

Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, by her attorneys, JEFFREY SINGER, MISTY R. MARTIN and DAVID H. LEAVITT of SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD., and hereby files this Complaint at Law against Defendants, CITY OF CHICAGO and JOHN AND JANE DOES, unknown officers, agents, servants and/or employees of the CHICAGO POLICE DEPARTMENT, and states as follows:

### INTRODUCTION

1. This is a civil action seeking damages against the City of Chicago, and unknown Chicago police officers, who, while acting under the color of law, deprived Christina Rose Eilman of rights secured by the Constitution and laws of the United States, including the rights secured by the Fourteenth Amendment to the Constitution, and for related Illinois State-Law claims.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §1983, and the Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1341(3) and (4) and 1343, and the aforementioned constitutional and statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. §1367 to hear and decide claims arising out of state law.

## PARTIES

3. Plaintiff, KATHLEEN PAINE ("Plaintiff"), is a citizen of the United States, who currently resides in Chicago, Illinois and has permanent residence in Rocklin, California. Plaintiff sues as guardian of the estate of her adult daughter, CHRISTINA ROSE EILMAN, a citizen of the United States, a person domiciled in Los Angeles, California, but who currently is a resident of Chicago, Illinois. Plaintiff was appointed the Temporary Guardian of the Estate of Christina Rose Eilman, a disabled person, on June 5, 2006 by Circuit Court of Cook County. (*See* Order of Temporary Guardianship attached hereto as Exhibit A.)

4. Defendant, CITY OF CHICAGO, is a municipal corporation in Cook County, Illinois. The CITY OF CHICAGO operates a police department in Chicago, Illinois.

5. Defendants, JOHN AND JANE DOE CHICAGO POLICE OFFICERS, are unknown officers, agents, servants and/or employees of the CITY OF CHICAGO Police Department.

6. At all times relevant hereto, the JOHN AND JANE DOE CHICAGO POLICE OFFICERS were acting under color of law and pursuant to and furtherance of statutes,

2

ordinances, regulations, customs, policies and usages of the City of Chicago and the Chicago Police Department, and within the scope of their employment with the CITY OF CHICAGO.

## FACTS

7. CHRISTINA ROSE EILMAN ("Christina") is a twenty-one year old woman from Los Angeles, California. Christina suffers from a severe mental condition known as Bipolar Disorder.

8. Upon information and belief, Christina traveled to Chicago, Illinois, on or about May 5, 2006. On Saturday, May 6, 2006, Christina found herself stranded in Chicago, Illinois and lacked sufficient funds and the mental capacity to make travel arrangements to return home to California. Christina contacted her parents, Richard Paine ("Rick Paine") and Kathleen Paine ("Kathy Paine") seeking their assistance.

9. Christina's parents responded and immediately made arrangements for Christina to travel home to California the following afternoon. Specifically, Christina's parents arranged for Christina to take a Southwest Airlines flight from Midway Airport to Burbank Airport on Sunday, May 7, 2006.

10. Upon information and belief, Christina was detained that Sunday afternoon, May 7, 2006, by unknown officers, agents, servants and/or employees of the Chicago Police Department ("JOHN or JANE DOE CHICAGO POLICE OFFICER(S)") for allegedly creating a disturbance at a Chicago Transit Authority ("CTA") train station stop located at Midway Airport. JOHN or JANE DOE CHICAGO POLICE OFFICER or OFFICERS arrested Christina and placed her in the custody of the Chicago Police Department.

11. At the time of Christina's arrest, JOHN or JANE DOE CHICAGO POLICE OFFICERS were aware that Christina was not a resident of Illinois and was attempting to return home to California.

12. Upon information and belief, before and at the time of her arrest, JOHN or JANE DOE CHICAGO POLICE OFFICERS observed Christina behaving erratically and speaking incoherently.

13. Upon information and belief, Christina was then charged with misdemeanor "Criminal Trespass To Property", without probable cause to support such a criminal complaint.

14. Upon information and belief, after her arrest, Christina was taken to the City of Chicago's 8th District Chicago Lawn Police Station, located at 3515 West 63rd Street in Chicago, Illinois ("8th District Station").

