**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KATHLEEN PAINE, as guardian of the estate of CHRISTINA ROSE EILMAN, a disabled person, | ) ) ) | No. 06 C 3173 |
| Plaintiff, | ) ) ) | Honorable Mark Filip |
| v. | ) ) | Magistrate Judge Maria Valdez |
| CITY OF CHICAGO, a municipal corporation, and JOHN AND JANE DOES, unknown officers, agents, servants and/or employees of the CHICAGO POLICE DEPARTMENT, | ) ) ) ) ) ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**MEMORANDUM OPINION AND ORDER**

This is a civil rights action against the City of Chicago and individual unnamed police officers brought pursuant to 42 U.S.C. § 1983 and Illinois common law. On September 18, 2006 the district court entered an agreed protective order that, *inter alia*, prevented the parties from disseminating certain documents relating to allegations of police misconduct to third parties, including the press. Presently before this Court is a petition and a motion relating to this protective order: (1) Plaintiff's Petition for Adjudication of Claims of Confidentiality of Transcribed Statements ("Plaintiff's Petition") [Doc. No. 31], and (2) The Chicago Tribune's[1] Emergency Motion to Intervene and Challenge Protective Order ("Tribune's Motion") [Doc. No. 44]. For the reasons set forth below, the relief requested in Plaintiff's Petition is DENIED, and The Chicago Tribune's Motion is GRANTED, in part, and DENIED, in part.

**I. BACKGROUND**

---

[1] The *Chicago Tribune* is a daily newspaper that is circulated worldwide. Its "reporters have written extensively on the issue of police misconduct," including the allegations in this case. (Tribune's Motion at 5.)

## A. Factual Background

Plaintiff Kathleen Paine, mother and guardian of the estate of Christina Rose Eilman, brings this civil rights action pursuant to 42 U.S.C. § 1983 and Illinois common law against the City of Chicago and unnamed individual police officers involved in the arrest, detainment, and release of her daughter. (Compl. ¶¶ 1-52.) Plaintiff alleges her 21-year-old daughter suffers from bipolar disorder and was arrested on May 7, 2006 for creating a disturbance at Chicago's Midway Airport and was released from custody the following evening. (*Id*. at ¶¶ 7, 10, 30.) Plaintiff alleges that the neighborhood surrounding the detaining police station is dangerous, and within hours of her daughter's release from police custody, she was abducted, sexually assaulted, and caused to fall seven stories from an apartment, suffering severe bodily injury and brain damage. (*Id*. at ¶¶ 34-36.)

## B. Entry of Agreed Protective Order

On September 18, 2006 the district court entered an Agreed, Qualified HIPAA and Confidential Matter Protective Order (the "Agreed Protective Order") that, *inter alia*, prevented the parties in this matter from disseminating pretrial discovery designated as "confidential matter" to third parties, including the press. (*See* Doc. Nos. 28-29.) As defined in the Agreed Protective Order:

> "Confidential Matter" shall mean employment, disciplinary, financial or other information that is of a sensitive or non-public nature regarding plaintiff, defendant, non-party witnesses and non-party employees of the City of Chicago that may be subject to discovery in this action. "Confidential matter" includes, but is not limited to, personnel files, disciplinary actions, histories and related information that are protected by the *Illinois Personnel Records Review Act* (West 2004) and Section 7 of the *Illinois Freedom of Information Act*, 5 ILCS 140/1, *et seq*. (West 2004), personal and family information of police officers including residential information, **and files generated by the investigations of complaints**

>**of misconduct by Chicago police officers (generally referred to as "Complaint Register" files)**.

(Agreed Protective Order ¶ A.6) (emphasis added). Plaintiff concedes that "[d]uring the course of its investigation into this matter, the Chicago Police Department's Internal Affairs Division ('IAD') took no less than forty-seven oral statements from civilians and uniformed officers, sergeants, lieutenants and captains." (Plaintiff's Petition at 2.) These statements (hereinafter referred to as "IAD Statements") have been transcribed and produced to the Plaintiff as "confidential matter." (*Id*.) However, despite Plaintiff's concession, three days after the district court entered the Agreed Protective Order: (1) Plaintiff filed a petition before this Court arguing that the IAD Statements are not "confidential matter" under the provisions of the Agreed Protective Order, and (2) the Chicago Tribune (the "Tribune") published an article quoting Plaintiff's counsel, Jeffrey Singer, as saying:

> There is no valid public interest served by the city concealing the statements of police officers and private citizen witnesses who observed what happened to Christina while in police custody . . . . Openness—not concealment—is the way the Chicago Police Department should proceed about this incident. Instead, we are faced with a department which prefers burying its dirty laundry as opposed to doing the right thing.

