IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | No.06C3173 |
| OFFICER JEFFREY JOHNSON, OFFICER RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a Municipal corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Virginia Kendall Magistrate Judge Maria Valdez |
| Defendants. | ) | |

## NOTICE OF FILING

TO:     ALL COUNSEL OF RECORD (See Attached Service List)

PLEASE TAKE NOTICE THAT ON THIS **23rd day of November, 2008**, **Plaintiff, Kathleen Paine, as Guardian of the Estate of Christina Rose Eilman,** filed with the Clerk of the United States District Court for the Northern District of Illinois by electronic court filing system: **Second Amended Complaint**, a copy of which is hereby served upon you.

_/s/ Christina Schmucker_

Jeffrey Singer, Esq. (ARDC #02620510)
Misty R. Martin, Esq. (ARDC #6284999)
Christina Schmucker, Esq. (ARDC #6283955)
SEGAL, McCAMBRIDGE, SINGER & MAHONEY, LTD.
Sears Tower — Suite 5500
233 South Wacker Drive
Chicago, Illinois 60606
(312) 645-7800

**PROOF OF SERVICE**

I, the undersigned, being first duly sworn on oath, depose and state that a copy(ies) of **Second Amended Complaint**, was served on the party(ies) as above-addressed, by the Court's electronic filing system on this 23rd day of November, 2008.

_/s/_ Christina Schmucker
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 06 C 3173 |
| | ) | |
| OFFICER JEFFREY JOHNSON, OFFICER RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a Municipal corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Virginia M. Kendall

Magistrate Judge Maria Valdez |
| | ) | |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT AT LAW**

Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, by her attorneys, JEFFREY SINGER, MISTY R. MARTIN and CHRISTINA SCHMUCKER of SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD., and hereby files this Complaint at Law against Defendants, OFFICER JEFFREY JOHNSON, OFFICER RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH,

OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a Municipal corporation, and states as follows:

## INTRODUCTION

1.       This is a civil action seeking damages against the City of Chicago, and certain Chicago police officers and detention aides, who, while acting under the color of law, deprived Christina Rose Eilman of rights secured by the Constitution and laws of the United States, including rights secured by the Fourth and Fourteenth Amendments to the Constitution, and for related Illinois State-Law claims.

## JURISDICTION

2.       This action is brought pursuant to 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1341(3) and (4) and 1343, and the aforementioned constitutional and statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. §1367 to hear and decide claims arising out of Illinois state law.

3.       Jurisdiction is also founded upon 28 U.S.C. §1332(a). Plaintiff, Kathleen Paine is a citizen of California and Defendant, City of Chicago is an Illinois municipal corporation. Upon information and belief, Defendants are also citizens of Illinois. The amount in controversy exceeds $75,000. Therefore, jurisdiction is proper pursuant to 28 U.S.C. § 1332(a).

## PARTIES

4.       Plaintiff, KATHLEEN PAINE ("Plaintiff"), is a citizen of the United States and resides in Roseville, California. Plaintiff sues as guardian of the estate of her adult daughter, CHRISTINA ROSE EILMAN ("Christina"), a citizen of the United States, a person domiciled in Los Angeles, California. Plaintiff was appointed the Temporary Guardian of the Estate of

2

Christina Rose Eilman, a disabled person, on June 5, 2006 by Circuit Court of Cook County. (*See* Order of Temporary Guardianship attached hereto as Exhibit A.)

5.     Defendant, CITY OF CHICAGO, is a municipal corporation in Cook County, Illinois.  The CITY OF CHICAGO operates a police department in Chicago, Illinois.

6.     Defendants, OFFICER JEFFREY JOHNSON, OFFICER RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER and OFFICER PAULINE HEARD are police officers or detention aides, serving as agents, servants and/or employees of the CITY OF CHICAGO Police Department.

7.     At all times relevant hereto, OFFICER JEFFREY JOHNSON, OFFICER RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER and OFFICER PAULINE HEARD were acting under color of law and pursuant to and furtherance of statutes, ordinances, regulations, customs, policies and usages of the City of Chicago and the Chicago Police Department, and within the scope of their employment with the CITY OF CHICAGO.

## FACTS

8.     CHRISTINA ROSE EILMAN ("Christina") is a twenty-two year old woman domiciled in Los Angeles, California.  On and before May 6, 2006, Christina suffered from a

3

mental condition known as Bipolar Disorder, a disorder which has at times impacted Christina's major life activities. In the past, Christina has been institutionalized for her Bipolar Disorder condition.

9. Upon information and belief, Christina traveled to Chicago, Illinois, on or about May 5, 2006. On Saturday, May 6, 2006, Christina found herself stranded in Chicago, Illinois. On May 6, 2006, Christina went to Midway Airport so she could travel back home to California. After becoming involved in a verbally aggressive incident at the Frontier Airlines ticket counter at Midway Airport. OFFICER JEFFREY JOHNSON determined that Christina posed a threat to other passengers and ordered Christina out of Midway Airport.

10. Later that same day, May 6, 2006, Christina telephoned her parents, Richard Paine ("Rick Paine") and Kathleen Paine ("Kathy Paine"), seeking their assistance.

11. Christina's parents responded by making arrangements for Christina to travel home to California the following afternoon. Specifically, Christina's parents arranged for Christina to take a Southwest Airlines flight from Midway Airport in Chicago, Illinois, to Burbank Airport in Burbank, California, on the afternoon of Sunday, May 7, 2006.

12. On Sunday, May 7, 2006, Christina was involved in another incident at Midway Airport, this time at a Southwest Airlines gate. While at the Southwest Airlines gate, Christina was involved in a verbally aggressive altercation. Christina was petting an assistive dog of a blind man. The caretaker of the blind man asked Christina not to touch the dog. As a result, Christina immediately became hostile and aggressive toward the caretaker and yelled in the caretaker's face that the blind man was a phony and that he had been exposed.

4

13.     OFFICER JEFFREY JOHNSON was again summoned to the scene of the incident and he again determined that Christina posed a threat to other passengers.  As a result, he again ordered Christina out of Midway Airport.

14.     Upon information and belief, Christina was detained again on that same Sunday afternoon, May 7, 2006, by officers, agents, servants and/or employees of the Chicago Police Department for allegedly creating a verbal, aggressive disturbance at a Chicago Transit Authority ("CTA") train and bus station located at Midway Airport.  OFFICER RICHARD CASON and OFFICER ROSENDO MORENO placed Christina under arrest and in the custody of the Chicago Police Department.

15.     At the time of Christina's arrest, OFFICER RICHARD CASON and OFFICER ROSENDO MORENO were aware that Christina was not a resident of Illinois and was attempting to return home to California.

16.     Before and at the time of her arrest, OFFICER RICHARD CASON and OFFICER ROSENDO MORENO observed Christina behaving erratically and speaking incoherently.

17.     Christina was charged by OFFICERS RICHARD CASON and ROSENDO MORENO with a misdemeanor, "Criminal Trespass to Property", without probable cause to support such a criminal complaint.

18.     After her arrest, Christina was taken by Chicago police officers to the City of Chicago's Eighth District Chicago Lawn Police Station, located at 3515 West 63rd Street in Chicago, Illinois ("Eighth District Station").

19.     Christina acted erratically and demonstrated abnormal behavioral symptoms before and after her arrival at the Eighth District Station.  Christina's erratic, disruptive and

incoherent behavior was observed by several CHICAGO POLICE OFFICERS, including OFFICER RICHARD CASON, OFFICER ROSENDO MORENO, OFFICER YVONNE DELIA, SERGEANT BERGLIND and LIEUTENANT CASON EARNEST.

20. A few hours after Christina's arrest, OFFICER YVONNE DELIA telephoned Christina's parents of Christina's condition. In voicemail messages left for Rick and Kathy Paine, OFFICER YVONNE DELIA stated that Christina was difficult to understand and that she and other CHICAGO POLICE OFFICERS "did not know what they had on their hands" with respect to Christina's behavior

21. In response, Rick Paine returned OFFICER DELIA's call, and reported to OFFICER YVONNE DELIA that Christina has Bipolar Disorder and might be having a psychiatric episode. Rick Paine also reported that Christina had been institutionalized for her Bipolar Disorder condition the previous year, that she may not be taking her medication and that she was not from Chicago but rather was from California. In response, OFFICER YVONNE DELIA stated to Rick Paine that Chicago Police Officers would attempt to assist Christina in her return to California.

22. However, instead of coordinating her transport to an airport for a return trip to California, or transferring her to a mental health facility, Christina was transferred to the Second District Wentworth Police Station because the Eighth District Station did not have a female holding facility. The Second District Wentworth Police Station is located at 5101 South Wentworth Avenue, Chicago, Illinois ("Second District Station").

23. The Second District Station is more than five miles in distance from the Eighth District Station.

6

24.    Christina's luggage was not transferred with her to the Second District Station holding facility.  Rather, the Chicago Police retained possession of her belongings at the Eighth District Station.

25.    Christina continued behaving erratically and demonstrated grossly abnormal behavioral symptoms while at the Second District Police Station on Sunday, May 7, 2006 and Monday, May 8, 2006.  Christina's erratic behavior was observed by several Chicago Police Officers, Detention Aides and private citizens while she was in custody.  Christina's behavior clearly demonstrated a mental imbalance and an immediate need for medical care due to a severe psychiatric episode arising from her existing psychiatric disorder.  Christina's erratic behavior and obvious psychiatric episodes were also observed and noted by fellow detainees at the Eighth and Second District stations, several of whom advised CHICAGO POLICE OFFICERS and lock-up personnel accordingly.

26.    Despite Christina's clear demonstration of erratic and abnormal behavior, her urgent need for mental health care, and the repeated concerns expressed by Christina's parents and private citizens observing her behavior, the CITY OF CHICAGO, by and through certain police officers and detention aides described herein, deliberately, willfully, and wantonly ignored and were indifferent to the obvious and serious mental health needs of Christina.  Furthermore, despite numerous requests and inquiries from her parents, as well as disclosures that their daughter suffers from Bipolar Disorder, certain CHICAGO POLICE OFFICERS never provided Rick and/or Kathy Paine with information regarding when Christina was to be released or details regarding her deteriorating mental condition; nor did they provide Christina with access to medical and/or mental health care as required by law and Chicago Police Department policy.

27.     From the time of Christina's arrest on the afternoon of Sunday, May 7, 2006, through the time of her release Monday, May 8, 2006, nearly 28 hours later, Christina was in the custody and control of CHICAGO POLICE OFFICERS and detention aides and was not free to leave the police facility.

28.     The CITY OF CHICAGO and its police officers have a legal responsibility for the safety, health and well-being of persons in its custody and control.

29.     During the time of Christina's detention, the CITY OF CHICAGO, through the conduct of its officers and detention aides, and the officers and detention aides individually, was deliberately indifferent and wrongfully deprived Christina access to mental health care.

30.     Upon information and belief, the CITY OF CHICAGO has a protocol requiring the CITY OF CHICAGO and its officers and detention aides to transport persons demonstrating symptoms of mental illness, including but not limited to irrational behavior, to mental health care facilities for evaluation and care.

31.     Pursuant to police department policy, the CITY OF CHICAGO has a designated mental health care facility assigned to each police station where detainees in need of mental health evaluation and care are to be transported by police personnel.

32.     The Eighth District Station's designated mental health care facility for the transfer of persons in need of mental care is, by way of information and belief, Mt. Sinai Hospital.  Mt. Sinai Hospital is located at 1500 South California Boulevard in Chicago, Illinois.

33.     The Second District Station's designated mental health care facility for the transfer of persons in need of mental care, by way of information and belief, is St. Bernard Hospital.  St. Bernard Hospital is located at 326 West 64th Street in Chicago, Illinois, which is less than two miles travel distance from the Second District Station.

8

34. None of the individual Defendant police officers or detention aides transferred or sought to transfer Christina to Mt. Sinai Hospital, St. Bernard Hospital or any other mental health facility while she was in their custody in order to provide her with access to mental health care.

35. At approximately 6:30 p.m. on May 8, 2006, and while continuing to suffer a bipolar psychiatric episode, Christina was released from police custody. At the time of her release, the CITY OF CHICAGO and its officers had control over the time, place and manner of Christina's release.

36. At the time of her release, the certain individual police officers and detention aide defendants and the CITY OF CHICAGO knew that Christina was a resident of California and unfamiliar with Chicago; and further, said officers knew that Christina was acting irrational and was incoherent, demonstrating symptoms of a serious mental condition. Christina's deteriorated mental condition was so apparent that members of the public observing her before, during her period of detention, and shortly after her release, recognized Christina to be incoherent, visibly confused and at risk of becoming harmed or of harming someone else.

37. During the course of Christina's May 7 and May 8, 2006 detention by the Chicago Police Department, Kathy Paine repeatedly telephoned and requested information from police officers assigned to the front desk of the Second District Police Station as to when Christina would be released so that she and her husband, Rick Paine, could make arrangements for Christina's care and return to California. Neither the CITY OF CHICAGO, nor its officers, notified Kathy Paine when Christina was likely to be released nor of the status of her mental condition. Further, notwithstanding Kathy Paine's repeated phone inquiries and expressions of concern, no attempt was made by any police personnel to contact Mrs. Paine regarding Christina's imminent release at or around 6:30 p.m. on May 8, 2006.

9

38.     Despite the aforesaid knowledge of Christina's deteriorating and erratic mental condition, certain Chicago police officers, namely OFFICER BENITA MILLER and PAULINE HEARD, released Christina, even though she was suffering from a psychiatric episode, without her luggage into an unfamiliar, unsafe, high crime area, thereby affirmatively and deliberately placing her in an ultra-hazardous and foreseeably dangerous environment that posed a direct, imminent and foreseeable threat for Christina to suffer life threatening bodily injuries or death.

39.     Specifically, the aforesaid officers and others released Christina in her deteriorated mental state, less than two city blocks away from the Robert Taylor Homes project building located at 5135 South Federal Street, Chicago, Illinois, well recognized by the police and public at large as a site of chronic violent crime.  In fact, the Chicago Police Department has a surveillance video camera assembled outside said Robert Taylor Homes building to monitor crime patterns of a persistent narcotics trade, purse snatchings, armed robbery and other crimes of violence which occur there.

40.     The Robert Taylor Homes project building and surrounding area is known to the CITY OF CHICAGO, its officers and the public at large, to be an extremely high crime and dangerous area.

41.     Soon after her discharge from police custody, Christina was abducted, unlawfully restrained and sexually assaulted within the aforesaid Robert Taylor Homes project building, and thereafter, Christina's body was caused to be propelled out of a seventh floor apartment window to the ground below, causing her to sustain serious and life threatening bodily injuries.

## COUNT I
### SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT AGAINST OFFICER JEFFREY JOHNSON

42.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count I.

43.     The actions of OFFICER JEFFREY JOHNSON, as detailed below, whereby OFFICER JEFFREY JOHNSON was aware of but deliberately, willfully, and wantonly ignored the obvious serious mental health needs of Christina and her substantial risk of serious injury and death, and purposefully neglected and failed to take appropriate steps to protect her.

44.     Specifically, OFFICER JEFFREY JOHNSON failed to transfer Christina to a mental health facility in violation of department policy after seeing her behaving irrationally and erratically while involved in two disturbances at Midway Airport with two different airlines on two consecutive days.

45.     On May 6, 2006, OFFICER JEFFREY JOHNSON was called to a disturbance at the Frontier Airlines ticket counter at Midway Airport, whereupon he saw Christina engaged in a verbal, aggressive confrontation with a ticket agent.  Christina was denied boarding because it was determined by OFFICER JEFFREY JOHNSON that Christina could be a danger to herself or others if permitted to board a commercial jet.

46.     After observing her erratic behavior and talking with Christina, including obtaining her California residential information and engaging in other dialogue with her, Christina was ordered to leave the airport by OFFICER JEFFREY JOHNSON, despite his knowledge that Christina was alone and was not from nor familiar with Chicago.

11

47.     The following day, May 7, 2006, OFFICER JEFFREY JOHNSON was called to another disturbance involving Christina.  This time, Christina engaged in a verbal, aggressive confrontation at a Southwest Airlines departure gate at Midway Airport.

48.     Upon his arrival to the scene, OFFICER JEFFREY JOHNSON saw Christina acting hostile, aggressive, loud and combative in the gate area.  He learned that Christina was involved in a verbal, aggressive altercation in that Christina had approached a blind person, made bizarre statements and acted aggressively toward the blind person's caretaker.

