IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person,<br><br>Plaintiff,<br>v.<br><br>OFFICER JEFFREY JOHNSON, OFFICER, RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a municipal corporation,<br><br>Defendants. | Case No. 06-cv-3173<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kathleen Paine ("Paine"), as Guardian of the Estate of Christina Rose Eilman ("Eilman"), filed this suit against the City of Chicago and various members of the Chicago Police Department (collectively, "Defendants"), alleging violations of Eilman's constitutional rights and violations of federal and Illinois law. As more fully set forth in this Court's Memorandum Opinion and Order dated November 7, 2008, Paine brings this suit on behalf of Eilman, her daughter, for injuries that Eilman incurred after the Chicago Police Department released her from custody. Paine has now moved to exclude all or parts of the proposed testimony of eight expert witnesses. Defendants have moved to exclude all or parts of the proposed testimony of seven expert witnesses.

For the reasons set forth herein, Paine's Motion to Bar the Opinion Testimony of Dr. Mindy Bradley-Engen is granted

**STANDARD OF REVIEW**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) and its progeny. *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Seventh Circuit has developed a three-step admissibility analysis for expert testimony under Rule 702 and *Daubert*. *See Ervin*, 492 F.3d at 904. First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (quoting Fed.R.Evid. 702). Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable." *Id.* (citing *Daubert*, 509 U.S. at 592-93). Courts are, however, granted "broad latitude when [they] decide[] *how* to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S 137, 142 (1999). Finally, the expert's testimony must be relevant, or "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904.

**DISCUSSION**

**I. Paine's Motion to Bar the Expert Testimony of Dr. Mindy Bradley-Engen**

Dr. Mindy Bradley-Engen ("Bradley-Engen") is a sociologist with particular academic and personal expertise on the topics of exotic dance socialization and strip club culture. Bradley-Engen proposes to testify that certain of Eilman's behaviors during her time in Chicago "are consistent with

2

one's involvement in strip clubs and working as an exotic dancer (aka stripper)" and that some of Eilman's actions were "characteristically similar to descriptions of stripper behavior as described in the literature." (R. 575, Ex. A, Expert Report of Dr. Mindy Bradley-Engen, at 2, 5.) Social science experts may be permitted to testify as to the practices of individuals within a particular culture. *See Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 481 (9th Cir. 1991) (expert anthropological testimony properly admitted in order "to assist the trier of fact to understand certain behavior"). However, Paine challenges Bradley-Engen's testimony as unreliable, not based on sufficient facts or data, and irrelevant.

### A. Qualifications

Paine does not contest Bradley-Engen's qualifications as an expert sociologist. A review of her resume reveals that she has a doctorate in sociology and has published and presented extensively on the topics of exotic dance and "adult careers." (*See* R. 615, Ex. Q, Curriculum Vitae of Mindy S. Bradley-Engen, Ph.D.) Accordingly, the Court finds her qualified to testify as an expert sociologist on this topic.

### B. Methodology

Paine challenges Bradley-Engen's proposed conclusion on methodological grounds. The conclusions of social science experts must meet the same standards as those of experts in the hard scientists, although "the measure of intellectual rigor will vary by the field of expertise . . . ." *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996). That means that the Court must consider whether Bradley-Engen's conclusions are testable, subjected to peer review or publication, produced by a reliable method using some discernable technique, and the result of a generally accepted

methodology or process. *See Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 418 (7th Cir. 2005).

Here, Bradley-Engen's testimony about the cultural traits of exotic dancers is based upon a contested assumption that Eilman's work experience in this area was sufficient to "socialize" her into the exotic-dance culture such that she could be expected to demonstrate the traits of that culture. This testimony is potentially helpful to the jury because social scientists have the ability to show jurors "that commonly accepted explanations for behavior are, when studied more closely, inaccurate." *Tyus*, 102 F.3d at 263.

Bradley-Engen's conclusion about Eilman's socialization into the world of exotic dance is based upon Bradley-Engen's review of the deposition testimony of other witnesses in this litigation and of video footage of Eilman during her time in Chicago, as well as Eilman's business cards, MySpace photos, and strip club employment records. Bradley-Engen's deposition further reflects that she examined the websites of the clubs where Eilman worked. (*See* R. 575, Ex. B, Deposition Testimony of Dr. Mindy Bradley-Engen, at 74-79.) (hereinafter "Bradley-Engen Dep.") However, Bradley-Engen is rather vague about the specifics of Eilman's experience as an exotic dancer—for example, she does not know the specific dates during which Eilman worked as a dancer (*see* Bradley-Engen Dep. at 74), nor does she know how many times Eilman danced (*see* Bradley-Engen Dep. at 98.). Bradley-Engen did not speak with Eilman about her experiences as an exotic dancer, nor did she visit any of the clubs where Eilman worked in order to gain insight into the environments in which Eilman worked.

This is not a sufficient basis upon which to formulate a positive conclusion that someone has been socialized into, and adopted the characteristics, of a particular subculture. Experts must reach

their conclusions through reasonable methods using sufficient data, and "talking off the cuff . . . is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000). Here, Bradley-Engen points to no particular method or principle according to which she reached her conclusions, and seems to have simply assumed that Eilman's experience as an exotic dancer, regardless of the length or nature of that experience, was sufficient to inculturate her into the realm of adult-entertainment culture. This assumption is neither reasoned nor founded on appropriate data, and Bradley-Engen's conclusion is therefore inadmissible. *See id*; *see also Zenith Electronics Corp.*, 395 F.3d at 418 (an expert's "intuition" about what a particular conclusion should be "won't do").

### C. Relevance

Even if the Court were to find that Bradley-Engen's conclusion**s** were methodologically sound, they would still be inadmissible because they are not relevant to the jury's determination of any fact at issue in this litigation. Defendant's treatment of Eilman can be assessed only by reference to what the Defendants knew about her at the time, and not by a sociologist's after-the-fact explanation that her behavior could possibly be explained by her experience as an exotic dancer. For Defendants to have altered their calculus of whether to take Eilman for a mental evaluation, or whether to accommodate her as a person with a disability, on the basis of this alternative explanation for her behavior would have required first that Defendants have known that Eilman worked as an exotic dancer, and second that Defendants have known that her behaviors were characteristics of individuals socialized into the world of exotic dance and therefore did not pose a mental health or medical concern. Only one Defendant officer, Sergeant David Berglind, testified at deposition that Eilman had told him that she "was a stripper." (*See* R. 615, Ex. I, Deposition Testimony of David

Berglind, at 114-15.) There is no indication in the record that he shared this information with other officers or detention aides.

There is also no evidence in the record that any Defendant officer had any knowledge of the sociological characteristics of exotic-dance subculture or of the behaviors that those socialized into the subculture would exhibit. Finally, there is no evidence that Defendants' handling of Eilman during her time in detention was at all influenced by an impression, assumption, or idea that her behavior was normal and explainable as the conduct of one who had been socialized into the exotic dance subculture, and that she therefore did not require a mental health evaluation or accommodation for a disability.

Because Bradley-Engen's conclusions about a possible explanation for Eilman's behavior that Defendants did not know at the time of her detention will not assist the jury in determining any fact relevant to the outcome of this litigation, her testimony is irrelevant and therefore barred.

Paine's Motion to Bar the Opinion Testimony of Dr. Mindy Bradley-Engen is granted.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 18, 2010