15. Upon information and belief, Christina acted erratically and demonstrated abnormal behavioral symptoms while in police custody at the 8th District Station. Christina's erratic, disruptive and incoherent behavior was observed by CHICAGO POLICE OFFICERS at the 8th District Station.

16. Shortly after Christina's arrest, JANE DOE CHICAGO POLICE OFFICER notified Christina's parents of Christina's arrest and condition. In a voicemail message left for Kathy Paine, JANE DOE CHICAGO POLICE OFFICER, believed to be named "Officer Delcah", stated that Christina was difficult to understand and that she and other CHICAGO POLICE OFFICERS "did not know what they had on their hands".

17. In response, and on more than one occasion during the course of May 7, 2006 and May 8, 2006, Kathy and Rick Paine reported to JOHN and JANE DOE CHICAGO POLICE OFFICERS that Christina has Bipolar Disorder and might be having a psychiatric episode.

4

Kathy and Rick Paine also reported to JOHN and JANE DOE CHICAGO POLICE OFFICERS that Christina had been institutionalized for her Bipolar Disorder condition the previous year. In response, a JOHN or JANE DOE CHICAGO POLICE OFFICER told Rick and Kathy that the police officers would determine how to address Christina's condition.

18. Upon information and belief, Christina was then transferred to the 2nd District Wentworth Police Station because the 8th District Station did not have a female holding facility. The 2nd District Wentworth Police Station is located at 5101 South Wentworth Avenue, Chicago, Illinois ("2nd District Station").

19. The 2nd District Station is more than five miles in distance from the 8th District Station.

20. Christina's luggage was not transferred with her to the 2nd District Station holding facility. Rather, JOHN or JANE DOE CHICAGO POLICE OFFICERS retained possession of her belongings at the 8th District Station.

21. Upon information and belief, Christina continued erratically and demonstrated abnormal behavioral symptoms while in police custody at the 2nd District Station on Sunday, May 7, 2006 and Monday, May 8, 2006. Christina's erratic behavior was observed by several JOHN and JANE DOE CHICAGO POLICE OFFICERS while she was in custody. Christina's behavior clearly demonstrated a mental imbalance and an immediate need for medical care due to a severe psychiatric condition. Christina's erratic behavior and psychiatric episodes were also observed and noted by fellow detainees at the 2nd District Station.

22. Despite Christina's clear demonstration of erratic and abnormal behavior, her urgent need for mental health care, and the repeated concerns expressed by Christina's parents, the CITY OF CHICAGO, by and through its police officers described herein, deliberately,

5

willfully, and wantonly ignored the obvious and serious mental health needs of Christina. Furthermore, despite numerous requests and inquiries from her parents, the aforesaid CHICAGO POLICE OFFICERS never provided Rick and/or Kathy Paine with information regarding when Christina was to be released or details regarding her deteriorating mental condition.

23. From the time of Christina's arrest on Sunday, May 7, 2006 through the time of her release Monday, May 8, 2006, Christina was under the custody and control of the CHICAGO POLICE OFFICERS, and others, and was not free to leave the police facility.

24. The CITY OF CHICAGO and its police officers have a legal responsibility for the safety, health and well-being of persons in its custody and control.

25. During the time of Christina's detention, the CITY OF CHICAGO through the conduct of its officers, deprived Christina access to mental health care.

26. Upon information and belief, the CITY OF CHICAGO has a protocol requiring the CITY OF CHICAGO and its officers to transport persons demonstrating symptoms of mental illness to mental health care facilities.

27. Upon information and belief, the CITY OF CHICAGO has a designated mental health care facility assigned to each police station for the transfer of detainees in need of mental health care.

28. The 2nd District Station's designated mental health care facility for the transfer of persons in need of mental care is St. Bernard Hospital. St. Bernard Hospital is located at 326 West 64th Street in Chicago, Illinois, which is less than two miles traveling distance from the 2nd District Station.

29. JOHN and JANE DOE CHICAGO POLICE OFFICERS never transferred or sought to transfer Christina to St. Bernard Hospital or any other mental health facility in order to provide her with access to mental health care.