John Kass, *Police failed her, and now Daley has too*, Chicago Tribune, Section 1, September 21, 2006. Five days after the Tribune published this article, the Tribune filed a motion to intervene and challenge the Agreed Protective Order, specifically seeking "an Order: (a) finding that the IAD statements are not properly designated as 'confidential' under the Protective Order, and (b) modifying the Protective Order to exclude CR files." (Tribune's Motion at 14.)

## II. DISCUSSION

3

## A. Plaintiff's Petition for Adjudication of
## Claims of Confidentiality of Transcribed Statements

Plaintiff seeks an order from this Court finding that the IAD Statements are not governed by the Agreed Protective Order. (Plaintiff's Petition at 7.) Additionally, notwithstanding the fact that Plaintiff signed the Agreed Protective Order, it appears that she is now seeking to modify the order as being improper to the extent it governs any document relating to allegations of police misconduct: "Police misconduct, which is at the heart of Plaintiff's claims, should never be applied to a protective order and it cannot now be claimed as a basis for confidentiality." (*Id.*) First, as a preliminary matter, "the Court always is concerned by a contested motion which seeks to modify a stipulated protective order because that order was the product of an agreement between the parties." *Vikase Corp. v. W.R. Grace & Co.-Conn.*, 1992 WL 13679, at *4 (N.D.Ill. January 24, 1992) (Rovner, J.). An agreed protective order may be viewed as a contract, and once parties enter an agreed protective order they are bound to its terms, absent good cause to modify or vacate the protective order. *Kyles v. J.K. Guardian Security Services*, 2006 WL 2349238, at *8 (N.D.Ill. August 15, 2006). "As with all contracts, the ultimate question is what was the parties' mutual intent. The answer to that question is to be found 'within [the protective order's] four corners, and not by reference to what might satisfy the purposes of one of the parties to it.'" *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 2006 WL 1304949, at *4 (N.D.Ill. May 10, 2006) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971). As set forth below, both of Plaintiff's arguments fail, and the relief requested in her petition is denied.

The IAD Statements are "confidential matter" under the provisions of the Agreed Protective Order for two reasons. First, the plain language of the Agreed Protective Order

4

defines "confidential matter" as including "files generated by the investigation of complaints of misconduct by Chicago police officers (generally referred to as 'Complaint Register' files)." (Protective Order ¶ A.6.) Plaintiff concedes that the IAD Statements were taken during the Chicago Police Department's investigation of Plaintiff's complaint of police misconduct. (Plaintiff's Petition at 2.) She further concedes that prior Complaint Register files involving other allegations of police misconduct should be shielded by the Agreed Protective Order. However, in spite of this concession, Plaintiff argues that the IAD Statements "can not and should not be afforded the intent and spirit of a protective order" because they "do *not* contain information regarding previous complaints against any involved party, but rather information regarding the handling of the matters contained in Plaintiff's Complaint." (*Id*. at 4-5.) Nothing in the definition of "confidential matter" contained in the Agreed Protective Order references investigations of a particular time period. Rather, the plain language of the Agreed Protective Order governs all files generated by any investigation of police misconduct—past and present. Accordingly, the IAD Statements are "confidential matter" under the four corners of the Agreed Protective Order.

Second, Plaintiff "should have anticipated and accounted for its present problem when it agreed to the Protective Order in the first instance." *Vikase*, 1992 WL 13679, at *4. Plaintiff maintains that the parties had an "ongoing dialogue" regarding the confidentiality of the IAD Statements. (Plaintiff's Petition at 3.) However, instead of specifically addressing this issue in the draft protective order the Defendant submitted to the Plaintiff on September 14, 2006, Plaintiff signed the draft protective order on September 15, 2006 without making any modifications. Subsequently, the district court entered the Agreed Protective Order on