49.     Specifically, OFFICER JEFFREY JOHNSON learned that Christina was petting an assistive dog, that the caretaker of the blind man asked that Christina not touch the dog and that Christina immediately become hostile and aggressive toward the caretaker, yelled in the caretaker's face that the blind man was a phony and that he has been exposed; and yelled rap lyrics in the caretaker's face.

50.     OFFICER JEFFREY JOHNSON also learned that Christina was dancing around in a circular motion around the gate area and was yelling obscenities very loudly.

51.     Based upon her actions and inability to control her behavior, OFFICER JEFFREY JOHNSON again and other responding CHICAGO POLICE OFFICERS denied Christina access to a commercial flight because she posed a danger to herself or others aboard the airplane.

52.     OFFICER JEFFREY JOHNSON determined that Christina was not intoxicated. However, he did observe Christina take out a prescription medication bottle and take a pill.

53.     Christina told OFFICER JEFFREY JOHNSON that she was on medication and that she was just trying to get home.

54.     OFFICER JEFFREY JOHNSON, however, failed to inquire as to the type of medication, the purpose of the medication, or whether Christina had a psychiatric history.

OFFICER JOHNSON further failed to disclose Christina's irrational, confrontational and aggressive behavior observed the preceding day at the Frontier Airlines ticket counter to his superior, and failed to recommend Christina be transported to a designated mental health facility in light of her bizarre behavior on two consecutive days, which OFFICER JOHNSON believed posed dangers to Christina or others if she were permitted to board a commercial jet.

55.     As a City of Chicago Police Officer, OFFICER JEFFREY JOHNSON had a duty of care to Christina, including a duty to refrain from willful and wanton acts that would cause suffering or injury to Christina.

56.     Notwithstanding Christina's erratic behavior repeated on consecutive days and in his presence at Midway Airport, OFFICER JEFFREY JOHNSON willfully and wantonly failed to properly assess Christina's obvious unusual mental state presented on two consecutive days involving two different airlines and after witnessing Christina take prescription medication following the second occurrence.

57.     OFFICER JEFFREY JOHNSON, knowing that Christina was not from Chicago and knowing she was on medication and was acting aggressive and out of control, willfully and wantonly failed to make any efforts to assure her transport to a designated mental health facility.

58.     Despite witnessing Christina's behavior over two days, after determining she would be "troublesome" on an airplane, after observing Christina's inability to control her behavior, after observing Christina behaving erratically, after witnessing Christina take prescription medication, and knowing Christina was from out of town and not familiar with Chicago, OFFICER JEFFREY JOHNSON was deliberately indifferent to Christina's obvious needs and willfully and wantonly failed to recommend Christina be brought to a designated

13

mental health facility for a mental health evaluation and failed to timely notify other officers of Christina's erratic behavior over the course of two days.

59.     Even though OFFICER JEFFREY JOHNSON observed Christina acting irrational, having mood swings, behaving erratically, making bizarre statements and knowing that he had the duty of having Christina transferred to a mental health facility, he willfully and wantonly failed to respond to Christina's obvious mental health needs.

60.     As a direct and proximate result of one or more of the aforesaid wrongful acts and/or omissions, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER JEFFREY JOHNSON, jointly and severally, for compensatory damages in the sum of $100,000,000 and because said Defendant acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

14

## COUNT II
## 1983 ACTION AGAINST OFFICER RICHARD CASON
## FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

61.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count II.

62.     OFFICER RICHARD CASON is a veteran with the Chicago Police Department and is responsible for enforcing the laws and the ordinances of the City of Chicago.

63.     On the afternoon of May 7, 2006, OFFICER RICHARD CASON responded to a disturbance involving Christina at the CTA Orange Line train and bus station at Midway Airport.

64.     When he arrived, OFFICER RICHARD CASON observed Christina talking inappropriately to strangers, chastising them for smoking cigarettes, yelling to anyone within earshot about the price of oil and that the United States is too dependent on oil.  He recognized that Christina was acting inappropriately, was very aggressive and was getting closer than normal conversation distances to members of the public patronizing the CTA Station.

65.     OFFICER RICHARD CASON observed Christina's aggressive behavior without any type of provocation, which OFFICER RICHARD CASON considered to be unusual because Christina did not "fit the part".

66.     When OFFICER RICHARD CASON approached Christina, she was dancing by herself in the CTA lobby.  OFFICER RICHARD CASON told Christina she had to leave the station.   In response, OFFICER RICHARD CASON then observed Christina's behavior markedly change whereby she immediately became aggressive and confrontational.  Christina physically approached him and began yelling and screaming obscenities and making vulgar and bizarre statements.  Christina also threatened to take OFFICER RICHARD CASON'S gun and shoot him.

15

67.     OFFICER RICHARD CASON and his partner ROSENDO MORENO at that time decided to arrest Christina and proceeded to charge her with a state criminal trespass charge.

68.     Shortly after he placed her under arrest, OFFICER RICHARD CASON continued to observe Christina act in a bizarre and strange manner as OFFICER RICHARD CASON and his partner, OFFICER ROSENDO MORENO, took Christina from the CTA Station to the police office.    Therein, Christina began kicking, howling and screaming.    OFFICER RICHARD CASON also observed Christina dragging her feet, tried to throw herself to the ground and then continued to scream bizarre, vulgar, inappropriate and obscene statements at both OFFICER CASON and OFFICER MORENO.  Christina also threatened to "get" the officers.

69.     After Christina was brought into the police office located at the Midway Airport CTA Station, OFFICER CASON and OFFICER MORENO observed Christina continuing to yell bizarre, vulgar and obscene statements.

70.     In his interaction with Christina, OFFICER RICHARD CASON thought she was acting "goofy", thought there was something "different" about her and that she was unlike any arrestee he had encountered in his thirty-five years of employment with the Chicago Police Department.

71.     Nevertheless, OFFICER RICHARD CASON failed to respond to Christina's mental health needs, failed to bring Christina to a designated mental health facility and failed to follow department policy that requires a detainee in need of a mental health evaluation be brought to a mental health facility for evaluation.   He, instead, called for an Eighth District squadrol to take Christina to the Eighth District Police Station so she could be processed and for the filing of criminal charges.

72.     Further, from his dealings with Christina, OFFICER RICHARD CASON learned that she was from California and was trying to return home.  Despite this, OFFICER RICHARD CASON charged Christina with a state criminal trespass charge which required Christina to be later brought to the Second District lock-up, more than five miles from Midway Airport to be fingerprinted.

73.     OFFICER RICHARD CASON also knew that prior to her arrival at the CTA Orange Line Station, Christina was escorted by uniformed police officers out of Midway Airport. However, OFFICER RICHARD CASON failed to investigate or determine Christina's behavior that caused the officers to escort Christina out of the airport and to the CTA station located there.

74.     OFFICER RICHARD CASON also learned that Christina had medication in her possession.  However, OFFICER RICHARD CASON failed to inquire as to the type of medication and what purpose it served.

75.     After OFFICER RICHARD CASON arrested Christina and brought her to the Eighth District for processing, he requested a "second opinion" regarding the actions of Christina because he felt she was "goofy," knowing something was wrong with her.  OFFICER RICHARD CASON did not think Christina was a typical arrest; he thought she was clean-cut and seemed educated.  Further, it was apparent to him that she was not intoxicated by alcohol or drugs.  Yet, without provocation, she was acting abusive and directing obscenities at him and others in his presence.

76.     At the Eighth District, OFFICER RICHARD CASON observed Christina having mood swings.  He saw her crying at some points and angry at other points.  She would then be calm and friendly for a period of time, but then would spontaneously become abusive.  Despite OFFICER RICHARD CASON having observed these abrupt and swift mood swings displaying

a whole spectrum of behaviors, OFFICER RICHARD CASON was deliberately indifferent to her mental health needs and in violation of department policy by not assuring that Christina be taken to a designated mental health intake facility for evaluation.

77.     During his interview of Christina, she asked on no less than six occasions why she was arrested.  Despite her confusion as to why she was at a police station, OFFICER RICHARD CASON did not recommend Christina be taken to a designated mental health intake facility for evaluation.

78.     Moreover, despite his suspicion that Christina was suffering from some kind of mental illness and that she could possibly be a risk to herself, OFFICER RICHARD CASON deliberately failed to have Christina evaluated in a designated mental health intake facility.

79.     Further, OFFICER RICHARD CASON was also told by Chicago Police Officer YVONNE DELIA that OFFICER DELIA talked to a member of Christina's family who informed her that Christina had psychological problems in the past, that she goes through mood swings and that she was bipolar.  Notwithstanding this report and his personal observations of Christina at the CTA Station and at the Eighth District Police Station, OFFICER CASON failed to transport or recommend that Christina be taken to a designated mental health facility, or otherwise respond to her mental health needs.

80.     Even after his interview of Christina and a second-opinion interview of Christina performed by SERGEANT DAVID BERGLIND, OFFICER RICHARD CASON continued to observe Christina display more mood swings.  Specifically, OFFICER RICHARD CASON observed Christina while handcuffed in the holding area repeatedly stand up on a bench and then spontaneously sit down while her eyes roamed all over.  Further, he observed her reveal manic behavior and thought she was more fidgety than most arrestees.

81.     In the hours that OFFICER RICHARD CASON spent with Christina at the CTA Station at Midway Airport and later at the Eighth District, OFFICER RICHARD CASON recognized Christina's erratic behavior; mood swings where she presented herself to be jovial, to abruptly changing to become abusive and profane, to then become quiet and to then become jovial again, all within a short amount of time.  Despite this unusual behavior, OFFICER RICHARD CASON failed to take Christina or even recommend that she be taken to a designated mental health facility for evaluation.

82.     Moreover, OFFICER RICHARD CASON deliberately disregarded or otherwise failed to report in detail his observations to WATCH COMMANDER CARSON EARNEST and further failed to ask WATCH COMMANDER CARSON EARNEST to authorize her transfer to a designated mental health facility.

83.     Even though OFFICER RICHARD CASON observed Christina acting "crazy" and irrational, having mood swings, behaving erratically and making bizarre statements, and knew that he had the duty of having Christina transferred to a mental health facility, he deliberately failed to respond to Christina's obvious mental health needs.

84.     As a direct and proximate result of these incidents of deliberate indifference resulting in violations of the Fourteenth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the

future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER RICHARD CASON, jointly and severally, for compensatory damages in the sum of $100,000,000 and because said Defendant acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT III**
**1983 ACTION AGAINST OFFICER RICHARD CASON**
**FOR UNREASONABLE SEIZURE IN VIOLATION OF FOURTH AMENDMENT**

85.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 61 though 75, *supra*, as if fully set out herein, and expressly makes them part of Count III.

86.    At the CTA Station and the Eighth District, OFFICER RICHARD CASON observed Christina having mood swings. He saw her crying at some points and angry at other points. She would then be calm and friendly for a period of time, but then would spontaneously become abusive. Despite OFFICER RICHARD CASON having observed these abrupt and swift mood swings displaying a whole spectrum of behaviors, OFFICER RICHARD CASON was indifferent to her mental health needs and in violation of department policy by not assuring that Christina be taken to a designated mental health intake facility for evaluation.

87.     During his interview of Christina, she asked on no less than six occasions why she was arrested.  Despite her confusion as to why she was at a police station, OFFICER RICHARD CASON did not recommend Christina be taken to a designated mental health intake facility for evaluation.

88.     Moreover, despite his suspicion that Christina was suffering from some kind of mental illness and that she could possibly be a risk to herself, OFFICER RICHARD CASON failed to have Christina evaluated in a designated mental health intake facility.

89.     Further, OFFICER RICHARD CASON was also told by Chicago Police Officer YVONNE DELIA that OFFICER DELIA talked to a member of Christina's family who informed her that Christina had psychological problems in the past, that she goes through mood swings and was bipolar.  Notwithstanding this report and his personal observations at the CTA Station and at the Eighth District, OFFICER CASON failed to transport or recommend that Christina be taken to a designated mental health facility, or otherwise respond to her mental health needs.

90.     Even after his interview of Christina and a second-opinion interview of Christina performed by SERGEANT DAVID BERGLIND, OFFICER RICHARD CASON continued to observe Christina display more mood swings.  Specifically, OFFICER RICHARD CASON observed Christina while handcuffed in the holding area repeatedly stand up on a bench and then spontaneously sit down while her eyes roamed all over.  Further, he observed her reveal manic behavior and thought she was more fidgety than most arrestees.

91.     In the hours that OFFICER RICHARD CASON spent with Christina at the CTA Station at Midway Airport and later at the Eighth District, OFFICER RICHARD CASON recognized Christina's erratic behavior; mood swings where she presented herself to be jovial, to

21

abruptly changing to become abusive and profane, to then become quiet and to then become jovial again, all within a short amount of time. OFFICER RICHARD CASON thought Cristina was acting "goofy". Despite this unusual behavior, OFFICER RICHARD CASON failed to take Christina or even recommend that she be taken to a designated mental health facility for evaluation.

92.     OFFICER RICHARD CASON neglected or otherwise failed to report in detail his observations, detailed above, to WATCH COMMANDER CARSON EARNEST.

93.     Even though OFFICER RICHARD CASON observed Christina acting "crazy" and irrational, having mood swings, behaving erratically and making bizarre statements, and knew that he had the duty of having Christina transferred to a mental health facility, he unreasonably failed to respond to Christina's obvious mental health needs.

94.     As a direct and proximate result of this unreasonable conduct resulting in violations of the Fourth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

22

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER RICHARD CASON, jointly and severally, for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT IV**
**1983 ACTION AGAINST OFFICER RICHARD CASON**
**FOR FALSE ARREST AND FALSE IMPRISONMENT**
**IN VIOLATION OF THE FOURTH AMENDMENT**

95.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 85 though 94, *supra*, as if fully set out herein, and expressly makes them part of Count IV.

96.     Christina's behavior at the Midway Airport CTA station clearly indicated Christina's mental impairment rather than a criminal intent.  The arrest and detention of Christina was caused by OFFICER RICHARD CASON without any warrant, without authority of the law, without any probable cause or belief that Christina was in fact guilty of a crime, without exigent circumstances, and without any other legal justification.

97.     Without legal justification or any probable cause, OFFICER RICHARD CASON sought and gained CTA Supervisor MARK SMITH to sign a criminal complaint of criminal trespass against Christina knowing that MARK SMITH did not observe Christina at the Midway Airport CTA station and further that MARK SMITH was without knowledge as to any of Christina's actions at the Midway Airport CTA station.

98.     At all times relevant herein, OFFICER RICHARD CASON was acting within the ordinary course and scope of his employment and within the rules and customs of the Chicago Police Department when he falsely arrested Christina in violation of her Fourth Amendment rights against unreasonable seizure.

99.     Likewise, the imprisonment of Christina was caused by OFFICER RICHARD CASON without any warrant, without authority of the law, without any probable cause or belief that Christina was in fact guilty of a crime, without exigent circumstances, and without any other legal justification.

100.     OFFICER RICHARD CASON acted with the intention of confining Christina within fixed boundaries, his act directly or indirectly resulted in confinement and Christina was conscious of the confinement.

101.     OFFICER RICHARD CASON imposed on Christina, by force or otherwise, an unlawful restraint upon her freedom of movement by arresting and handcuffing her hands behind her back, transporting her in a squadrol to the Eighth District police station where she was detained and suffered inconvenience and deprivation of her constitutional right to liberty absent probable cause.

102.     OFFICER RICHARD CASON caused other employees of the police department to handcuff Christina and place her in a holding cell at the Eighth and Second District Police Stations after Christina had been wrongfully seized from the Midway Airport CTA station by OFFICER CASON AND OFFICER ROSENDO MORENO.

103.     Christina was detained, confined and falsely imprisoned in violation of her Fourth Amendment rights since OFFICER RICHARD CASON did not have probable cause to arrest Christina.

104.     OFFICER RICHARD CASON deprived Christina of her liberty by arresting and confining her, in violation of the Fourth Amendment of the Constitution.

105.    OFFICER RICHARD CASON'S misconduct was objectively unreasonable, intentional, willful and wanton and was undertaken with deliberate indifference to Christina's constitutional rights.

106.    The misconduct described in this Count was undertaken by OFFICER RICHARD CASON within the scope of his employment and his employer, CITY OF CHICAGO, is liable for his actions.