30. Upon information and belief, at approximately 6:30 p.m. on May 8, 2006, Christina was released from police custody. At the time of her release, the CITY OF CHICAGO and its officers had control over the time, place and manner of Christina's release.

31. At the time of her release, JOHN AND JANE DOE CHICAGO POLICE OFFICERS, and others, knew that Christina was a resident of California and unfamiliar with Chicago; and further, said officers knew that Christina was incoherent and demonstrating symptoms of a serious mental condition. Christina's deteriorated mental condition was so apparent that average persons observing her during her period of detention, and shortly after her release, recognized Christina to be incoherent and visibly confused.

32. During the course of Christina's May 7 and May 8, 2006 detention by the Chicago Police Department, Kathy and Rick Paine repeatedly telephoned and requested information from JOHN and JANE DOE CHICAGO POLICE OFFICERS as to when Christina would be released so that they could make for arrangements for Christina's care and return to California. Neither the CITY OF CHICAGO, nor its officers, notified Rick and Kathy Paine when Christina was going to be released or the status of her mental condition.

33. Despite the aforesaid knowledge of Christina's deteriorating and erratic mental condition, certain Chicago police officers released Christina without her luggage into an unfamiliar, unsafe, high crime area thereby affirmatively and deliberately placing her in an ultra-hazardous and foreseeably dangerous environment that posed a direct, imminent and foreseeable threat for Christina to suffer life threatening bodily injuries.

34. Specifically, the aforesaid officers, or others, released Christina in her deteriorated mental state, two city blocks away from a Robert Taylor Homes project building located at 5135 South Federal Street, Chicago, Illinois.

35. The Robert Taylor Homes project building and surrounding area is known to the CITY OF CHICAGO, its officers and the public at large, to be an extremely high crime and dangerous area.

36. Soon after her discharge from police custody, Christina was abducted, unlawfully restrained and sexually assaulted and raped at, within or about the Robert Taylor Homes project building. Further, Christina's body was caused to fall seven stories from an apartment to the ground below.

## COUNT I
### 1983 ACTION AGAINST JOHN AND JANE DOE CHICAGO POLICE OFFICERS FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

37. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 36, *supra*, as if fully set out herein, and expressly makes them part of Count I.

38. The actions of the JOHN and JANE DOE CHICAGO POLICE OFFICERS, as detailed above, whereby the JOHN and JANE DOE CHICAGO POLICE OFFICERS were aware of but deliberately, willfully, and wantonly ignored the obvious serious mental health needs of Christina and her substantial risk of serious injury and death, and purposefully neglected and failed to take appropriate steps to protect her, constitute deliberate indifference to Christina's medical needs, thus violating the Fourteenth Amendment to the United States Constitution.

39. As a direct and proximate result of these Constitutional violations, Christina was caused to suffer severe and life threatening injuries, both externally and internally, including

cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, brain hemorrhaging, unknown cognitive damage, collapsed lungs, paralysis to the lower torso (i.e., paraplegia), bruises, contusions, lacerations to her body, and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE**, Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against JOHN and JANE DOE CHICAGO POLICE OFFICERS, jointly and severally, for compensatory damages in the sum of $100,000,000 and because said Defendants acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT II
## 1983 ACTION (MONELL CLAIM) AGAINST THE CITY OF CHICAGO

40. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 39, *supra*, as if fully set out herein, and expressly makes them part of Count II.

41. The actions of the JOHN and JANE DOE CHICAGO POLICE OFFICERS were caused in part by one or more interrelated de facto as well as explicit policies, practices and/or customs and procedures of the CITY OF CHICAGO and its police department.

9

42. At all times material to this Complaint, the CITY OF CHICAGO and its police department, had interrelated de facto policies, practices, and customs which included, *inter alia*,

    (a)    The CITY OF CHICAGO and its police department's inexcusable and purposeful failure to properly train police officers to identify and respond to pretrial detainees, such as Christina, who exhibit obvious signs of mental illness, despite the existence of a protocol designed specifically to address situations in which a pretrial detainee exhibits signs of mental illness, requiring police officers to seek a psychiatric evaluation of the pretrial detainee;

    (b)    The failure to implement its policy under which each police district has a designated police officer during each working shift possessed with knowledge of the police department's protocol in responding to pretrial detainees exhibiting obvious signs of mental illness, having received formal training in regards to said protocol; and

    (c)    Fostering an environment in which police officers are encouraged to deliberately ignore a pretrial detainees' obvious signs of mental illness and instead are encouraged to release pretrial detainees suffering from obvious signs of mental illness despite the pretrial detainee's condition instead of assuring access is given to mental health services.