September 18, 2006. In an effort to remedy her apparent oversight, three days after the district court entered the Agreed Protective Order, Plaintiff filed the petition presently before the Court. However, "plaintiff must make a substantial showing of good cause to relieve it of the burden of the agreed Protective Order, particularly when the proposed modification relates to a matter within the parameters of reasonable foresight at the time of the parties' agreement." *Vikase*, 1992 WL 13679, at *4. Good cause in this context implies changed circumstances. *Murata Manufacturing Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 180 (N.D.Ill. 2006). In this case, not only were issues relating to the confidentiality of the IAD Statements reasonably foreseeable based on Plaintiff's own account of the events leading to the entry of the Agreed Protective Order, but Plaintiff has failed to demonstrate any change in circumstances in the three days between the entry of the Agreed Protective Order and the filing of the present petition.

Additionally, notwithstanding that Plaintiff submitted an agreed protective order to the district court that governs allegations of police misconduct, she alternatively seeks to modify the Agreed Protective Order because she believes that information relating to allegations of police misconduct should never be shielded by a protective order. (Plaintiff's Petition at 7.) However, several courts in the Northern District of Illinois have entered protective orders in cases involving allegations of police misconduct,[2] and in this case Plaintiff has failed to justify why she seeks to modify the protective order her counsel signed days before she filed the instant petition. Presumably, Plaintiff believed that protective orders should not apply to allegations of

---

[2]*See, e.g.*, *O'Leary v. Village of Elmhurst*, 1989 WL 18333 (N.D.Ill. March 2, 1989); *Coffie v. City of Chicago*, 2006 WL 1069132 (N.D.Ill. April 21, 2006); *McGee v. City of Chicago*, 2005 WL 3215558 (N.D.Ill. June 23, 2005); *Hobley v. Burge*, 2005 WL 256481 (N.D.Ill. January 21, 2005); *Acuna v. Rudzinski*, 2001 WL 1467529 (N.D.Ill. November 16, 2001); *Doe v. White*, 2001 WL 649536 (N.D.Ill. June 8, 2001); *McCready v. City of Chicago*, 1999 WL 409935 (N.D.Ill. June 7, 1999); *Sasu v. Yoshimura*, 147 F.R.D. 173 (N.D.Ill. 1993); *McLin by and through Harvey v. City of Chicago*, 133 F.R.D. 527 (N.D.Ill. 1990).

police misconduct when her counsel signed the Agreed Protective Order on September 15, 2006 and when her counsel signed the instant petition on September 21, 2006. However, Plaintiff failed to make any modifications to the draft protective order that Defendant submitted to her on September 15, 2006. More importantly, Plaintiff failed to raise any concerns with the district court when both parties presented the Agreed Protective Order on September 18, 2006.

Consequently, the Court concludes that the IAD Statements are "confidential matter" under the provisions of the Agreed Protective Order, and Plaintiff has failed to show good cause to modify the provisions of this order.

**B.     Chicago Tribune's Motion to Intervene and Challenge the Protective Order**

The Tribune has moved "to intervene in this action for the limited purpose of objecting to the scope and application of the Protective Order in this case." (Tribune's Motion at 1.) Specifically, the Tribune seeks "an Order: (a) finding that the IAD statements are not properly designated as 'confidential' under the Protective Order, and (b) modifying the Protective Order to exclude CR files."[3] (Tribune's Motion at 14.) For the reasons set forth below, the Tribune is granted leave to intervene, but is denied the further relief it has requested.

**1.     Intervention of the Press**

---

[3]As set forth above, the Court has concluded that the IAD Statements are "confidential matter" under the plain language of the Agreed Protective Order. Accordingly, we need only address the Tribune's request to modify the Agreed Protective Order to redesignate Complaint Register files as non-confidential matter. Additionally, we note that Defendant maintains that the IAD Statements "came from the CR file regarding the conduct alleged in plaintiff's lawsuit." (Def.'s Resp. to Pl.'s Petition at 3.) Therefore, the Tribune's two requests for relief are collapsed into one.

"[I]ntervention is the procedurally appropriate course for third-party challenges to protective orders," with the press having "standing to challenge a protective order for abuse or impropriety." *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 896, 898 (7th Cir. 1994). Therefore, we grant the Tribune leave to intervene in this action for the limited purpose of challenging the Agreed Protective Order for abuse or impropriety.