107.    As a direct and proximate result of this conduct resulting in violations of the Fourth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER RICHARD CASON, jointly and severally, for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT V
## SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON
## CONDUCT AGAINST OFFICER RICHARD CASON

108.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 61

though 75, *supra*, as if fully set out herein, and expressly makes them part of Count V.

109.    At the CTA Station and the Eighth District, OFFICER RICHARD CASON

observed Christina having mood swings.  He saw her crying at some points and angry at other

points.  She would then be calm and friendly for a period of time, but then would spontaneously

become abusive.  Despite OFFICER RICHARD CASON having observed these abrupt and swift

mood swings displaying a whole spectrum of behaviors, OFFICER RICHARD CASON was

indifferent to her mental health needs and in violation of department policy by not assuring that

Christina be taken to a designated mental health intake facility for evaluation and for willfully

and wantonly falsely arresting Christina, causing her to be falsely imprisoned.

110.    During his interview of Christina, she asked on no less than six occasions why she

was arrested.  Despite her confusion as to why she was at a police station, OFFICER RICHARD

CASON did not recommend Christina be taken to a designated mental health intake facility for

evaluation.

111.    Moreover, despite his suspicion that Christina was suffering from some kind of

mental illness and that she could possibly be a risk to herself, OFFICER RICHARD CASON

willfully and wantonly failed to have Christina evaluated in a designated mental health intake

facility.

112.    Further, OFFICER RICHARD CASON was also told by Chicago Police Officer

YVONNE DELIA that OFFICER DELIA talked to a member of Christina's family who

informed her that Christina had psychological problems in the past, that she goes through mood

swings and was bipolar. Notwithstanding this report and his personal observations at the CTA Station and at the Eighth District, OFFICER CASON willfully and wantonly failed to transport or recommend that Christina be taken to a designated mental health facility, or otherwise respond to her mental health needs.

113. Even after his interview of Christina and a second-opinion interview of Christina performed by SERGEANT DAVID BERGLIND, OFFICER RICHARD CASON continued to observe Christina display more mood swings. Specifically, OFFICER RICHARD CASON observed Christina while handcuffed in the holding area repeatedly stand up on a bench and then spontaneously sit down while her eyes roamed all over. Further, he observed her reveal manic behavior and thought she was more fidgety than most arrestees.

114. In the hours that OFFICER RICHARD CASON spent with Christina at the CTA Station at Midway Airport and later at the Eighth District, OFFICER RICHARD CASON recognized Christina's erratic behavior; mood swings where she presented herself to be jovial, to abruptly changing to become abusive and profane, to then become quiet and to then become jovial again, all within a short amount of time. OFFICER RICHARD CASON thought Christina was acting "goofy". Despite this unusual behavior, OFFICER RICHARD CASON willfully and wantonly failed to take Christina or even recommend that she be taken to a designated mental health facility for evaluation.

115. OFFICER RICHARD CASON willfully and wantonly failed to report in detail his observations, detailed above, to WATCH COMMANDER CARSON EARNEST.

116. Even though OFFICER RICHARD CASON observed Christina acting "crazy" and irrational, having mood swings, behaving erratically and making bizarre statements, and

27

knew that he had the duty of having Christina transferred to a mental health facility, he willfully and wantonly failed to respond to Christina's obvious mental health needs.

117. As a direct and proximate result of this willful and wanton conduct, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER RICHARD CASON, jointly and severally, for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

## COUNT VI
### 1983 ACTION AGAINST OFFICER ROSENDO MORENO
### FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

118. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count VI.

119.    OFFICER ROSENDO MORENO is a nineteen-year veteran with the Public Transportation Unit of the Chicago Police Department and is responsible for enforcing the laws and the ordinances of the City of Chicago.

120.    On the afternoon of May 7, 2006, OFFICER ROSENDO MORENO observed Christina behaving in a bizarre manner at the CTA train and bus station at Midway Airport.

121.    OFFICER ROSENDO MORENO observed Christina yelling and screaming at complete strangers and being confrontational with people she did not know.

122.    OFFICER ROSENDO MORENO also heard Christina speaking to a complete stranger in a way that did not make sense.  OFFICER ROSENDO MORENO heard Christina ask a complete stranger if he smoked a cigarette and then yelled at him for smoking it.  OFFICER ROSENDO MORENO also heard Christina spontaneously yell loudly within and outside the Midway Airport CTA Station to no one in particular about the price of oil and that the United States is too dependent on oil.

123.    OFFICER ROSENDO MORENO observed Christina rapidly change moods without provocation.  After OFFICER ROSENDO MORENO observed her screaming at a man with a cigarette in his mouth, he identified himself as a police officer told her she could not scream and yell on CTA property.  Christina responded by becoming quiet.  However, moments later, without provocation, he observed Christina becoming aggressive and confrontational; and started swearing and yelling at the same man.  OFFICER ROSENDO MORENO then observed Christina attempt to pull the cigarette out of the same man's mouth.

124.    After Christina failed to follow OFFICER ROSENDO MORENO's instruction to stop screaming and confronting passengers, OFFICER ROSENDO MORENO sought and

obtained the assistance of his partner OFFICER RICHARD CASON, who shortly thereafter placed Christina under arrest.

125.   Soon after her arrest, OFFICER ROSENDO MORENO observed Christina continue to act in a bizarre and strange manner.  While in the CTA station lobby, Christina began kicking, howling, screaming, as if to resist her arrest.  Christina also began dragging her feet and tried to throw herself to the ground.  At the same time, Christina continued to scream bizarre, vulgar, inappropriate and obscene statements at both OFFICER CASON and OFFICER MORENO.  Christina also threatened to "get" the officers.  OFFICER ROSENDO MORENO believed Christina was verbally aggressive and hostile.

126.   OFFICER RICHARD CASON and OFFICER ROSENDO MORENO then took Christina to the Midway Airport CTA Station police office.  After she was in police custody, OFFICER ROSENDO MORENO continued to observe Christina engage in additional unusual behaviors, including making bizarre statements.   Just minutes after she was yelling and screaming obscenities and making vulgar gestures to both officers, Christina began talking about the price of oil, how high its price was and that she wanted to be a school teacher.  OFFICER ROSENDO MORENO observed Christina speak calmly and appropriately, and suddenly begin talking loud and vulgar again.

127.   Prior to her transport by squadrol from the CTA Station to the Eighth District Police Station, OFFICER ROSENDO MORENO observed Christina present mood swings at least two to three times in a period of approximately ten to fifteen minutes.

128.   Upon her arrival to the Eighth District station, OFFICER ROSENDO MORENO observed Christina have even more mood swings.  OFFICER ROSENDO MORENO observed

Christina acting temperamental, then crying and then repeating that she wanted to be a school teacher.

129.    OFFICER ROSENDO MORENO also observed Christina behaving erratically while she was processed at the Eighth District.  He observed her standing up on a stool while handcuffed in a cubicle, jumping on a bench, standing on a metal partition next to a toilet and then having spontaneous bursts of yelling and screaming fits.

130.    OFFICER MORENO even asked Christina if she had been institutionalized because she was acting "crazy".

131.    OFFICER ROSENDO MORENO formed the opinion that he thought Christina was "crazy" and advised Chicago Police Department detectives of his assessment in the hours after her injury incident on May 8, 2006, at the Robert Taylor Homes project building.

132.    Even though OFFICER ROSENDO MORENO observed Christina "acting crazy," having mood swings, behaving erratically and making bizarre statements, OFFICER MORENO deliberately disregarded or otherwise failed to report his observations and opinion that he thought Christina was "acting crazy" to the desk sergeant or watch commander.

133.    Even though OFFICER ROSENDO MORENO observed Christina "acting crazy," having mood swings, behaving erratically and making bizarre statements, MORENO failed to take Christina or even recommend that she should be taken to a designated mental health facility for evaluation.

134.    Even though OFFICER ROSENDO MORENO observed Christina "acting crazy" and irrational, having mood swings, behaving erratically, making bizarre statements and knew that he had the duty of having Christina transferred to a mental health facility, he deliberately failed to respond to Christina's obvious mental health needs.

31

135.    As a direct and proximate result of these incidents of deliberate indifference resulting in violations of the Fourteenth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER ROSENDO MORENO, jointly and severally, for compensatory damages in the sum of $100,000,000 and because said Defendant acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT VII
## 1983 ACTION AGAINST OFFICER ROSENDO MORENO
## FOR UNREASONABLE SEIZURE IN VIOLATION OF FOURTH AMENDMENT

136.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 118 though 131, *supra*, as if fully set out herein, and expressly makes them part of Count VII.

137.    Even though OFFICER ROSENDO MORENO observed Christina "acting crazy," having mood swings, behaving erratically and making bizarre statements, OFFICER MORENO neglected or otherwise failed to report his observations and opinion that he thought Christina was "acting crazy" to the desk sergeant or watch commander.

138.    Even though OFFICER ROSENDO MORENO observed Christina "acting crazy," having mood swings, behaving erratically and making bizarre statements, MORENO failed to take Christina or even recommend that she should be taken to a designated mental health facility for evaluation.

139.    Even though OFFICER ROSENDO MORENO observed Christina "acting crazy" and irrational, having mood swings, behaving erratically, making bizarre statements and knew that he had the duty of having Christina transferred to a mental health facility, he unreasonably failed to respond to Christina's obvious mental health needs.

140.    As a direct and proximate result of this unreasonable conduct resulting in violations of the Fourth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.   Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care

and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER ROSENDO MORENO, jointly and severally, for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT VIII
### 1983 ACTION AGAINST OFFICER ROSENDO MORENO
### FOR FALSE ARREST AND FALSE IMPRISONMENT
### IN VIOLATION OF THE FOURTH AMENDMENT

141.  Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 136 though 140, *supra*, as if fully set out herein, and expressly makes them part of Count VIII.

142.  Christina's behavior at the Midway Airport CTA station clearly indicated Christina's mental impairment rather than a criminal intent.  The arrest and detention of Christina was caused by OFFICER ROSENDO MORENO without any warrant, without authority of the law, without any probable cause or belief that Christina was in fact guilty of a crime, without exigent circumstances, and without any other legal justification.

143.  At all times relevant herein, OFFICER ROSENDO MORENO was acting within the ordinary course and scope of his employment and within the rules and customs of the Chicago Police Department when he falsely arrested Christina in violation of her Fourth Amendment rights against unreasonable seizure.

144.  Likewise, the imprisonment of Christina was caused by OFFICER ROSENDO MORENO without any warrant, without authority of the law, without any probable cause or

belief that Christina was in fact guilty of a crime, without exigent circumstances, and without any other legal justification.

145.    OFFICER ROSENDO MORENO acted with the intention of confining Christina within fixed boundaries, his act directly or indirectly resulted in confinement and Christina was conscious of the confinement.

146.    OFFICER ROSENDO MORENO imposed on Christina, by force or otherwise, an unlawful restraint upon her freedom of movement by arresting and handcuffing her hands behind her back, transporting her in a squadrol to the Eighth District police station where she was detained and suffered inconvenience and deprivation of her constitutional right to liberty absent probable cause.

147.    OFFICER ROSENDO MORENO caused other employees of the police department to handcuff Christina and place her in a holding cell at the Eighth and Second District Police Stations after Christina had been wrongfully seized from the Midway Airport CTA station by OFFICER MORENO and OFFICER RICHARD CASON.

148.    Christina was detained, confined and falsely imprisoned in violation of her Fourth Amendment rights since OFFICER ROSENDO MORENO did not have probable cause to arrest Christina.

149.    OFFICER ROSENDO MORENO deprived Christina of her liberty by arresting and confining her, in violation of the Fourth Amendment of the Constitution.

150.    OFFICER ROSENDO MORENO'S misconduct was objectively unreasonable, intentional, willful and wanton and was undertaken with deliberate indifference to Christina's constitutional rights.

151.    The misconduct described in this Count was undertaken by OFFICER ROSENDO MORENO within the scope of his employment and his employer, CITY OF CHICAGO, is liable for his actions.

152.    As a direct and proximate result of this conduct resulting in violations of the Fourth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER ROSENDO MORENO, jointly and severally, for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT IX**
**SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT**
**AGAINST OFFICER ROSENDO MORENO**

153.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 118 though 131, *supra*, as if fully set out herein, and expressly makes them part of Count IX.

36

154.   Even though OFFICER ROSENDO MORENO observed Christina "acting crazy," having mood swings, behaving erratically and making bizarre statements, OFFICER MORENO willfully and wantonly failed to report his observations and opinion that he thought Christina was "acting crazy" to the desk sergeant or watch commander.

155.   Even though OFFICER ROSENDO MORENO observed Christina "acting crazy," having mood swings, behaving erratically and making bizarre statements, MORENO willfully and wantonly failed to take Christina or even recommend that she should be taken to a designated mental health facility for evaluation.

156.   Even though OFFICER ROSENDO MORENO observed Christina "acting crazy" and irrational, having mood swings, behaving erratically, making bizarre statements and knew that he had the duty of having Christina transferred to a mental health facility, he willfully and wantonly failed to respond to Christina's obvious mental health needs and further caused Christina to be falsely arrested and imprisoned.

157.   As a direct and proximate result of this willful and wanton conduct, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care

and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER ROSENDO MORENO, jointly and severally, for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

### COUNT X
### 1983 ACTION AGAINST LIEUTENANT CARSON EARNEST
### FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

158. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count X.

159. LIEUTENANT CARSON EARNEST has been with the Chicago Police Department for thirty-four years. On May 7, 2006, he was the assigned Watch Commander for the Eighth District Police Station at the time when Christina was first presented with charges by OFFICER MORENO and OFFICER CASON following her arrest.

160. While Christina was in custody at the Eighth District, LIEUTENANT CARSON EARNEST was specifically told, more than once, that Christina was demonstrating abnormal behavior. Specifically, OFFICER CASON reported to LIEUTENANT EARNEST that Christina was acting "goofy". In addition, OFFICER YVONNE DELIA reported to LIEUTENANT EARNEST that she was concerned about Christina's mental health, that her behavior was erratic and that she was concerned about Christina being placed in the women's lockup. OFFICER DELIA also reported that one of Christina's family members informed her that Christina suffered from Bipolar Disorder, a mental health condition.

161. In response, LIEUTENANT CARSON EARNEST deliberately ignored Christina's needs for a mental health evaluation and treatment by a person trained in mental health diagnoses. Instead, LIEUTENANT EARNEST ordered SERGEANT DAVID BERGLIND, who was without specialized training in assessing mental health, to speak to Christina to assess OFFICER RICHARD CASON'S and OFFICER YVONNE DELIA'S concerns about her behavior; asking SERGEANT BERGLIND to merely determine if Christina knew basic facts such as where she was and why she was in police custody. LIEUTENANT EARNEST knew that SERGEANT BERGLIND did not have any specialized training with respect to assessing the mental health of individuals.

162. Contrary to Chicago Police arrestee screening guidelines, LIEUTENANT CARSON EARNEST deliberately chose not to speak with Christina, deliberately disregarded and chose not to personally determine why an experienced police officer, OFFICER CASON, described Christina as being "goofy", deliberately failed to speak with the other arresting officer, OFFICER MORENO, and deliberately chose to avoid gaining details of Christina's abnormal behavior.

163. As Watch Commander on May 7, 2006, LIEUTENANT CARSON EARNEST had a duty to direct all police activities in the Eighth District. This duty included directing the activities of OFFICER YVONNE DELIA, OFFICER RICHARD CASON, OFFICER ROSENDO MORENO and SERGEANT DAVID BERGLIND with respect to their interactions with Christina while she was in police custody at the Eighth District Station.

164. On May 7, 2006, as watch commander, LIEUTENANT CARSON EARNEST was obligated to ensure that Christina received proper care and that her medical and mental health needs were met while in police custody. Pursuant to Chicago Police Department policy,

39

LIEUTENANT EARNEST had the authority and resources to direct the immediate transfer of Christina to a mental health facility for an evaluation and treatment. On that day, LIEUTENANT EARNEST was aware that "at risk" arrestees with a mental condition were to be transferred to a mental health facility for evaluation. LIEUTENANT EARNEST was also aware that each District had a designated mental health facility and that Mt. Sinai Hospital was the designated mental health facility where persons in custody in the Eighth District were to be brought for mental health evaluation.