43. Said policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and caused the JOHN and JANE DOE CHICAGO POLICE OFFICERS to commit the aforesaid acts against Christina and, therefore, acted as direct and proximate causes of said constitutional violations, and injuries to Christina.

**WHEREFORE**, Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against Defendant, CITY OF CHICAGO, for compensatory damages in the sum of $100,000,000, plus attorney's fees pursuant to statute and the costs of this action, and such other and further relief as this court deems just, proper, and equitable.

## COUNT III
## SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT AGAINST DEFENDANTS CITY OF CHICAGO and JOHN AND JANE DOE CHICAGO POLICE OFFICERS

44. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 43, *supra*, as if fully set out herein, and expressly makes them part of Count III.

45. On May 7 and May 8, 2006, Christina was in the custody and under the complete control of the CITY OF CHICAGO and the JOHN and JANE DOE CHICAGO POLICE OFFICERS.

46. The CITY OF CHICAGO is liable for any judgments related to its officers, servants, agents and/or employees arising in the course of their employment, pursuant to Illinois common law and 745 ILCA 10/2-302.

47. At the time and place of her custody, the CITY OF CHICAGO and the JOHN and JANE DOE CHICAGO POLICE OFFICERS had a duty of care to Christina, including a duty to refrain from willful and wanton acts that would cause suffering or injury to Christina.

48. As detailed above, the CITY OF CHICAGO and its officers had actual knowledge that Christina was suffering from a mental condition and was experiencing a severe psychiatric episode and could cause harm to herself or others. The officers had actual knowledge from the repeated reports given by Christina's parents as well as Christina's demonstration of obvious symptoms of a severe mental illness while in police custody. Christina's condition clearly required immediate care and transfer to a mental health treatment facility to protect her from imminent harm.

49. However, the CITY OF CHICAGO and its officers, agents, servants and/or employees demonstrated an utter indifference to Christina's safety when the CITY OF

CHICAGO and its officers, agents, servants and/or employees deliberately ignored Christina's need for immediate mental health care when they were aware of her risk for harm.

50. In addition, the CITY OF CHICAGO and its officers, agents, servants and/or employees demonstrated a willful and wanton and utter indifference to Christina's safety when the CITY OF CHICAGO and its officers, agents, servants and/or employees placed Christina into a dangerous environment with actual knowledge that she was suffering from an obvious mental illness and experiencing a psychiatric episode and was in danger of harm.

51. As detailed above, the CITY OF CHICAGO and JOHN and JANE DOE CHICAGO POLICE OFFICERS willfully and wantonly committed one or more of the following acts:

(a) Deliberately failed to provide Christina with access to mental health care at the time of her arrest, while in police custody and at the time of her custodial release despite actual knowledge of Christina's deteriorated mental condition as reported by her parents;

(b) Deliberately failed to provide Christina with access to mental health care at the time of her arrest, while in police custody and at the time of her custodial release despite actual knowledge that Christina's was suffering from a psychiatric episode;

(c) Deliberately and with utter disregard for Christina's safety and mental condition failed at the time of her arrest, while in police custody and at the time of her custodial release, to heed the warnings of Rick and Kathy Paine that Christina suffered from Bipolar Disorder and had previously been institutionalized and was likely not taking her medication;

(d) Deliberately and with utter disregard for Christina's safety at the time of her arrest, while in police custody and at the time of her custodial release, failed to provide Rick and Kathy Paine access to information regarding Christina, her condition and her release, which would have afforded them the opportunity to provide for Christina's safety;

(e) Deliberately represented to Kathy and Rick Paine that any decision regarding what to do with Christina and her psychiatric condition would remain the responsibility of the Chicago police officers and then

>   deliberately and recklessly failed to provide any care for Christina's safety;
>
> (f) Deliberately and with utter and conscious disregard for her safety, released Christina while she was undergoing a severe psychiatric episode into an unsafe high crime area with actual knowledge that Christina was unfamiliar with her surroundings and was at particular risk of harm while suffering from said psychiatric episode.