### 2. Challenge of the Protective Order

The press may have a right to challenge a protective order, but its "right of access does not extend to information gathered through discovery that is not part of the public record." *Id*. at 898. The public record consists of information that is filed with the court, not information that is exchanged between the parties only. *Id*. at 897-98. Consequently, "until admitted into the record, material uncovered during pretrial discovery is ordinarily not within the scope of press access." *Id*. (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)). In this case, the Agreed Protective Order pertains only to documents exchanged between the parties during pretrial discovery. Accordingly, the "Tribune is *not* moving this Court for mandated access to the discovery materials at issue; but rather Tribune is challenging the breadth of the Protective Order." (Tribune's Motion at 4.) Specifically, the Tribune is challenging the Agreed Protective Order as improper for allegedly: (1) depriving the public of its right of access to pretrial discovery materials involving public officials, and (2) giving the City of Chicago *carte blanche* authority to designate virtually any material confidential under its blanket terms. For the reasons set forth below, both of the Tribune's arguments fail, and its requested relief is denied.

#### a. Public's Right of Access

The general public and the press have a common-law and First Amendment right of access to court proceedings and documents, with neither right being absolute. *Grove Fresh*, 24 F.3d at 897. The common-law right is the more general of the two and "establishes that court files and documents should be open to the public unless the court finds that its records are being used for improper purposes." *Id*. On the other hand, the "First Amendment presumes that there is a right of access to proceedings and documents which have historically been open to the public and where the disclosure of which would serve a significant role in the functioning of the process in question." *Id*. (citations omitted). In this case, the general public and the press lack both a common-law and First Amendment right of access to files generated by the Chicago Police Department during its investigation of allegations of police misconduct, including Complaint Register files.[4]

First, the general public and the press lack a common-law right of access to the Chicago Police Department's investigative files because they are not court documents. The documents at issue have not been filed with the court and have only been exchanged between the parties during pretrial discovery.[5] Consequently, there is no common-law right of access to these documents.

Second, the general public and the press lack a First Amendment right of access to the files the Chicago Police Department generates during the investigation of allegations of police misconduct. Pretrial discovery has not traditionally been open to the public. "Discovery rarely

---

[4]In pursuit of her lawsuit, the Plaintiff has a right to receive these documents and has received them. The Tribune seeks an order granting the Plaintiff leave to disseminate these documents to whomever she pleases, including the press.

[5]There is one exception: in conjunction with her instant petition, Plaintiff filed the IAD Statements under seal for an *in camera* review. (*See* Doc. No. 38.)

takes place in public" and "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Seattle Times*, 467 U.S. at 33. In this case, the Tribune's "argument that the public has a strong interest in overseeing its police officers' behavior by examining complaints against officers and examining the police department response to those complaints is no doubt correct." *Coffie v. City of Chicago, et al.*, 2006 WL 1069132, at *3 (N.D.Ill. April 21, 2006). However, "[i]t does not necessarily follow" that a plaintiff who has filed a civil rights lawsuit against a city and its police officers "has an unrestrained right to disseminate information that has been obtained through pretrial discovery." *Seattle Times*, 467 U.S. at 31. A plaintiff who has filed a civil rights lawsuit alleging police misconduct has the right to obtain police records in the pursuit of its lawsuit, but not the right to disseminate this information to the world during pretrial discovery.

> Pretrial discovery of police records must be conducted in a manner which will not threaten police operations: The members of a police department must be able to rely upon their confidential records and notations being preserved for their internal use in *all* cases, for if it were otherwise, the knowledge that some of the confidential information recorded might be later exposed to outside parties would have a certain and chilling effect upon the internal use of such record making.

*O'Leary v. Village of Elmhurst*, 1989 WL 18333, at *6 (N.D.Ill. March 2, 1989) (citations omitted). In *O'Leary*, the plaintiff filed a civil rights action against the Village of Elmhurst and individual police officers. The Plaintiff sought a protective order allowing him to disseminate police officers' personnel records to the press. The court held that:

> Since plaintiff and his counsel have access to the information for use in this litigation, we fail to see what interest requires that plaintiff be given the right to share information from these officers' personnel files with the press. Should the trial judge determine that any of this information is relevant and otherwise admissible, it will become part of the trial record. The trial will be public.