165.    As Watch Commander, LIEUTENANT CARSON EARNEST was also responsible for reviewing all arrest reports and approving the charges for all arrests within the Eighth District during his watch. On May 7, 2006, LIEUTENANT EARNEST was also aware that he had the authority to release Christina without criminal charges being placed against her. In fact, prior to May 7, 2006, LIEUTENANT EARNEST had released other arrestees without criminal charges because of their erratic mental condition.

166.    As detailed above, LIEUTENANT CARSON EARNEST knew or had reason to know that Christina was demonstrating symptoms of a severe mental illness while in police custody at the Eighth District Station.

167.    Notwithstanding this knowledge and with utter disregard for her health and safety, LIEUTENANT CARSON EARNEST deliberately, willfully and wantonly failed to provide Christina with access to mental health care while in police custody at the Eighth District station despite actual knowledge of Christina's deteriorated mental condition as reported by OFFICERS CASON and DELIA.

168.    LIEUTENANT CARSON EARNEST deliberately and with utter and conscious disregard for Christina's health and safety, failed to heed the warnings of Christina's family, as

reported by OFFICER YVONNE DELIA, that Christina had a history of a significant and severe mental condition.

169.    Notwithstanding this knowledge and with utter disregard for her health and safety, LIEUTENANT CARSON EARNEST further deliberately failed to provide Christina with access to mental health care while in police custody at the Eighth District station despite reports that Christina was acting "goofy" or was otherwise suffering from a psychiatric episode.

170.    Moreover, LIEUTENANT CARSON EARNEST ignored Christina's need for a mental health evaluation by a professional diagnostician and failed to direct any officer to transport Christina to a mental health facility for evaluation, treatment or hospitalization as required by departmental policies.

171.    LIEUTENANT CARSON EARNEST also deliberately and with utter and conscious disregard for her health and safety, ordered Christina to be transferred to the Second District police station lock-up while she was undergoing a severe psychiatric episode and was at particular risk of harm while suffering from said psychiatric episode.

172.    Even though LIEUTENANT CARSON EARNEST learned that Christina was acting "goofy" and irrational, having mood swings, behaving erratically, making bizarre statements and knew that he had the duty to have Christina transferred to a mental health facility, he deliberately failed to respond to Christina's obvious mental health needs.

173.    As a direct and proximate result of these incidents of deliberate indifference resulting in violations of the Fourteenth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown

41

cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against LIEUTENANT CARSON EARNEST for compensatory damages in the sum of $100,000,000 and because said LIEUTENANT CARSON EARNEST acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT XI**
**1983 ACTION AGAINST LIEUTENANT CARSON EARNEST**
**FOR UNREASONABLE SEIZURE IN VIOLATION OF FOURTH AMENDMENT**

174. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 158 though 166, *supra*, as if fully set out herein, and expressly makes them part of Count XI.

175. Notwithstanding the above stated knowledge and with utter disregard for her health and safety, LIEUTENANT CARSON EARNEST unreasonably failed to provide Christina with access to mental health care while in police custody at the Eighth District station despite actual knowledge of Christina's deteriorated mental condition as reported by OFFICERS CASON and DELIA.

176.     LIEUTENANT CARSON EARNEST unreasonably and with utter and conscious disregard for her health and safety, failed to heed the warnings of Christina's family, as reported by OFFICER YVONNE DELIA, that Christina had a history of a significant mental condition.

177.     Notwithstanding this knowledge and with utter disregard for her health and safety, LIEUTENANT CARSON EARNEST further unreasonably failed to provide Christina with access to mental health care while in police custody at the Eighth District station despite reports that Christina was acting "goofy" or was otherwise suffering from a psychiatric episode.

178.     Moreover, LIEUTENANT CARSON EARNEST ignored Christina's need for a mental health evaluation by a professional diagnostician and failed to direct any officer to transport Christina to a mental health facility for evaluation, treatment or hospitalization as required by departmental policies.

179.     LIEUTENANT CARSON EARNEST also unreasonably and with utter and conscious disregard for her health and safety, ordered Christina to be transferred to the Second District station lock-up while she was undergoing a severe psychiatric episode and was at particular risk of harm while suffering from said psychiatric episode.

180.     Even though LIEUTENANT CARSON EARNEST learned Christina was "acting goofy" and irrational, having mood swings, behaving erratically, making bizarre statements and knew that he had the duty of having Christina transferred to a mental health facility, he unreasonably failed to respond to Christina's obvious mental health needs.

181.     As a direct and proximate result of this unreasonable conduct resulting in violations of the Fourth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt

head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against LIEUTENANT CARSON EARNEST, jointly and severally, for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

### COUNT XII
### 1983 ACTION AGAINST LIEUTENANT CARSON EARNEST
### FOR FALSE ARREST AND FALSE IMPRISONMENT
### IN VIOLATION OF THE FOURTH AMENDMENT

182. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 174 though 181, *supra*, as if fully set out herein, and expressly makes them part of Count XII.

183. Christina's behavior at the Midway Airport CTA station clearly indicated Christina's mental impairment rather than a criminal intent. The arrest and detention of Christina was caused by LIEUTENANT CARSON EARNEST without any warrant, without authority of the law, without any probable cause or belief that Christina was in fact guilty of a crime, without exigent circumstances, and without any other legal justification.

184.    At all times relevant herein, LIEUTENANT CARSON EARNEST was acting within the ordinary course and scope of his employment and within the rules and customs of the Chicago Police Department when he falsely arrested Christina in violation of her Fourth Amendment rights against unreasonable seizure.

185.    Likewise, the imprisonment of Christina was caused by LIEUTENANT CARSON EARNEST without any warrant, without authority of the law, without any probable cause or belief that Christina was in fact guilty of a crime, without exigent circumstances, and without any other legal justification.

186.    LIEUTENANT CARSON EARNEST acted with the intention of confining Christina within fixed boundaries, his act directly or indirectly resulted in confinement and Christina was conscious of the confinement.

187.    LIEUTENANT CARSON EARNEST imposed on Christina, by force or otherwise, an unlawful restraint upon her freedom of movement by arresting and handcuffing her hands behind her back, transporting her in a squadrol to the Eighth District police station where she was detained and suffered inconvenience and deprivation of her constitutional right to liberty absent probable cause.

188.    LIEUTENANT CARSON EARNEST caused other employees of the police department to handcuff Christina and place her in a holding cell at the Eighth and Second District police stations after Christina had been wrongfully seized from the Midway Airport CTA station by OFFICER ROSENDO MORENO and OFFICER RICHARD CASON.

189.    Christina was detained, confined and falsely imprisoned in violation of her Fourth Amendment rights since LIEUTENANT CARSON EARNEST did not have probable cause to arrest Christina.

45

190.    LIEUTENANT CARSON EARNEST deprived Christina of her liberty by arresting and confining her, in violation of the Fourth Amendment of the Constitution.

191.    LIEUTENANT CARSON EARNEST'S misconduct was objectively unreasonable, intentional, willful and wanton and was undertaken with deliberate indifference to Christina's constitutional rights.

192.    The misconduct described in this Count was undertaken by LIEUTENANT CARSON EARNEST within the scope of his employment and his employer, CITY OF CHICAGO, is liable for his actions.

193.    As a direct and proximate result of this conduct resulting in violations of the Fourth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against LIEUTENANT CARSON EARNEST, jointly and severally, for compensatory damages in the sum of

$100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT XIII**
**"DESHANEY" ACTION AGAINST LIEUTENANT CARSON EARNEST**

194.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XIII.

195.    At all relevant times, Christina Eilman was vested with, possessed and was guaranteed by the Fourteenth Amendment to the United States Constitution the substantive due process rights to life, liberty and personal security.

196.    On May 7, 2006, Christina was under the care, custody and control of the City of Chicago when the City detained and incarcerated her.

197.    On May 7, 2006, LIEUTENANT CARSON EARNEST was the assigned Watch Commander for the Eighth District Station at the time when Christina was first presented with charges by OFFICER MORENO and OFFICER CASON following her arrest.

198.    As Watch Commander on May 7, 2006, LIEUTENANT CARSON EARNEST had a duty to direct all police activities in his jurisdiction.

199.    On May 7, 2006, as watch commander, LIEUTENANT CARSON EARNEST had a duty to ensure that Christina received proper medical and mental health care while in police custody.

200.    When Christina was detained and incarcerated by LIEUTENANT CARSON EARNEST on May 7, 2006, a special relationship was created between Christina and LIEUTENANT CARSON EARNEST whereas LIEUTENANT CARSON EARNEST assumed an obligation to provide Christina with a minimum level of well-being and safety.

201.    When LIEUTENANT CARSON EARNEST detained and incarcerated Christina

on May 7, 2006, he was obligated to provide needed medical care to Christina.

202.    When LIEUTENANT CARSON EARNEST detained and incarcerated Christina on May 7, 2006, he was obligated to provide reasonable safety to Christina.

203.    LIEUTENANT CARSON EARNEST had the authority and resources to direct the transfer of Christina to a mental health facility for an evaluation and treatment and had the authority to release Christina from custody without charging her.

204.    Despite having actual knowledge that Christina was demonstrating symptoms of a mental illness while in police custody at the Eighth District Station, that she was not from Chicago and, if charged, that Christina would be transferred to the Second District Station, located more than seven miles from Midway Airport without her belongings, LIEUTENANT CARSON EARNEST charged Christina and directed her transfer to the Second District Station.

205.    LIEUTENANT CARSON EARNEST deprived Christina of her substantive due process rights to liberty and personal security when he deliberately and with utter and conscious disregard for her safety, allowed Christina to be transferred to the Second District Station while she was undergoing a severe psychiatric episode with actual knowledge that Christina was unfamiliar with her surroundings and was at particular risk of harm while suffering from said psychiatric episode.

206.    LIEUTENANT CARSON EARNEST deprived Christina of her substantive due process rights to liberty and personal security when he deliberately and with utter and conscious disregard, failed to heed the warnings of Christina's family, as reported by OFFICER DELIA, that Christina was suffering from a mental condition.

207.    LIEUTENANT CARSON EARNEST deprived Christina of her substantive due process rights to life, liberty and personal security when he failed to provide Christina with

access to mental health care while in police custody at the Eighth District Station and later at the Second District Station despite actual knowledge of Christina's deteriorated mental condition as reported by OFFICERS CASON and DELIA.

208.    LIEUTENANT CARSON EARNEST deprived Christina of her substantive due process rights to liberty and personal security when he ignored Christina's obvious need for mental health care and failed to direct any officer to transport Christina to a mental health facility for evaluation, treatment or hospitalization.

209.    LIEUTENANT CARSON EARNEST owed a duty to Christina to protect her substantive due process rights under these circumstances.  LIEUTENANT CARSON EARNEST breached this duty and violated Christina's substantive due process rights.

210.    LIEUTENANT CARSON EARNEST'S breach of this duty owed to Christina was wrongful and proximately caused bodily injuries to Christina, such that Christina suffered the loss of liberty and personal security at the unlawful hand of LIEUTENANT EARNEST in violation of Christina's constitutional rights.

211.    LIEUTENANT CARSON EARNEST was acting within the scope of his authority and under color of state law, and engaged in conduct that deprived Christina of her rights to be free from unreasonable harm, which was the moving force causing her injuries and is actionable under 42 USC Section 1983 as a violation of the Fourth and Fourteenth Amendments to the United States Constitution.

212.    At all times relevant hereto, LIEUTENANT CARSON EARNEST acted with deliberate indifference to Christina's constitutional rights.

213.    As a result, Christina was in a worse position after LIEUTENANT CARSON EARNEST intervened than Christina would have been had LIEUTENANT CARSON

EARNEST not done so.

214.    LIEUTENANT CARSON EARNEST acted with willful disregard for the safety and well-being of Christina.

215.    As a direct and proximate result of the willful and deliberate actions or inactions in violation of the Fourteenth Amendment, which is the moving force for the injuries, Christina has suffered loss of liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, loss of earnings, loss of capacity for the enjoyment of life, disability, medical care and treatment.  Christina's losses are permanent and continuing and Christina will continue to suffer losses in the future.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against LIEUTENANT CARSON EARNEST for compensatory damages in the sum of $100,000,000 and because said LIEUTENANT CARSON EARNEST acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT XIV**
**SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT**
**AGAINST LIEUTENANT CARSON EARNEST**

216.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 158 though 166, *supra*, as if fully set out herein, and expressly makes them part of Count XIV.

217.    Notwithstanding the above stated knowledge and with utter disregard for her health and safety, LIEUTENANT CARSON EARNEST willfully and wantonly failed to provide Christina with access to mental health care while in police custody at the Eighth District station

despite actual knowledge of Christina's deteriorated mental condition as reported by OFFICERS CASON and DELIA.

218.     LIEUTENANT CARSON EARNEST, with utter and conscious disregard for her health and safety, willfully and wantonly failed to heed the warnings of Christina's family, as reported by OFFICER YVONNE DELIA, that Christina had a history of a significant mental condition.

219.     Notwithstanding this knowledge and with utter disregard for her health and safety, LIEUTENANT CARSON EARNEST further willfully and wantonly failed to provide Christina with access to mental health care while in police custody at the Eighth District station and later at the Second District Station despite reports that Christina was acting "goofy" or was otherwise suffering from a psychiatric episode.

220.     Moreover, LIEUTENANT CARSON EARNEST ignored Christina's need for a mental health evaluation by a professional diagnostician and willfully and wantonly failed to direct any officer to transport Christina to a mental health facility for evaluation, treatment or hospitalization as required by departmental policies.

221.     LIEUTENANT CARSON EARNEST also, willfully and wantonly and with utter and conscious disregard for her health and safety, allowed Christina to be transferred to the Second District station lock-up while she was undergoing a severe psychiatric episode and was at particular risk of harm while suffering from said psychiatric episode.

222.     Even though LIEUTENANT CARSON EARNEST was aware Christina had a history of bipolar disorder, was "acting goofy" and irrational, having mood swings, behaving erratically, making bizarre statements and knew that he had the duty of having Christina

transferred to a mental health facility, he willfully and wantonly failed to respond to Christina's obvious mental health needs.

223.   As a direct and proximate result of this willful and wanton conduct, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against LIEUTENANT CARSON EARNEST, jointly and severally, for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

### COUNT XV
### 1983 ACTION AGAINST SERGEANT DAVID BERGLIND
### FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

224.   Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XV.

225. On May 7, 2006, SERGEANT DAVID BERGLIND had been employed with the Chicago Police Department for twenty years.

226. On May 7, 2006, SERGEANT DAVID BERGLIND was asked by the Eighth District Watch Commander, LIEUTENANT CARSON EARNEST, to interview Christina Eilman, in order to assess the validity of OFFICER RICHARD CASON's concern that Christina was at risk due to a prevailing psychiatric episode.

227. Prior to interviewing Christina, SERGEANT DAVID BERGLIND failed to discuss the circumstances surrounding Christina's arrest with OFFICER RICHARD CASON and OFFICER ROSENDO MORENO and further failed to inquire as to why OFFICER CASON requested a "second opinion" on Christina's mental condition.

228. SERGEANT DAVID BERGLIND further failed to investigate the reasons for Christina's arrest at the Midway Airport CTA station. Moreover, SERGEANT DAVID BERGLIND failed to talk to any other officer about Christina's behaviors, failed to interview any of the detainees and other persons about Christina's behaviors there at the CTA Station or Eighth District and failed to contact the officers assigned to Midway Airport regarding Christina's behavior at the airport who required she be ordered to leave the airport twice over two consecutive days.

229. During his interview of Christina, SERGEANT DAVID BERGLIND failed to ask whether Christina had been hospitalized for psychiatric or psychological problems, failed to ask Christina if she was taking any psychotropic medication even though he knew she had medication in her possession, and failed to verify the purpose of the medication found in Christina's purse.

230.    Before and following the interview, SERGEANT DAVID BERGLIND, made no attempt to reach any of Christina's family members by phone despite knowing Christina was not from Chicago, was not familiar with Chicago and had no way of getting home.

231.    Despite learning during the interview that just a few hours earlier Christina had been seen exposing parts of her body and was causing a disturbance at the CTA station at Midway Airport, despite Christina's repeated spontaneous complaints during his interview of her about the price of oil and that the United States was too dependent on oil, despite Christina's tendencies to spontaneously sing hip-hop music during his interview, despite knowing that Christina had prescription medication in her possession, despite knowing there was a concern expressed by fellow officer RICHARD CASON regarding Christina's mental health, and despite his awareness that SERGEANT BERGLIND lacked specialized training in assessing mental illness, SERGEANT DAVID BERGLIND failed to properly care for Christina and her serious mental health needs and further failed to recommend that Christina be taken to a Mental Health Intake facility for evaluation by someone who in fact had specialized training to make qualified mental health evaluations.