52. As a direct and proximate result of one or more of the aforesaid wrongful acts and/or omissions, Christina was placed into a dangerous environment wherein Christina was abducted, unlawfully restrained and sexually assaulted and raped, and was caused to fall seven stories from an apartment to the ground. As a direct consequence, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, unknown cognitive damage, collapsed lungs, paralysis to the lower torso (i.e., paraplegia), brain hemorrhaging, bruises, contusions, lacerations to her body, and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person demands judgment against the CITY OF CHICAGO and JOHN and JANE DOE CHICAGO POLICE OFFICERS jointly and severally, for compensatory damages in the sum of $100,000,000, plus the costs of this action, and such other and further relief as this court deems just, proper, and equitable.

The Plaintiff demands a trial by jury on each and every count of this Complaint at Law.

>Respectfully submitted,
>
>SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.
>
>By: _____
>Attorneys for Plaintiff, KATHLEEN PAINE,
>as Guardian of the Estate of CHRISTINA ROSE
>EILMAN, a Disabled Person

DATED: June 9, 2006

Jeffrey Singer, Esq. (ARDC #02620510)
Misty R. Martin, Esq. (ARDC #06284999)
David Leavitt, Esq. (ARDC #06286692)
SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.
One IBM Plaza
Suite 200
Chicago, Illinois 60611
(312) 645-7800

556134_1.DOC

**ORIGINAL**

LETTERS OF OFFICE - TEMPORARY GUARDIAN OF ALLEGED DISABLED PERSON (Rev. 12/22/03) CCP 0210

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-PROBATE DIVISION

Estate of **CHRISTINE ROSE EILMAN**

Alleged Disabled Person

No. **2006 P 004045**
Docket
Page

LETTERS OF OFFICE - TEMPORARY GUARDIAN OF ALLEGED DISABLED PERSON

**KATHLEEN PAINE** has been appointed temporary guardian of the person and estate of **CHRISTINE ROSE EILMAN**, alleged disabled person, by an order of the court dated **June 05, 2006**. The powers and duties of the temporary guardian are as follows:
**SEE ATTACHED....**

WITNESS, **June 05, 2006**

Dorothy Brown
Clerk of the Circuit Court

CERTIFICATE

I certify that this is a copy of the letters of office now in force in the estate which letters shall expire not later than 60 days after the date of a appointment set forth above.

WITNESS, **June 05, 2006**

DLB

PLAINTIFF'S EXHIBIT A

Clerk of Court

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

1. THE AUTHORITY TO MAKE MEDICAL DECISIONS IN REGARDS TO THE WARD'S MEDICAL CARE AND TREATMENT PURSUANT TO THE HEALTH CARE SURROGATES ACT, 755 ILCS-40 ET SEQ.;

2. THE AUTHORITY TO ARRANGE FOR ANY AND ALL MEDICAL TREATMENT FOR THE WARD;

3. THE AUTHORITY TO TRANSFER THE WARD BETWEEN MEDICAL FACILITIES AS IS NECESSARY FOR THE CONTINUING MEDICAL CARE OF THE WARD, INCLUDING, BUT NOT LIMITED TO, THE AUTHORITY TO TRANSFER THE WARD FROM HER PRESENT MEDICAL CARE FACILITY SPECIALIZING IN REHABILITATIVE CARE;

4. THE AUTHORITY TO APPEAR FOR AND REPRESENT THE WARD IN ALL LEGAL PROCEEDINGS, INCLUDING, BUT NOT LIMITED TO, THE AUTHORITY TO BRING SUIT ON THE WARD'S BEHALF AGAINST THE PARTY OR PARTIES RESPONSIBLE FOR THE WARD'S PRESENT INJURIES;

5. THE AUTHORITY TO NEGOTIATE, INVESTIGATE, SECURE ASSETS AND CONFIRM STATUS OF CREDITORS, NEGOTIATE SETTLEMENT, IF POSSIBLE WITH CREDITORS AND WITH NOTICE TO GAL.