*Id.*; *see Coffie*, 2006 WL 1069132, at *3 (concluding that "as a general principle, that plaintiff's counsel in civil rights cases may [not] disseminate unfiled police officer disciplinary information produced during discovery without restriction or limitation"). Similarly, in this case, Plaintiff and her counsel have gained access to files generated by the Chicago Police Department in the investigation of allegations of police misconduct. The Agreed Protective Order simply prevents Plaintiff from disseminating this information to third parties, including the press, during pretrial discovery. However, if this matter proceeds to trial, the trial will be public, and the trial court will determine whether any of the "confidential matter" governed by the Agreed Protective Order should become part of the public record. Accordingly, "where, as in this case, a protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment."[6] *Seattle Times*, 467 U.S. at 37.

Therefore, the Court concludes that the general public and the press lack a common-law and First Amendment right of access to files generated by the Chicago Police Department in its investigation of allegations of police misconduct for purposes of pretrial discovery.

### b. Blanket Protective Orders

Next, the Tribune argues that the Agreed Protective Order entered by the district court is invalid because it is a blanket protective order. "Blanket protective orders extend protection to all documents without a showing of cause for confidentiality as to any particular document." *Kyles,* 2006 WL 2349238, at *4. Such orders are invalid because they give "each party carte

---

[6] Authority exists in this district allowing the dissemination to the press of files generated during an internal police department investigation of allegations of police misconduct after the case has been resolved. *See Doe v. Marsalis*, 202 F.R.D. 233 (N.D.Ill. 2001); *Wiggins v. Burge*, 173 F.R.D. 226 (N.D.Ill. 1997). Nothing in this order should be viewed as precluding such a request upon the resolution of this matter.

blanche to decide what portions of the record shall be kept secret." *Citizens First National Bank of Princeton v. Cincinnati Insurance Co.*, 178 F.3d 943, 945 (7th Cir. 1999). In this case, the Tribune is challenging the Agreed Protective Order as an invalid blanket protective order because the Defendants "categorically ban public dissemination" of files the Chicago Police Department generated in its investigation of allegations of police misconduct. (Tribune's Motion at 7.) The Tribune argues that "for each file defendants seek to keep confidential, they should be required to show exactly what content is so sensitive that its disclosure would cause definite harm to defendants or certain non-parties, and detail the specific harm." (*Id*. at 13.) The Tribune's arguments fail because the Seventh Circuit has held that a "document-by-document" analysis is not required for confidential designation determinations. *Citizens First*, 178 F.3d at 946. Rather, a court may enter a protective order that keeps "some properly demarcated category of legitimately confidential information out of the public record" provided that the judge: (1) satisfies herself that the parties know what the legitimate categories of information are and are acting in good faith in deciding which parts of the record qualify for protection, and (2) makes explicit that either party or interested member of the public can challenge the confidential designation of particular documents. *Id*.

In this case, both parties signed the Agreed Protective Order that explicitly defined categories of "confidential matter," and the Agreed Protective Order provided that any party or member of the public may challenge the confidential designation of any "confidential matter." The district court subsequently entered this protective order, and a district court may enter a protective order only upon a finding of good cause, even where the parties agree on the protective order's terms. *Jepson, Inc. v. Makita Electric Works*, *Ltd*., 30 F.3d 854, 858 (7th Cir.

1994). As set forth below, the Tribune does not challenge whether the district court entered the Agreed Protective Order upon a finding of good cause. Therefore, the Court concludes the Agreed Protective Order is not improper as a blanket protective order.

### c. Good Cause

The Tribune does not argue that the Agreed Protective Order was improperly entered without good cause.[7] However, it generally challenges the legality of any limitation on public access to discovery materials involving public officials, specifically, complaint or investigation files of a police department. As a result, this Court will address whether "good cause" exists to shield such information for purposes of pretrial discovery in this litigation.