232.    Even though OFFICER DAVID BERGLIND observed Christina acting "goofy" and irrational, having mood swings, behaving erratically, making bizarre statements and knew that he had the duty to have Christina transferred to a mental health facility, he deliberately failed to respond to Christina's obvious mental health needs.

233.    As a direct and proximate result of these incidents of deliberate indifference resulting in violations of the Fourteenth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula

fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against SERGEANT DAVID BERGLIND, jointly and severally, for compensatory damages in the sum of $100,000,000 and because said Defendant acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT XVI
## 1983 ACTION AGAINST SERGEANT DAVID BERGLIND
## FOR UNREASONABLE SEIZURE IN VIOLATION OF FOURTH AMENDMENT

234.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 224 though 231, *supra*, as if fully set out herein, and expressly makes them part of Count XVI.

235.    Even though SERGEANT DAVID BERGLIND observed Christina "acting goofy" and irrational, having mood swings, behaving erratically, making bizarre statements and knew that he had the duty of having Christina transferred to a mental health facility, he unreasonably failed to respond to Christina's obvious mental health needs.

236.     As a direct and proximate result of this unreasonable conduct resulting in violations of the Fourth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.   Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

WHEREFORE, Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against SERGEANT DAVID BERGLIND, jointly and severally, for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT XVII
## SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT AGAINST SERGEANT DAVID BERGLIND

237.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 224 though 231, *supra*, as if fully set out herein, and expressly makes them part of Count XVII.

238.     Even though SERGEANT DAVID BERGLIND observed Christina "acting goofy" and irrational, having mood swings, behaving erratically, making bizarre statements and

knew that he had the duty of having Christina transferred to a mental health facility, he willfully and wantonly failed to respond to Christina's obvious mental health needs.

239.    As a direct and proximate result of this willful and wanton conduct, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against SERGEANT DAVID BERGLIND, jointly and severally, for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

### COUNT XVIII
### 1983 ACTION AGAINST DETENTION AIDE SHARON STOKES
### FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

240.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XVIII.

241.     DETENTION AIDE SHARON STOKES has been a Detention Aide with the Chicago Police Department for fifteen years.  On May 7, 2006, she was assigned to work in the Second District's female lock up.

242.     As a detention aide assigned to the lock-up, DETENTION AIDE SHARON STOKES is responsible for the well being and safety of female detainees in the lock-up.

243.     As a detention aide assigned to work the lock-up, DETENTION AIDE SHARON STOKES is responsible for reporting any unusual occurrences or irrational behavior to the desk sergeant or lock-up keeper.  Further, DETENTION AIDE STOKES was aware of and subject to Chicago Police Department policies and procedures, including Arrestee Screening Guidelines.

244.     On the evening of May 7, 2006, DETENTION AIDE SHARON STOKES was responsible for searching the arrestees entering the Second District female lock-up.

245.     On May 7, 2006, after Christina's arrest and upon her arrival at the Second District police station, DETENTION AIDE SHARON STOKES searched Christina and inventoried her personal property.  Amongst "miscellaneous items", DETENTION AIDE STOKES inventoried $7.00 United States currency.

246.     DETENTION AIDE STOKES observed Christina refuse to answer OFFICER TERESA WILLIAMS' questions, including questions about her health.   DETENTION AIDE STOKES also observed Christina acting irrationally and being uncooperative and refuse a sanitary napkin, despite having clothing stained with menstrual blood.

247.     Despite observing Christina acting irrational, refusing to answer OFFICER TERESA WILLIAMS' screening questions, being uncooperative, refusing a sanitary napkin and knowing that Christina was escorted to Cell 8, the cell reserved for uncooperative prisoners,

DETENTION AIDE SHARON STOKES deliberately failed to report these observations to the desk sergeant or acting watch commander.

248.    DETENTION AIDE SHARON STOKES further observed Christina standing on the bench in her cell, and later holding hands and singing a song with another detainee located within the cell next to Christina's.

249.    As detailed above, DETENTION AIDE SHARON STOKES had actual knowledge that Christina was acting irrationally and/or acting erratically while in police custody at the Second District police station lock-up.

250.    However, DETENTION AIDE SHARON STOKES deliberately and with utter disregard to Christina's obvious signs of a severe mental health condition, willfully and wantonly failed to investigate or report Christina's behavior to any supervisor or officer; deliberately and with utter disregard to Christina's obvious signs of a mental health condition, failed to provide Christina with access to mental health care while in police custody at the Second District Station despite actual knowledge of Christina's deteriorated mental condition and erratic behavior; ignored Christina's obvious need for mental health care and failed to request that Christina be transported to a mental health facility for evaluation, treatment or hospitalization; deliberately and with utter disregard to Christina's mental health and safety needs, failed to report Christina's behavior to any other officer or supervisor despite actual knowledge of Christina's deteriorated mental condition and erratic behavior; and deliberately and with utter disregard to Christina's mental health and safety needs, failed to investigate Christina's behavior and Christina's requests for medical treatment.

251.    Even though DETENTION AIDE SHARON STOKES observed Christina acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that

she had the duty to have Christina transferred to a mental health facility, she deliberately failed to respond to Christina's obvious mental health needs.

252.     As a direct and proximate result of these incidents of deliberate indifference resulting in violations of the Fourteenth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against DETENTION AIDE SHARON STOKES for compensatory damages in the sum of $100,000,000 and because said DETENTION AIDE SHARON STOKES acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT XIX**
**SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT**
**AGAINST DETENTION AIDE SHARON STOKES**

253. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 240 though 249, *supra*, as if fully set out herein, and expressly makes them part of Count XIX.

254. DETENTION AIDE SHARON STOKES, with disregard to Christina's obvious signs of a mental health condition, willfully and wantonly failed to investigate or report Christina's behavior to any supervisor or officer; with disregard to Christina's obvious signs of a mental health condition, failed to provide Christina with access to mental health care while in police custody at the Second District Station despite actual knowledge of Christina's deteriorated mental condition and erratic behavior; willfully and wantonly ignored Christina's obvious need for mental health care and failed to request that Christina be transported to a mental health facility for evaluation, treatment or hospitalization; with disregard to Christina's mental health and safety needs, willfully and wantonly failed to report Christina's behavior to any other officer or supervisor despite actual knowledge of Christina's deteriorated mental condition and erratic behavior; and with disregard to Christina's mental health and safety needs, willfully and wantonly failed to investigate why Christina's behavior and requests for medical heath treatment.

255. Even though DETENTION AIDE SHARON STOKES observed Christina acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that she had the duty to have Christina transferred to a mental health facility, she willfully and wantonly failed to respond to Christina's obvious mental health needs.

256. As a direct and proximate result of this willful and wanton conduct, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula

fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against DETENTION AIDE SHARON STOKES for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

**COUNT XX**
**1983 ACTION AGAINST OFFICER TERESA WILLIAMS**
**FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**

257.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 41, *supra*, as if fully set out herein, and expressly makes them part of Count XX.

258.    OFFICER TERESA WILLIAMS has been with the Chicago Police Department for approximately twenty-nine years.  On May 7, 2006 and May 8, 2006, she was assigned to work as the Lock-up Keeper for the Second District police station's female lock-up area.

259.    As an officer assigned to work the lock-up, OFFICER TERESA WILLIAMS was responsible for the well being and safety of female detainees in the lockup.  Further, OFFICER

WILLIAMS was aware of and subject to Chicago Police Department policies and procedures, including Arrestee Screening Guidelines.

260.    During her watch on May 7, 2006, at approximately 8:10 p.m., OFFICER TERESA WILLIAMS processed Christina when she was first admitted to the Second District following her transfer from the Eighth District.

261.    While OFFICER TERESA WILLIAMS was processing Christina into the Second District lock-up, OFFICER TERESA WILLIAMS conducted an assessment of Christina, including conducting a visual check and interview of Christina.

262.    During or shortly after the processing of Christina into the Second District, OFFICER TERESA WILLIAMS completed an "Arrest Processing Report" regarding Christina.

263.    In the "Arrest Processing Report", OFFICER TERESA WILLIAMS noted that Christina appeared to be "irrational".

264.    In the "Arrest Processing Report", OFFICER TERESA WILLIAMS also noted that Christina appeared to be under the influence of drugs and alcohol.

265.    On May 7, 2006, OFFICER TERESA WILLIAMS was informed, by another arrestee who spent time with Christina at the Eighth District and in the transfer wagon from the Eighth to the Second District stations, that Christina could not understand what OFFICER TERESA WILLIAMS was saying because Christina was "not right" and was suffering from Bipolar Disorder.

266.    OFFICER TERESA WILLIAMS heard Christina change her behavior from yelling and screaming to acting like a mute within a short period of time.

267.    OFFICER TERESA WILLIAMS heard Christina yelling that she, Christina, needed to go to the hospital.

273.  Another lock-up employee reported to OFFICER TERESA WILLIAMS that Christina was still acting crazy and was asking to go to the hospital.  In response, OFFICER TERESA WILLIAMS responded that there "ain't nothing wrong with her and she ain't going to the hospital and if she keeps screaming, we are going to send her to the crazy hospital."

274.  Despite these observations that Christina was acting irrationally, having mood swings, behaving erratically, making bizarre statements, being uncooperative, OFFICER TERESA WILLIAMS did not do anything to investigate Christina's well being.

275.  As detailed above, OFFICER TERESA WILLIAMS had actual knowledge that Christina was demonstrating symptoms of a severe mental illness while in police custody at the Second District Station.

276.  However, OFFICER TERESA WILLIAMS, with deliberate and utter disregard for Christina's obvious mental health needs and safety, deliberately, willfully and wantonly failed to report Christina's irrational behavior to the watch commander, desk sergeant or any supervisor as required by departmental policy; failed to properly respond to Christina's request to be taken to a hospital; failed to provide Christina with access to mental health care while in police custody at the Second District Station; failed to seek a transfer for Christina to a mental health facility for evaluation, treatment or hospitalization, and deliberately and with utter and conscious disregard for her safety, allowed Christina to be released from the Second District Station on May 8, 2006, into a dangerous high crime environment while she knew Christina was "irrational" and undergoing a severe psychiatric episode with actual knowledge that Christina was from California and unfamiliar with her surroundings and was at particular risk of harm.

277.  Even though OFFICER TERESA WILLIAMS observed Christina acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that

she had the duty to have Christina transferred to a mental health facility, she deliberately failed to respond to Christina's obvious mental health needs.

278.    As a direct and proximate result of these incidents of deliberate indifference resulting in violations of the Fourteenth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER TERESA WILLIAMS for compensatory damages in the sum of $100,000,000 and because said OFFICER TERESA WILLIAMS acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT XXI**
**SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT**
**AGAINST OFFICER TERESA WILLIAMS**

279.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 257 though 275, *supra*, as if fully set out herein, and expressly makes them part of Count XXI.

280.    However, OFFICER TERESA WILLIAMS, with disregard for Christina's obvious mental health needs and safety, willfully and wantonly failed to report Christina's irrational behavior to the watch commander, desk sergeant or any supervisor as required by departmental policy; failed to properly respond to Christina's request to be taken to a hospital; willfully and wantonly failed to provide Christina with access to mental health care while in police custody at the Second District Station; willfully and wantonly failed to seek a transfer for Christina to a mental health facility for evaluation, treatment or hospitalization, and with disregard for her safety, allowed Christina to be released from the Second District Station on May 8, 2006, into a dangerous high crime environment while she knew Christina was "irrational" and undergoing a severe psychiatric episode with actual knowledge that Christina was from California and unfamiliar with her surroundings and was at particular risk of harm.

281.    Even though OFFICER TERESA WILLIAMS observed Christina acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that she had the duty to have Christina transferred to a mental health facility, she willfully and wantonly failed to respond to Christina's obvious mental health needs.

282.    As a direct and proximate result of this willfully and wanton conduct, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown

cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER TERESA WILLIAMS for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

**COUNT XXII**
**1983 ACTION AGAINST DETENTION AIDE CYNTHIA HUDSON**
**FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**

283.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XXII.

284.    DETENTION AIDE CYNTHIA HUDSON has been with the Chicago Police Department for almost twenty-six years. On May 7, 2006 and May 8, 2006, she was assigned to work in the Second District's female lock-up.

285.    As a detention aide assigned to the lock-up, DETENTION AIDE CYNTHIA HUDSON is responsible for the well being and safety of female detainees in the lock-up.

286.    As a detention aide assigned to the lock-up, DETENTION AIDE CYNTHIA HUDSON is responsible for reporting any unusual occurrences to the desk sergeant or lockup keeper.

287.    When she reported for work at approximately 10:00 p.m., on May 7, 2006, DETENTION AIDE CYNTHIA HUDSON observed that Christina was placed in the cell that is usually reserved for uncooperative detainees.

288.    During her watch on the late evening of May 7, 2006 and the early morning of May 8, 2006, DETENTION AIDE CYNTHIA HUDSON observed Christina's behavior as being erratic and irrational.

289.    At certain times during her watch on May 7, 2006 and May 8, 2006, DETENTION AIDE CYNTHIA HUDSON observed Christina acting like a mute.

290.    On May 7, 2006 and/or May 8, 2006, DETENTION AIDE CYNTHIA HUDSON also observed Christina abruptly change her behavior from yelling and screaming, to being calm, then change again and begin yelling and screaming.

291.    On May 7, 2006 and/or May 8, 2006, DETENTION AIDE CYNTHIA HUDSON was aware that Christina was yelling, screaming, kicking and banging the bars of her cell.

292.    On May 7, 2006 and/or May 8, 2006, DETENTION AIDE CYNTHIA HUDSON was aware that Christina was yelling that dead rap musicians were going to come and rescue her.

293.    On May 7, 2006 and/or May 8, 2006, DETENTION AIDE CYNTHIA HUDSON was aware that Christina's cellmate reported that Christina was "crazy" and that Christina was "finger painting" her menstrual blood on the walls, bench and cell bars in the cell.

294.    On May 7, 2006 and/or May 8, 2006, DETENTION AIDE CYNTHIA HUDSON observed the blood in the cell that had been smeared or "finger painted" by Christina as reported by the person assigned to be Christina's cellmate.

295.    In response, DETENTION AIDE CYNTHIA HUDSON called Christina a "crazy bitch" and told Christina to clean the blood off the walls.

296.    DETENTION AIDE CYNTHIA HUDSON heard Christina request to go to the emergency room.

297.    DETENTION AIDE CYNTHIA HUDSON told POLICE OFFICER TERESA WILLIAMS that Christina was acting crazy.

298.    During May 7 and May 8, 2006, it was obvious to DETENTION AIDE CYNTHIA HUDSON that Christina suffered from a severe mental illness and was suffering a severe psychiatric episode.

299.    DETENTION AIDE CYNTHIA HUDSON deliberately failed to report any of Christina's irrational behaviors to any supervisor, desk sergeant or watch commander.

300.    DETENTION AIDE CYNTHIA HUDSON also deliberately failed to investigate Christina's irrational, bizarre and erratic behavior and deliberately ignored Christina's obvious need for immediate mental health care.

301.    As detailed above, DETENTION AIDE CYNTHIA HUDSON had actual knowledge that Christina was demonstrating symptoms of a mental illness and/or acting erratically while in police custody at the Second District police station.

302.    However, DETENTION AIDE HUDSON deliberately and with utter disregard to Christina's mental health and safety needs, willfully and wantonly failed to provide Christina with access to mental health care while in police custody at the Second District Station despite

actual knowledge of Christina's deteriorated mental condition and erratic behavior; ignored Christina's obvious need for mental health care and failed to direct any officer or request that Christina be transported to a mental health facility for evaluation, treatment or hospitalization; deliberately and with utter disregard to Christina's mental health and safety needs, failed to report Christina's behavior to any other officer or supervisor despite actual knowledge of Christina's deteriorated mental condition and erratic behavior, and further failed to investigate why Christina had been described as "irrational" by OFFICER TERESA WILLIAMS.

303. Even though DETENTION AIDE CYNTHIA HUDSON observed Christina acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that she had the duty to have Christina transferred to a mental health facility, she deliberately failed to respond to Christina's obvious mental health needs.