Good cause requires balancing the harm to the party seeking the protective order and the importance of disclosure to the public. *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D.Ill. 1997). Some factors the court may consider in making this determination, include "privacy interests, whether the information is important to public health and safety and whether the party benefitting from the confidentiality of the protective order is a public official." *Id*. Here, the Tribune argues that the public has a valid interest in allegations of police misconduct and the police department's investigations of such allegations. However, Defendant City of Chicago has asserted privacy interests in the personal identifiers of officers, disciplinary histories, reports, and statements of civilian parties and witnesses that is of a sensitive or non-public nature related to discipline. (Defendant City of Chicago's Agreed Motion for Entry of Agreed Protective

---

[7]In its present motion the Tribune argues that "under settled Seventh Circuit precedent, discovery is presumptively open, and only a compelling showing of good cause can justify denying public access." (Tribune's Motion at 6). However, in oral argument on its present motion, the Tribune was asked by this Court whether it was "arguing that there was no good cause for [the district court] to enter the Agreed Protective Order." The Tribune responded, "Not at all, Your Honor. Not at all." Consequently, we presume that Tribune is arguing that (1) a court may enter a protective order only upon a finding of good cause, and (2) in this case the district court entered the Agreed Protective Order upon such a finding.

Order, attached to Plaintiff's Petition as Exhibit C, at ¶ 1).[8]  Additionally, the Defendant maintains that evidence exists demonstrating "that the non-restricted public disclosure" of matter designated as confidential under the Agreed Protective Order, "even with limited redactions[,] has overwhelming negative and often dangerous implications . . . to the protection of innocent third party witnesses whose statements are contained in the Complaint Registers, and to the protection of the officers themselves."   (Def.'s Resp. to Pl.'s Petition at 5 n.3.)  Finally, the Defendant urges that a fair trial will be impeded if unreliable or potentially inadmissable information is publicly disseminated during pretrial discovery, possibly influencing the prospective jury pool.  (Def.'s Resp. to Tribune's Motion at 9.)

Here, we are dealing with files relating to the Chicago Police Department's internal investigation of allegations of police misconduct contained in the Plaintiff's complaint.  Specifically, the IAD Statements at issue are from both Chicago police employees and third-party witnesses who have no employment relationship with the City of Chicago.  Certainly witnesses involved in law enforcement investigations have legitimate privacy interests.  *Lepianka v. The Village of Franklin Park*, 2004 WL 626830, at *2 (N.D.Ill. Mar. 26, 2004).

When balancing the public's interest in disclosure of confidential matter identified in the Agreed Protective Order against the interest in non-disclosure, the "court has discretion to decide when a protective order is appropriate and what degree of protection is required."  *Wiggins*, 173

---

[8]We note, however, that the Defendant's Motion for Entry of Agreed Protective Order was submitted to the Plaintiff, but was not filed with the court.  During oral argument on Plaintiff's Petition, Defendant maintained that it submitted the draft motion to the Plaintiff on September 15, 2006—along with the draft protective order, which was ultimately entered in this case—and said to Plaintiff:  "Review the protective order.  If you don't agree with the protective order, this is what we would file in support of the protective order."   Since Plaintiff signed Defendant's draft protective order, Defendant never filed the draft Motion for Entry of Agreed Protective Order.

14

F.R.D. at 229 (citing *Seattle Times,* 467 U.S. at 36). And, the Court is mindful that the public's interest in disclosure of this pretrial material is limited. *Seattle Times*, 467 U.S. at 33.

While the Tribune has asserted an important interest for this Court to consider, on balance, the Defendant has shown given the implications to a fair trial, privacy interests, and to the protection of police officers and non-party witnesses, sufficient reasons exist to shield this information during pretrial discovery until the trial court deems otherwise. It is important to note that the Plaintiff's access to the materials at issue have not been substantially hindered. The Plaintiff has received this confidential information in prosecution of her lawsuit. The only issue is whether the Plaintiff should be able to disseminate this information to the Tribune, or presumably other news sources, in order to provide this information to the public at large.

In this case the district court entered the Agreed Protective Order believing that good cause existed for its issuance and with the understanding that both the Plaintiff and the Defendant agreed to its provisions. Further, the Defendant has presented information demonstrating good cause exists to shield the information designated as "confidential matter" under the provisions of the Agreed Protective Order. Therefore, the Tribune's request to allow the Plaintiff to disseminate this material will be denied.

### III. CONCLUSION

For the foregoing reasons, (1) the relief requested in Plaintiff's Petition for Adjudication of Claims of Confidentiality of Transcribed Statements [Doc. No. 31] is DENIED, and (2) Chicago Tribune's Emergency Motion to Intervene and Challenge Protective Order [Doc. No. 44] is GRANTED, in part, and DENIED, in part.

**SO ORDERED.**              **ENTERED:**

**Dated:     October 26, 2006**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**