304. As a direct and proximate result of these incidents of deliberate indifference resulting in violations of the Fourteenth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against DETENTION AIDE CYNTHIA HUDSON for compensatory damages in the sum of $100,000,000 and because said DETENTION AIDE CYNTHIA HUDSON acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT XXIII**
**SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT AGAINST DETENTION AIDE CYNTHIA HUDSON**

305.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 283 though 298, *supra*, as if fully set out herein, and expressly makes them part of Count XXIII.

306.    DETENTION AIDE CYNTHIA HUDSON willfully and wantonly failed to report any of Christina's irrational behaviors to any supervisor, desk sergeant or watch commander.

307.    DETENTION AIDE CYNTHIA HUDSON also willfully and wantonly failed to investigate Christina's irrational, bizarre and erratic behavior and deliberately ignored Christina's obvious need for immediate mental health care.

308.    As detailed above, DETENTION AIDE CYNTHIA HUDSON had actual knowledge that Christina was demonstrating symptoms of a severe mental illness and/or acting erratically while in police custody at the Second District police station.

309.    However, DETENTION AIDE HUDSON willfully and wantonly failed to provide Christina with access to mental health care while in police custody at the Second District Station despite actual knowledge of Christina's deteriorated mental condition and erratic

71

behavior; ignored Christina's obvious need for mental health care and failed to direct any officer or request that Christina be transported to a mental health facility for evaluation, treatment or hospitalization; deliberately and with utter disregard to Christina's mental health and safety needs, failed to report Christina's behavior to any other officer or supervisor despite actual knowledge of Christina's deteriorated mental condition and erratic behavior, and further failed to investigate why Christina had been described as "irrational" by OFFICER TERESA WILLIAMS.

310.   Even though DETENTION AIDE CYNTHIA HUDSON observed Christina acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that she had the duty to have Christina transferred to a mental health facility, she willfully and wantonly failed to respond to Christina's obvious mental health needs.

311.   As a direct and proximate result of this willful and wanton conduct, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against DETENTION AIDE CYNTHIA HUDSON for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

**COUNT XXIV**
**1983 ACTION AGAINST DETENTION AIDE CATONIA QUINN**
**FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**

312.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XXIV.

313.     DETENTION AIDE CATONIA QUINN has been with the Chicago Police Department for almost fifteen years.  On the evening of May 7, 2006 and the early morning of May 8, 2006, she was assigned to work in the Second District's female lock-up.

314.     As a detention aide assigned to the lock-up, DETENTION AIDE CATONIA QUINN is responsible for the well being and safety of female detainees in the lock-up.

315.     As a detention aide assigned to work the lock-up, DETENTION AIDE CATONIA QUINN is responsible for reporting any unusual occurrences to the watch commander, desk sergeant or lock-up keeper.

316.     During her watch on the late evening of May 7, 2006 and the early morning of May 8, 2006, DETENTION AIDE CATONIA QUINN, observed Christina's behavior as being erratic and irrational.

317.     At certain time(s) during her watch on May 7, 2006 and May 8, 2006, DETENTION AIDE QUINN observed Christina acting like a mute and refusing to talk.

318.    During her watch on May 7, 2006 and May 8, 2006, DETENTION AIDE CATONIA QUINN was aware that Christina's cellmate had observed Christina wiping or "finger painting" her menstrual blood in her cell.

319.    On May 7, 2006 and/or May 8, 2006, DETENTION AIDE CATONIA QUINN observed the blood in the cell that had been smeared by Christina.

320.    During DETENTION AIDE CATONIA QUINN's watch on May 7, 2006 and May 8, 2006, Christina's cell mate requested a transfer to a different cell because of Christina's behavior.

321.    On May 7, 2006 or May 8, 2006, DETENTION AIDE CATONIA QUINN removed Christina's cellmate from the cell because of Christina's irrational behavior.

322.    On May 7, 2006 and/or May 8, 2006, DETENTION AIDE CATONIA QUINN was aware that Christina was yelling, screaming, kicking and banging the bars of her cell.

323.    On May 7, 2006 and/or May 8, 2006, DETENTION AIDE QUINN was aware that Christina was yelling that dead rap musicians were going to come and rescue her.

324.    DETENTION AIDE CATONIA QUINN was aware that DETENTION AIDE CYNTHIA HUDSON called Christina a crazy bitch and told Christina to clean the blood off the walls.

325.    DETENTION AIDE CATONIA QUINN was aware that Christina was complaining of a heart murmur and requested a transfer to the hospital.

326.    During May 7 and May 8, 2006, it was obvious that Christina suffered from a mental illness and was suffering a psychiatric episode.

327.    DETENTION AIDE CATONIA QUINN deliberately failed to report any of Christina's behaviors to any supervisor or watch commander.

74

328. DETENTION AIDE CATONIA QUINN deliberately failed to investigate Christina's bizarre and erratic behavior and deliberately ignored Christina's need for mental health care.

329. As detailed above, DETENTION AIDE CATONIA QUINN had actual knowledge that Christina was demonstrating symptoms of a severe mental illness and/or acting irrationally and erratically while in police custody at the Second District police station.

330. However, DETENTION AIDE CATONIA QUINN deliberately and with utter disregard to Christina's mental health and safety needs, willfully and wantonly failed to provide Christina with access to mental health care while in police custody at the Second District Station despite actual knowledge of Christina's deteriorated mental condition and erratic behavior; ignored Christina's obvious need for mental health care and failed to direct any officer or request that Christina be transported to a mental health facility for evaluation, treatment or hospitalization; deliberately and with utter disregard to Christina's mental health and safety needs, and further failed to report Christina's behavior to any other officer or supervisor despite actual knowledge of Christina's deteriorated mental condition and erratic behavior.

331. Even though DETENTION AIDE CATONIA QUINN observed Christina acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that she had the duty to have Christina transferred to a mental health facility, she deliberately failed to respond to Christina's obvious mental health needs.

332. As a direct and proximate result of these incidents of deliberate indifference resulting in violations of the Fourteenth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula

fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against DETENTION AIDE CATONIA QUINN for compensatory damages in the sum of $100,000,000 and because said DETENTION AIDE CATONIA QUINN acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT XXV**
**SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT**
**AGAINST DETENTION AIDE CATONIA QUINN**

333. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 312 though 326, *supra*, as if fully set out herein, and expressly makes them part of Count XXV.

334. DETENTION AIDE CATONIA QUINN willfully and wantonly failed to report any of Christina's behaviors to any supervisor or watch commander.

335. DETENTION AIDE CATONIA QUINN willfully and wantonly failed to investigate Christina's bizarre and erratic behavior and deliberately ignored Christina's need for mental health care.

336. As detailed above, DETENTION AIDE CATONIA QUINN had actual knowledge that Christina was demonstrating symptoms of a severe mental illness and/or acting irrationally and erratically while in police custody at the Second District police station.

337. However, DETENTION AIDE CATONIA QUINN willfully and wantonly and with utter disregard to Christina's severe mental health and safety needs, failed to provide Christina with access to mental health care while in police custody at the Second District Station despite actual knowledge of Christina's deteriorated mental condition and erratic behavior; ignored Christina's obvious need for mental health care and failed to direct any officer or request that Christina be transported to a mental health facility for evaluation, treatment or hospitalization; willfully and wantonly and with utter disregard to Christina's mental health and safety needs, and further failed to report Christina's behavior to any other officer or supervisor despite actual knowledge of Christina's deteriorated mental condition and erratic behavior.

338. Even though DETENTION AIDE CATONIA QUINN observed Christina acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that she had the duty to have Christina transferred to a mental health facility, she willfully and wantonly failed to respond to Christina's obvious mental health needs.

339. As a direct and proximate result of this willful and wanton conduct, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown

cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against DETENTION AIDE CATONIA QUINN for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

### COUNT XXVI
### 1983 ACTION AGAINST OFFICER DEBORAH MABERY
### FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

340.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XXVI.

341.    OFFICER DEBORAH MABERY has been with the Chicago Police Department for almost seventeen years. On May 8, 2006, she was the assigned to work the second watch in the Second District's female lock up.

342.    As an officer assigned to work the lockup of the Second District, OFFICER DEBORAH MABERY is responsible for the well being and safety of female detainees in the lockup.

343.    As an officer assigned to work the lockup at the Second District, OFFICER DEBORAH MABERY is responsible for reporting any unusual occurrences to the desk sergeant or lockup keeper.

344.    During her watch on May 8, 2006, OFFICER DEBORAH MABERY observed Christina behave erratically.

345.    During her watch on May 8, 2006, OFFICER DEBORAH MABERY observed Christina screaming and yelling.

346.    During OFFICER DEBORAH MABERY'S watch on May 8, 2006, Christina was kicking on the bars of her cell.

347.    During her watch on May 8, 2006, OFFICER DEBORAH MABERY heard Christina yelling that she needed to go to the hospital.

348.    During her watch on May 8, 2006, OFFICER DEBORAH MABERY heard Christina yell that she needed an ambulance.

349.    During her watch on May 8, 2006, OFFICER DEBORAH MABERY heard Christina scream that she had a heart murmur.

350.    During her watch on May 8, 2006, OFFICER DEBORAH MABERY heard Christina state that she was having trouble breathing.

351.    During her watch on May 8, 2006, OFFICER DEBORAH MABERY heard Christina screaming and yelling for a period of 30-35 minutes.

352.    In response to Christina's cries OFFICER DEBORAH MABERY repeatedly told Christina to "Shut the fuck up" and that there was nothing wrong with Christina and she was not going to the hospital.

353. As detailed above, OFFICER DEBORAH MABERY had actual knowledge that Christina was demonstrating symptoms of a mental illness and/or acting erratically while in police custody at the Second District police station.

354. However, OFFICER DEBORAH MABERY deliberately and with utter disregard to Christina's obvious signs of a severe mental health condition, willfully and wantonly failed to investigate or report Christina's behavior to any supervisor or officer; deliberately and with utter disregard to Christina's obvious signs of a severe mental health condition, failed to provide Christina with access to mental health care while in police custody at the Second District Station despite actual knowledge of Christina's deteriorated mental condition and erratic behavior; ignored Christina's obvious need for mental health care and failed to request that Christina be transported to a mental health facility for evaluation, treatment or hospitalization; deliberately and with utter disregard to Christina's mental health and safety needs, failed to report Christina's behavior to any other officer or supervisor despite actual knowledge of Christina's deteriorated mental condition and erratic behavior; and deliberately and with utter disregard to Christina's mental health and safety needs, failed to investigate why Christina's behavior and requests for medical treatment.

355. Even though OFFICER DEBORAH MABERY observed Christina acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that she had the duty to have Christina transferred to a mental health facility, she deliberately failed to respond to Christina's obvious mental health needs.

356. As a direct and proximate result of these incidents of deliberate indifference resulting in violations of the Fourteenth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and

internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER DEBORAH MABERY for compensatory damages in the sum of $100,000,000 and because said OFFICER DEBORAH MABERY acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT XXVII
## SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT AGAINST OFFICER DEBORAH MABERY

357. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 340 though 353, *supra*, as if fully set out herein, and expressly makes them part of Count XXVII.

358. OFFICER DEBORAH MABERY willfully and wantonly and with utter disregard to Christina's obvious signs of a severe mental health condition, failed to investigate or report Christina's behavior to any supervisor or officer; willfully and wantonly and with utter disregard to Christina's obvious signs of a severe mental health condition, failed to provide Christina with

access to mental health care while in police custody at the Second District Station despite actual knowledge of Christina's deteriorated mental condition and erratic behavior; ignored Christina's obvious need for mental health care and failed to request that Christina be transported to a mental health facility for evaluation, treatment or hospitalization; willfully and wantonly and with utter disregard to Christina's mental health and safety needs, failed to report Christina's behavior to any other officer or supervisor despite actual knowledge of Christina's deteriorated mental condition and erratic behavior; and willfully and wantonly and with utter disregard to Christina's mental health and safety needs, failed to investigate why Christina's behavior and requests for medical heath treatment.

359.    Even though OFFICER DEBORAH MABERY observed Christina acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that she had the duty to have Christina transferred to a mental health facility, she willfully and wantonly failed to respond to Christina's obvious mental health needs.

360.    As a direct and proximate result of this willful and wanton conduct, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care

and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER DEBORAH MABERY for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

### COUNT XXVIII
### 1983 ACTION AGAINST OFFICER PAMELA SMITH
### FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

361.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XXVIII.

362.    OFFICER PAMELA SMITH has been employed with the Chicago Police Department for nine years. On May 7 and 8, 2006, she was assigned to work the front desk at the Second District.

363.    During the afternoon of May 8, 2006, OFFICER PAMELA SMITH, while working as a front desk officer at the Second District, received a telephone call from Kathy Paine, Christina's mother, inquiring about Christina. During the course of said telephone conversation, Kathy Pain disclosed she was worried about Christina's release because Christina suffered bipolar disorder, a psychiatric condition, and did not wish Christina to be merely released if she was in fact suffering a psychiatric episode.

364.    Notwithstanding Kathy Paine's disclosure of said information on May 8, 2006, OFFICER SMITH deliberately and with utter and conscious disregard for Christina's safety failed to interview or otherwise investigate Christina's behavior in the lock-up recognizing

Christina had a psychiatric history, was from California and unfamiliar with Chicago, whose mother expressed grave concern by her release and knew would be released into one of Chicago's highest crime neighborhoods.

365.    Further, notwithstanding said information, on May 8, 2006, OFFICER PAMELA SMITH thereafter prepared Christina's personal recognizance bond which lead to the unfettered release of Christina from police custody instead of transporting Christina to a mental health facility or, alternatively, contacting Kathy Paine regarding Christina's imminent release. .

366.    OFFICER PAMELA SMITH deliberately and with utter and conscious disregard for her safety, prepared Christina's bond and allowed Christina to be released from the Second District Station into a dangerous high crime environment while she knew Christina may have been undergoing a severe psychiatric episode with actual knowledge that Christina was unfamiliar with her surroundings and was at particular risk of harm.

367.    At all times relevant hereto, OFFICER PAMELA SMITH acted with deliberate indifference to Christina's constitutional rights and with willful disregard for the safety and well-being of Christina.

368.    Even though OFFICER PAMELA SMITH knew of Christina's psychiatric history and her mother's concern that Christina would be at particular risk if released while suffering a bipolar psychiatric episode, she deliberately failed to determine Christina's behavior or otherwise respond to Christina's obvious mental health needs.

369.    As a direct and proximate result of these incidents of deliberate indifference resulting in violations of the Fourteenth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula

fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

WHEREFORE, Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER PAMELA SMITH for compensatory damages in the sum of $100,000,000 and because said OFFICER PAMELA SMITH acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

### COUNT XXIX
### SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT AGAINST OFFICER PAMELA SMITH

370. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 361 though 363, *supra*, as if fully set out herein, and expressly makes them part of Count XXIX.

371. Notwithstanding the above incorporated information, on May 8, 2006, OFFICER SMITH unreasonably and with disregard for Christina's safety failed to interview or otherwise investigate Christina's behavior in the lock-up, recognizing Christina had a psychiatric history, was from California and unfamiliar with Chicago, whose mother expressed grave concern by her release and knew would be released into one of Chicago's highest crime neighborhoods.

372. Further, notwithstanding this information, on May 8, 2006, OFFICER PAMELA SMITH subsequently prepared Christina's personal recognizance bond which lead to the unfettered release of Christina from police custody instead of transporting her to a mental health facility or otherwise contact Christina's parents to coordinate her safe return to her family in California.

373. OFFICER PAMELA SMITH willfully and wantonly and with utter and conscious disregard for her safety, prepared Christina's bond and allowed Christina to be released from the Second District Station into a dangerous high crime environment while she knew Christina was not from Chicago, had a psychiatric history and was at particular risk and may have been undergoing a severe psychiatric episode.

374. At all times relevant hereto, OFFICER PAMELA SMITH acted willfully and wantonly in regards to Christina's constitutional rights and with willful disregard for the safety and well-being of Christina.

375. Even though OFFICER PAMELA SMITH knew of Christina's psychiatric history and her mother's concern that Christina would be at particular risk if released while suffering a bipolar psychiatric episode, she deliberately failed to determine Christina's behavior or otherwise respond to Christina's obvious mental health needs.

376. As a direct and proximate result of this willful and wanton conduct, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will

permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER PAMELA SMITH, an award of punitive damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

**COUNT XXX**
**1983 ACTION AGAINST OFFICER BENITA MILLER**
**FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**

377.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XXX.

378.    OFFICER BENITA MILLER has been employed with the Chicago Police Department for nineteen years.  On May 8, 2006, while working the Third Watch, she was the assigned to work as the acting desk sergeant at the Second District.

379.    As the acting desk sergeant, OFFICER BENITA MILLER was responsible for overseeing bonding procedures, personally inspecting the prisoners and ensuring all cells are being kept in a reasonable clean and sanitary condition.

380.    OFFICER BENITA MILLER deliberately and with utter and conscious disregard for her safety, signed Christina's personal recognizance bond and allowed Christina to be released from the Second District police station into a dangerous environment while she knew or had reason to know that Christina was undergoing a severe psychiatric episode with actual

knowledge that Christina was unfamiliar with her surroundings and was at particular risk of harm.

381.   OFFICER BENITA MILLER escorted Christina out of the Second District and directed Christina toward 51st Street, less than two blocks from the Robert Taylor Homes housing project, an area renowned for violent street crime.

382.   A short time after OFFICER BENITA MILLER escorted Christina out of the Second District police station, OFFICER POLICE DETECTIVE ZELATORIS witnessed Christina engage in bizarre and irrational behavior act, as if to bless him by making the Sign of the Cross before proceeding through the Second District police station parking lot.

383.   Even though OFFICER BENITA MILLER knew or had reason to know that Christina was acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that she had the duty to have Christina transferred to a mental health facility, she deliberately failed to respond to Christina's obvious mental health needs.

384.   As a direct and proximate result of these incidents of deliberate indifference resulting in violations of the Fourteenth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care

and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER BENITA MILLER for compensatory damages in the sum of $100,000,000 and because said OFFICER BENITA MILLER acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT XXXI**
**"DESHANEY" ACTION AGAINST OFFICER BENITA MILLER**

385.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XXXI.

386.    At all relevant times, Christina Eilman was vested with, possessed and was guaranteed by the Fourteenth Amendment to the United States Constitution the substantive due process rights to life, liberty and personal security.

387.    On May 7 and May 8, 2006, Christina was under the care, custody and control of the City of Chicago when the City detained and incarcerated her.

388.    During the Third Watch on May 8, 2006, OFFICER BENITA MILLER was working as the acting desk sergeant at the Second District.

389.    As the acting desk sergeant, OFFICER BENITA MILLER was responsible for overseeing bonding procedures, personally inspecting the prisoners and ensuring all cells are being kept in a reasonable clean and sanitary condition.

390.    OFFICER BENITA MILLER deprived Christina of her substantive due process rights to liberty and personal security when she deliberately and with utter and conscious

89

disregard for her safety, signed Christina's bond and allowed Christina to be released from the Second District police station into a dangerous environment while she knew or had reason to know that Christina was undergoing a severe psychiatric episode with actual knowledge that Christina was unfamiliar with her surroundings and was at particular risk of harm.

391.    OFFICER BENITA MILLER escorted Christina out of the Second District and directed Christina toward 51st Street, less than two blocks from the Robert Taylor Homes housing project, an area renowned for violent street crime.

392.    As a result, Christina was put into a worse position after OFFICER BENITA MILLER intervened than Christina would have been had OFFICER MILLER not done so.

393.    OFFICER BENITA MILLER owed a duty to Christina to protect her substantive due process rights under these circumstances.  OFFICER MILLER breached this duty and violated Christina's substantive due process rights.

394.    OFFICER BENITA MILLER breach of this duty owed to Christina was wrongful and proximately caused bodily injuries to Christina, such that Christina wrongfully suffered the loss of liberty and personal security due to OFFICER MILLER'S violation of Christina's constitutional rights.

395.    OFFICER BENITA MILLER was acting within the scope of her authority and under color of state law, and engaged in conduct that deprived Christina of her rights to be free from unreasonable harm, which was the moving force causing her injuries and is actionable under 42 USC Section 1983 as a violation of the Fourth and Fourteenth Amendments to the United States Constitution.

396.    At all times relevant hereto, OFFICER BENITA MILLER acted with deliberate indifference to Christina's constitutional rights.

397.    OFFICER BENITA MILLER acted with willful disregard for Christina's safety and well-being.

398.    As a direct and proximate result of the willful and deliberate actions or inactions in violation of the Fourteenth Amendment, which is the moving force for the injuries, Christina has suffered loss of liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, loss of earnings, loss of capacity for the enjoyment of life, disability, medical care and treatment. Christina's losses are permanent and continuing and Christina will continue to suffer losses in the future.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER BENITA MILLER for compensatory damages in the sum of $100,000,000 and because said OFFICER BENITA MILLER acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT XXXII
## SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT AGAINST OFFICER BENITA MILLER

399.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 377 though 379, *supra*, as if fully set out herein, and expressly makes them part of Count XXXII.

400.    OFFICER BENITA MILLER willfully and wantonly and with utter and conscious disregard for her safety, signed Christina's bond and allowed Christina to be released from the Second District police station into a dangerous environment while she knew or had reason to know that Christina was undergoing a severe psychiatric episode with actual

knowledge that Christina was unfamiliar with her surroundings and was at particular risk of harm.

401.    OFFICER BENITA MILLER escorted Christina out of the Second District and directed Christina toward 51st Street, less than two blocks from the Robert Taylor Homes housing project, an area renowned for violent street crime.

402.    Even though OFFICER BENITA MILLER knew or had reason to know that Christina was acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that she had the duty to have Christina transferred to a mental health facility, she willfully and wantonly failed to respond to Christina's obvious mental health needs.

403.    As a direct and proximate result of this willful and wanton conduct, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER BENITA MILLER for compensatory damages in the sum of $100,000,000, an award of punitive

92

damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

### COUNT XXXIII
### 1983 ACTION AGAINST OFFICER PAULINE HEARD
### FOR DELIBERATE INDIFFERENCE TO MEDICAL NEEDS

404.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XXXIII.

405.    On May 8, 2006, OFFICER PAULINE HEARD was working the Third Watch as a lock-up employee at the Second District.

406.    On May 8, 2006, while working in the female lock-up of the Second District, OFICER PAULINE HEARD heard Christina yelling for a long period of time and to no one in particular that she wanted to be fed and heard her yelling to no one in particular "Bitch, feed me."

407.    On May 8, 2006, during the Third Watch, Christina was also heard continuously yelling for approximately thirty minutes that she wanted to make a telephone call, that her heart was hurting and that she could not breathe.  Christina's yells were accompanied by her pounding on the metal bars in her jail cell.  Christina's cries were unanswered and ignored by the Second District lock-up personnel, including Pauline Heard.

408.    When Christina was released from the Second District of May 8, 2006, OFFICER PAULINE HEARD escorted Christina out the police station doorway and then observed Christina standing in the police station parking lot with a puzzled look on her face, not knowing where to go or what to do.  OFFICER PAULINE HEARD pointed Christina toward 51st Street, less than two city blocks from the Robert Taylor Homes housing project, an area renowned for violent street crime.

409. A short time after OFFICER PAULINE HEARD directed Christina toward 51st Street, CHICAGO POLICE DETECTIVE JOHN ZELATORIS witnessed Christina engage in a bizarre, irrational act, as if to bless him by making the Sign of the Cross before proceeding through the Second District police station parking lot.

410. OFFICER PAULINE HEARD deliberately and with utter and conscious disregard for her safety, allowed Christina to be released from the Second District police station into a dangerous environment while she knew or had reason to know that Christina was undergoing a severe psychiatric episode with actual knowledge that Christina was unfamiliar with her surroundings, was irrational and was at particular risk of harm.

411. Even though OFFICER PAULINE HEARD knew or had reason to know that Christina was acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that she had the duty to have Christina transferred to a mental health facility, she deliberately failed to respond to Christina's obvious mental health needs.

412. As a direct and proximate result of these incidents of deliberate indifference resulting in violations of the Fourteenth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care

and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER PAULINE HEARD for compensatory damages in the sum of $100,000,000 and because said OFFICER PAULINE HEARD acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT XXXIV**
**"DESHANEY" ACTION AGAINST OFFICER PAULINE HEARD**

413.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XXXIV.

414.    At all relevant times, Christina Eilman was vested with, possessed and was guaranteed by the Fourteenth Amendment to the United States Constitution the substantive due process rights to life, liberty and personal security.

415.    On May 8, 2006, Christina was under the care, custody and control of the City of Chicago when the City detained and incarcerated her.

416.    On May 8, 2006, OFFICER PAULINE HEARD was working the Third Watch as a lock-up employee at the Second District.

417.    OFFICER PAULINE HEARD deprived Christina of her substantive due process rights to liberty and personal security when she deliberately and with utter and conscious disregard for her safety, allowed Christina to be released from the Second District police station into a dangerous environment while she knew or had reason to know that Christina was undergoing a severe psychiatric episode with actual knowledge that Christina was unfamiliar

with her surroundings and was at particular risk of harm.

418.    When Christina was released from the Second District of May 8, 2006, OFFICER PAULINE HEARD escorted Christina out of the police station doorway and there observed Christina standing in the police station's parking lot with a puzzled look on her face, not knowing where to go or what to do.  OFFICER PAULINE HEARD pointed Christina toward 51st Street, less than two city blocks from the Robert Taylor Homes housing project, an area renowned for violent street crime.

419.    A short time after OFFICER PAULINE HEARD directed Christina toward 51st Street, CHICAGO POLICE DETECTIVE JOHN ZELATORIS witnessed Christina engage in a bizarre, irrational act, as if to bless him by making the Sign of the Cross before proceeding through the Second District police station parking lot.

420.    As a result, Christina was put into a worse position after OFFICER PAULINE HEARD intervened than Christina would have been had OFFICER PAULINE HEARD not done so.

421.    OFFICER PAULINE HEARD owed a duty to Christina to protect her substantive due process rights under these circumstances.  OFFICER PAULINE HEARD breached this duty and violated Christina's substantive due process rights.

422.    OFFICER PAULINE HEARD'S breach of this duty owed to Christina was wrongful and proximately caused bodily injuries to Christina, such that Christina suffered the loss of liberty and personal security at the unlawful hand of OFFICER HEARD in violation of Christina's constitutional rights.

423.    OFFICER PAULINE HEARD was acting within the scope of her authority and under color of state law, and engaged in conduct that deprived Christina of her rights to be free

from unreasonable harm, which was the moving force causing her injuries and is actionable under 42 USC Section 1983 as a violation of the Fourth and Fourteenth Amendments to the United States Constitution.

424. At all times relevant hereto, OFFICER PAULINE HEARD acted with deliberate indifference to Christina's constitutional rights.

425. OFFICER PAULINE HEARD acted with willful disregard for the safety and well-being of Christina.

426. As a direct and proximate result of the willful and deliberate actions or inactions in violation of the Fourteenth Amendment, which is the moving force for the injuries, Christina has suffered loss of liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, loss of earnings, loss of capacity for the enjoyment of life, disability, medical care and treatment. Christina's losses are permanent and continuing and Christina will continue to suffer losses in the future.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER PAULINE HEARD for compensatory damages in the sum of $100,000,000 and because said OFFICER PAULINE HEARD acted deliberately, intentionally, maliciously, wantonly, or oppressively, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT XXXV
## SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT AGAINST OFFICER PAULINE HEARD

427. Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 404 though 409, *supra*, as if fully set out herein, and expressly makes them part of Count XXXV.

428.    OFFICER PAULINE HEARD willfully and wantonly and with disregard for her safety, allowed Christina to be released from the Second District police station into a dangerous environment while she knew or had reason to know that Christina was undergoing a severe psychiatric episode with actual knowledge that Christina was unfamiliar with her surroundings and was at particular risk of harm.

429.    Even though OFFICER PAULINE HEARD observed Christina acting irrational, having mood swings, behaving erratically, making bizarre statements and knew that she had the duty to have Christina transferred to a mental health facility, she willfully and wantonly failed to respond to Christina's obvious mental health needs.

430.    As a direct and proximate result of this willful and wanton conduct, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage.  Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against OFFICER PAULINE HEARD for compensatory damages in the sum of $100,000,000, an award of punitive

damages to be determined by a jury, plus the costs of this action, and such other and additional relief as this court deems equitable and just.

## COUNT XXXVI
## "DeSHANEY" COUNT AGAINST THE CITY OF CHICAGO PURSUANT TO 42 U.S.C. 1983 FOR VIOLATING CHRISTINA EILMAN'S FOURTEENETH AMENDMENT SUBSTANTIVE DUE PROCESS RIGHTS TO LIFE, LIBERTY AND PERSONAL SECURITY

431.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XXXVI.

432.    At all relevant times, Christina Eilman was vested with, possessed and was guaranteed by the Fourteenth Amendment to the United States Constitution the substantive due process rights to life, liberty and personal security.

433.    On May 7 and May 8, 2006, Christina was under the care, custody and control of the CITY OF CHICAGO when the CITY OF CHICAGO detained and incarcerated her.

434.    On May 7 and May 8, 2006, a special relationship existed between Christina and the CITY OF CHICAGO.

435.    The CITY OF CHICAGO owed a duty to Christina to protect her substantive due process rights under these circumstances.  The CITY OF CHICAGO breached this duty and violated Christina's substantive due process rights.

436.    The CITY OF CHICAGO'S breach of this duty owed to Christina was wrongful and proximately caused bodily injuries to Christina, such that Christina suffered the loss of liberty and personal security at the unlawful hand of the CITY OF CHICAGO in violation of Christina's constitutional rights.

437.    The CITY OF CHICAGO was acting within the scope of its authority and under color of state law, and engaged in conduct that deprived Christina of her rights to be free from

unreasonable harm, which was the moving force causing her injuries and is actionable under 42 USC Section 1983 as a violation of the Fourteenth Amendments to the United States Constitution. At all times relevant hereto, the CITY OF CHICAGO acted with deliberate indifference to Christina's constitutional rights.

438. On May 7 and May 8, 2006, Christina was deprived of her liberty when she was detained and incarcerated by the CITY OF CHICAGO Police Department.

439. When Christina was detained and incarcerated by the CITY OF CHICAGO Police Department, on May 7 and May 8, 2006, a special relationship was created between Christina and the CITY OF CHICAGO and its Police Department whereas the CITY OF CHICAGO assumed an obligation to provide Christina with some minimum level of well-being and safety.

440. When the CITY OF CHICAGO Police Department detained and incarcerated Christina on May 7 and May 8, 2006, it was obligated to provide needed medical care to Christina.

441. When the CITY OF CHICAGO Police Department detained and incarcerated Christina on May 7 and May 8, 2006, it was obligated to provide reasonable safety to Christina.

442. On May 7 and May 8, 2006, the CITY OF CHICAGO failed to provide Christina with a minimum level of well-being and safety.

443. On May 7 and May 8, 2006, the CITY OF CHICAGO failed to provide Christina with needed medical care.

444. On May 7 and May 8, 2006, the CITY OF CHICAGO failed to provide Christina with reasonable safety.

445. Christina was released by the Chicago Police Department from the Second District police facility on May 8, 2006, at approximately 6:30 p.m.

446.    When Christina was released from police custody on May 8, 2006, she was affirmatively placed in danger of foreseeable injury.

447.    Releasing Christina from the Second District lockup facility on May 8, 2006, while experiencing a psychiatric episode, which was known to Chicago police officers and detention aides, made Christina especially vulnerable to harm.

448.    As a result, Christina was in a worse position after the CITY OF CHICAGO intervened than Christina would have been had the CITY OF CHICAGO not done so. Christina, who was not from Chicago and not familiar with the city, had only seven dollars in cash, a non-working cellular telephone, was far from an airport, was without her belongings and was released near dark in a reputedly very dangerous high crime neighborhood. As a result, the danger or risk of injury to Christina, a person suffering a severe psychiatric episode, was greatly increased.

449.    The CITY OF CHICAGO acted with willful disregard for the safety and well-being of Christina.

450.    As a direct and proximate result of the willful and deliberate actions or inactions in violation of the Fourteenth Amendment, which is the moving force for the injuries, Christina suffered loss of liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, loss of earnings, loss of capacity for the enjoyment of life, disability, medical care and treatment. Christina's losses are permanent and continuing and Christina will continue to suffer losses in the future.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against THE CITY OF CHICAGO for compensatory damages in the sum of $100,000,000, an award of punitive

damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

**COUNT XXXVII**
**1983 ACTION AGAINST THE CITY OF CHICAGO**
**FOR FALSE ARREST AND FALSE IMPRISONMENT**
**IN VIOLATION OF THE FOURTH AMENDMENT**

451.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XXXVII.

452.     At all relevant times, the conduct of the CITY OF CHICAGO police officers and detention aides were subject to 42 U.S.C. Section 1983.

453.     The CITY OF CHICAGO maintains a policy and custom attributable to municipal policymakers.

454.     The policy and custom is the moving force behind the constitutional deprivations suffered by Christina, including unreasonable seizure in violation of the Fourth Amendment, since the arresting police officers did not have probable cause to arrest Christina.

455.     The policy and custom is that of condoning arrests and seizures where probable cause is lacking.  Such policy and custom, when enforced, causes a constitutional deprivation.

456.     The constitutional deprivations suffered and endured by Christina were caused by a person or persons within the municipality who has policymaking authority for the CITY OF CHICAGO.

457.     The policymakers showed a deliberate indifference to the known and obvious consequences of condoning police officers making an arrest without having conducted a reasonable, prior investigation.

458.     The CITY OF CHICAGO was able to foresee a constitutional violation of Christina's constitutional rights, yet it failed to take appropriate steps to protect Christina from

the known danger of arresting Christina in haste without a reasonable determination that Christina committed a crime.

459.    The CITY OF CHICAGO was able to foresee and was aware of the substantial risk of a constitutional violation of Christina's constitutional rights, yet failed to take appropriate steps to protect Christina from the known danger.

460.    Acting under the color of law, OFFICER RICHARD CASON, OFFICER ROSENDO MORENO and WATCH COMMANDER CARSON EARNEST and the CITY OF CHICAGO denied Christina's rights, privileges or immunities secured by the United States Constitution or by Federal law, by depriving Christina of her liberty with due process of law, by taking her into custody and holding her there against her will.

461.    Christina's behavior at the Midway Airport CTA station clearly indicated Christina's mental impairment rather than any criminal intent.  The arrest and detention of Christina was caused by OFFICER RICHARD CASON and OFFICER ROSENDO MORENO without any warrant, without authority of the law, without any probable cause or belief that Christina was in fact guilty of a crime, without exigent circumstances, and without any other legal justification.

462.    Likewise, the imprisonment of Christina was caused by the CITY OF CHICAGO without any warrant, without authority of the law, without any probable cause or belief that Christina was in fact guilty of a crime, without exigent circumstances, and without any other legal justification.

463.    The CITY OF CHICAGO acted with the intention of confining Christina within fixed boundaries, an act which directly or indirectly resulted in confinement and Christina was conscious of the confinement.

464.    Christina was detained, confined and falsely imprisoned in violation of her Fourth Amendment rights because the CITY OF CHICAGO maintained the aforementioned, well-settled policy and custom in the Chicago Police Department of arresting people in haste, without probable cause and that the CITY OF CHICAGO knowingly showed deliberate indifference to the substantial risks of such policy and custom.

465.    The CITY OF CHICAGO maintains a policy and custom attributable to municipal policymakers and but for such policy and custom the unlawful confinement of Christina would not have occurred.

466.    The CITY OF CHICAGO'S misconduct was objectively unreasonable, intentional, willful and wanton and was undertaken with deliberate indifference to Christina's constitutional rights.

467.    As a direct and proximate result of this conduct resulting in violations of the Fourth Amendment of the United States Constitution, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against the CITY OF CHICAGO, jointly and severally, for compensatory damages in the sum of $100,000,000, an award of punitive damages to be determined by a jury, plus the costs of this action, attorneys' fees and such other and additional relief as this court deems equitable and just.

## COUNT XXXVIII
## 1983 ACTION (MONELL CLAIM) AGAINST THE CITY OF CHICAGO

468.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 41, *supra*, as if fully set out herein, and expressly makes them part of Count XXXVIII.

469.    The actions of the individually named defendants were caused in part by one or more interrelated *de facto* as well as explicit policies, practices and/or customs and procedures of the CITY OF CHICAGO and its police department.

470.    At all times material to this Complaint, the CITY OF CHICAGO and its police department, had interrelated *de facto* policies, practices, and customs which included, *inter alia*,

(a)    The CITY OF CHICAGO and its police department's inexcusable and purposeful failure to properly train police officers to identify and respond to pretrial detainees, such as Christina, who exhibit obvious signs of mental illness, despite the existence of a protocol designed specifically to address situations in which a pretrial detainee exhibits signs of mental illness, requiring police officers to seek and transport a detainee to a designated mental health facility for a psychiatric evaluation of the pretrial detainee;

(b)    The CITY OF CHICAGO and its police department's inexcusable and purposeful failure to implement its existing policy and protocol designed specifically to address situations in which a pretrial detainee exhibits signs of mental illness, requiring police officers to seek and transport a detainee for a psychiatric evaluation of the pretrial detainee;

(c)    The failure to implement a policy commonly in place by police departments throughout the United States under which each police district has a designated police officer during each working shift possessed with knowledge of the police department's protocol and having received

specialized training in responding to pretrial detainees exhibiting obvious signs of mental illness;

(d)     Fostering an environment in which police officers are implicitly permitted if not encouraged to deliberately ignore a pretrial detainees' obvious signs of mental illness and instead are permitted to release pretrial detainees suffering from obvious signs of mental illness despite the pretrial detainee's condition instead of assuring access is given to mental health services, and

(e)     Failing to enforce its own police department policy requiring department personnel to employ certain procedures in the assessment and handling of mentally ill persons.

471.    Said policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and caused the individually named police officers and detention aide defendants to commit the aforesaid acts against Christina and, therefore, acted as direct and proximate causes of said constitutional violations, and injuries to Christina.

472.    In addition, the City of Chicago failed to implement adequate procedures to train officers to identify pretrial detainees who demonstrate obvious signs of mental illness.  The need for this training was known and so obvious and the inadequacies of the City's policies were so likely to result in a violation of constitutional rights, that the City's failure to train its officers constitutes deliberate indifference to Christina's mental health needs.   This deliberate indifference of the City proximately caused the individually named police officers and detention aide defendants to commit the aforesaid acts against Christina and, therefore, acted as a direct and proximate cause of said constitutional violations, and injuries to Christina.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, demands judgment against Defendant, CITY OF CHICAGO, for compensatory damages in the sum of $100,000,000, an award of punitive

damages to be determined by a jury, plus attorney's fees pursuant to statute and the costs of this action, and such other and further relief as this court deems just, proper, and equitable.

## COUNT XXXIX
### CLAIM UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT AGAINST THE CITY OF CHICAGO

473.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 41, *supra*, as if fully set out herein, and expressly makes them part of Count XXXIV.

474.    This cause of action is brought by Plaintiff against the CITY OF CHICAGO, pursuant to Title II of the Americans with Disabilities Act ("ADA"), which prohibits any local government or department thereof from denying the benefits of their services, programs or activities to any persons with a disability, or discriminating against any person with a disability. 42 U.S.C. § 12132.

475.    Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

476.    Prior to May 6, 2006, Christina had been hospitalized for and had a record of bipolar disorder, a mental condition that has impacted and substantially limited one or more of her major life activities.

477.    Christina's pre-existing bipolar disorder renders her disabled within the meaning of Title II of the ADA.

478.    Christina's pre-existing bipolar disorder is permanent in nature and causes Christina to experience severe phases of manic or depressive behavior.

479.    Prior to and on May 6, 2006, May 7, 2006 and May 8, 2006, Christina's bipolar disorder and the severe manic and depressive phases experienced by her as a result, substantially limited and severely impacted her ability to conduct one or more of her major life activities as compared to the average person in the general population.

480.    Specifically, prior to and on May 6, 2006, May 7, 2006, and May 8, 2006, when Christina experienced a severe manic or depressive episode caused by her bipolar disorder, it impacted and substantially limited her ability to care for her own health, safety and well-being, her ability to communicate and interact with others, her ability to safely travel freely and independently and her ability to attend college classes as compared to the average person in the general population.

481.    On May 6, 2006, May 7, 2006 and May 8, 2006, Christina's disability was readily apparent to the CITY OF CHICAGO police officers, employees and agents from observation of Christina and from reports by her parents and other private citizens who observed or otherwise had contact with her on said dates.

482.    The CITY OF CHICAGO is a public entity within the meaning of Title II of the ADA.

483.    The CITY OF CHICAGO under Title II is required to train its police officers, employees and agents to recognize circumstances that would lead them to identify individuals that suffer from mental illness, and to investigate, approach, detain and/or arrest such persons in a manner reasonably accommodating their disability.

484.    On May 6, 7 and 8, 2006, employees, agents and policy makers of the CITY OF CHICAGO unlawfully discriminated against Christina because of her disability.

485.    The CITY OF CHICAGO violated Christina's federally guaranteed right to be
free from discrimination based on her disability as follows:

   a.   When the CITY OF CHICAGO's officers, agents and/or employees arrested
        Christina based on her disability.

   b.   When the CITY OF CHICAGO officers, employees and agents failed to
        accommodate Christina's disability.

   c.   When the CITY OF CHICAGO officers, employees and agents failed to
        follow established procedure and transport Christina to a mental health facility
        for evaluation.

   d.   By the City's failure to train its police officers to recognize symptoms of
        disabilities and failing to train officers regarding the procedures for handling
        such as transporting individuals in need of a mental health evaluation to a
        mental health facility.

   e.   By the City's failure to implement and/or modify police policies and
        procedures to ensure that Christina's needs as an individual with a disability
        would be met and that she would not be discriminated against based on her
        disability.

   f.   By the City's failure to provide adequate training and resources for the CITY
        OF CHICAGO's officers, employees and agents to properly respond to
        persons, like Christina, suffering from mental health disabilities.

486.    The CITY OF CHICAGO further violated Christina's rights by acting and failing
to act as alleged in Counts I thru XLVI, above.

487.    By these actions, the CITY OF CHICAGO has deprived Christina of her rights
secured by Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.  As a direct and
proximate result of one or more of the aforesaid wrongful acts and/or omissions, Christina
sustained and continues to suffer from severe and life threatening injuries, both externally and
internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula
fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown
cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and

emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person demands judgment against the CITY OF CHICAGO for compensatory damages and pain and suffering in the sum of $100,000,000, reasonable attorneys fees, plus the costs of this action, and such other and further relief as this court deems just, proper, and equitable.

**COUNT XXXX**
**SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON
CONDUCT AGAINST DEFENDANT CITY OF CHICAGO**

488.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 though 487, *supra*, as if fully set out herein, and expressly makes them part of Count XXXX.

489.    On May 7 and May 8, 2006, Christina was in the custody and under the complete control of the CITY OF CHICAGO through its police officers and detention aides.

490.    The CITY OF CHICAGO is liable for the conduct of its police officers, detention aides, servants, agents and/or employees and any judgments rendered against its officers and detention aides, servants, agents and/or employees arising in the course of their employment, pursuant to Illinois common law and 745 ILCA 10/2-302.

491.    At the time and place of her custody, the CITY OF CHICAGO and its police officers, detention aides, servants, agents and/or employees had a duty of care to Christina,

including a duty to refrain from willful and wanton acts that would cause suffering or injury to Christina.

492.    As detailed above, the CITY OF CHICAGO and its police officers, detention aides, servants, agents and/or employees had actual knowledge or should have known that Christina was suffering from a severe mental condition and was experiencing a severe psychiatric episode which could cause harm to herself or others.  The CITY OF CHICAGO and its police officers, detention aides, servants, agents and/or employees and from reports given by private citizens, including Christina's parents, had actual knowledge of Christina's severe symptoms of mental illness before and while in police custody.  Christina's condition required immediate transfer to a mental health treatment facility to protect her from imminent harm.

493.    However, notwithstanding said knowledge, the CITY OF CHICAGO and its officers, detention aides, agents, servants and/or employees, demonstrated a willful and wanton and utter indifference to Christina's mental health needs and safety when the CITY OF CHICAGO and its officers, agents, servants and/or employees deliberately ignored Christina's need for immediate mental health care and the Chicago Police Department's policies when they were aware of her risk for harm.

494.    In addition, the CITY OF CHICAGO and its officers, agents, servants and/or employees demonstrated a willful and wanton and utter indifference to Christina's safety when the CITY OF CHICAGO and its officers, detention aides, agents, servants and/or employees released Christina into a dangerous environment with actual knowledge that she was suffering from an obvious mental illness and experiencing a psychiatric episode and was in danger of harm.  Said willful and wanton conduct amounted to a reckless disregard for Christina's health, safety and welfare.

495.    As detailed above, the CITY OF CHICAGO and its police officers, detention aides, servants, agents and/or employees willfully and wantonly committed one or more of the following acts:

(a)    Deliberately failed to provide Christina with access to mental health care before and at the time of her arrest, while in police custody and at the time of her custodial release despite actual knowledge of Christina's deteriorated mental condition and her psychiatric history;

(b)    Deliberately failed to provide Christina with access to mental health care before and at the time of her arrest, while in police custody and at the time of her custodial release despite actual knowledge that Christina's was suffering from a psychiatric episode which presented her with a risk of serious harm;

(c)    Deliberately and with utter disregard for Christina's safety and mental condition failed before and at the time of her arrest, while in police custody and at the time of her custodial release, to heed the warnings of Rick and Kathy Paine that Christina suffered from Bipolar Disorder, had previously been institutionalized and was likely not taking her medication;

(d)    Deliberately and with utter disregard for Christina's safety before and at the time of her arrest, while in police custody and at the time of her custodial release, failed to provide Rick and Kathy Paine access to information regarding Christina, her condition and her release, which would have afforded them the opportunity to provide for Christina's safety;

(e)    Deliberately represented to Kathy and Rick Paine that any decision regarding what to do with Christina and her psychiatric condition would remain the responsibility of Chicago police officers and then deliberately and recklessly failed to provide any care or protection for Christina's safety;

(f)    Deliberately and with utter and conscious disregard for her safety, released Christina while she was undergoing a severe psychiatric episode into an unsafe high crime area with actual knowledge that Christina was unfamiliar with her surroundings and was at particular risk of harm while suffering from said psychiatric episode.

496.    Even though the CITY OF CHICAGO and its police officers, detention aides, servants, agents and/or employees observed Christina acting "crazy", having mood swings,

behaving erratically, making bizarre statements and knew that Christina was in need of transport to a mental health facility for evaluation, they deliberately failed to respond to Christina's obvious mental health needs.

497. As a direct and proximate result of one or more of the aforesaid wrongful acts and/or omissions, Christina was placed into a foreseeably dangerous environment wherein Christina was abducted, unlawfully restrained and sexually assaulted, and was caused to fall seven stories from an apartment window to the ground. As a direct consequence, Christina sustained and continues to suffer from severe and life threatening injuries, both externally and internally, including cervical and lumbar spine fractures, pelvic and right tibia and fibula fractures, blunt head trauma, resulting in severe brain hemorrhaging and brain injury, unknown cognitive damage, collapsed lungs, partial paralysis to the lower torso, bruises, contusions and emotional damage. Christina suffers and will continue to suffer great pain and anguish, and will permanently be kept from attending to her ordinary affairs and duties; has lost and will in the future lose great gains which she would otherwise have made and acquired; has become and will continue to become liable for large sums of money for medical, hospital care and long term care and attention; and has suffered and will forever continue to suffer great and unimaginable losses and pain to her body and mind.

**WHEREFORE,** Plaintiff, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person demands judgment against the CITY OF CHICAGO and its police officers, detention aides, servants, agents and/or employees, jointly and severally, for compensatory damages in the sum of $100,000,000. Further, KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a disabled person, plus the

costs of this action, and such other and further relief as this court deems just, proper, and equitable.

**The Plaintiff demands a trial by jury on each and every count of this Complaint at Law.**

Respectfully submitted,

SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.

By:___s/ Jeffrey Singer_____
Attorneys for Plaintiff, **KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person**

**DATED:** November 24, 2008

Jeffrey Singer, Esq. (ARDC #02620510)
Misty R. Martin, Esq. (ARDC #06284999)
Christina Schmucker, Esq. (ARDC #06283955)
SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.
5500 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606
(312) 645-7800

114