IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATHLEEN PAINE, as Guardian of the     )
Estate of CHRISTINA ROSE EILMAN,     )
a Disabled Person,     )
    )    Case No. 06-cv-3173
               Plaintiff ,     )
      v.     )    Judge Virginia M. Kendall
    )
OFFICER JEFFREY JOHNSON, OFFICER,     )
RICHARD CASON, OFFICER ROSENDO     )
MORENO, LIEUTENANT CARSON     )
EARNEST, SERGEANT DAVID BERGLIND,     )
DETENTION AIDE SHARON STOKES,
OFFICER TERESA WILLIAMS, DETENTION
AIDE CYNTHIA HUDSON, DETENTION
AIDE CATONIA QUINN, OFFICER
DEBORAH MABERY, OFFICER PAMELA
SMITH, OFFICER BENITA MILLER,
OFFICER PAULINE HEARD, and CITY OF
CHICAGO, a municipal corporation,

               Defendants


**MEMORANDUM OPINION AND ORDER**

Plaintiff Kathleen Paine ("Paine"), as Guardian of the Estate of Christina Rose Eilman

("Eilman"), filed this suit against the City of Chicago and various members of the Chicago Police

Department (collectively, "Defendants"), alleging violations of Eilman's constitutional rights and

violations of federal and Illinois law. As more fully set forth in this Court's Memorandum Opinion

and Order dated November 7, 2008, Paine brings this suit on behalf of Eilman, her daughter, for

injuries that Eilman incurred after the Chicago Police Department released her from custody. Paine

has now moved to exclude all or parts of the proposed testimony of eight expert witnesses.

Defendants have moved to exclude all or parts of the proposed testimony of seven expert witnesses.

For the reasons set forth below, Paine's Motion In Limine and Motion to Bar the Opinion Testimony and Report of Defendants' Gynecology Expert, Dr. Linda Hughey Holt, is granted.

## STANDARD OF REVIEW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Seventh Circuit has developed a three-step admissibility analysis for expert testimony under Rule 702 and *Daubert*. *See Ervin*, 492 F.3d at 904. First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (quoting Fed.R.Evid. 702). Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable." *Id.* (citing *Daubert*, 509 U.S. at 592-93). Courts are, however, granted "broad latitude when [they] decide[] *how* to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S 137, 142 (1999). Finally, the expert's testimony must be relevant, or "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904.

## DISCUSSION

### I. Paine's Motion to Bar the Expert Testimony of Defendants' Gynecology Expert, Dr. Linda Hughey Holt

Dr. Linda Hughey Holt ("Holt") is a licensed Illinois physician who is actively involved in clinical practice and teaching in obstetrics and gynecology. Holt proposes to testify, based upon her review of Eilman's medical records and other material in the record, that Eilman's gynecological

and menstrual history was normal and that she was not "bleeding an unusual amount" while in police custody. (R. 549, Ex. A., Report of Dr. Linda Hughey Holt, at 2.) (hereinafter "Holt Rep.") Paine moves to bar Holt's testimony on the grounds that it will not assist the jury and is thus not a proper subject for expert testimony, and that it is irrelevant and would constitute an undue waste of time.

## A. Qualifications

Paine does not contest Holt's qualifications to testify as an expert in the field of gynecological medicine. The Curriculum Vitae attached to Holt's report reveals a long and distinguished career of medical practice and academic scholarship. (*See* Holt. Rep. App'x 1-7. ) The Court therefore finds her qualified to offer the opinions contained in her report. *See Reilly v. Blue Cross & Blue Shield United of Wisc.*, 846 F.2d 416, 421 (7th Cir. 1988) (reviewing experts' curricula vitae in order to support an unchallenged finding that the experts were qualified in their fields).

## B. Methodology

Although the issue of methodological soundness is not raised in Paine's Motion to Bar, the Court may raise issues affecting the admissibility of expert testimony *sua sponte*. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Experts must not only base their conclusions upon sufficient data and use reliable principles and methods, they must also apply "the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *see Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("An expert must offer good reason to think that his approach produces an accurate estimate using professional methods . . . ."). Expert opinions must result from a reasoned process supported by adequate data. *See Lewis*, 561 F.3d at

705 ("[A] medical expert's ultimate opinion must be grounded in the scientific process and may not be merely a subjective belief or unsupported conjecture.").

Holt's report states that she reviewed Eilman's medical records, the deposition testimony of Eilman's family doctor, photographs of Eilman's athletic shorts worn during her time in custody, and deposition material from Eilman's fellow detainees. (Holt Rep. at 1.) On the basis of this review, Holt concluded that Eilman "had no significant gynecological history" and that her menstrual periods were normal. (Holt Rep. at 2.) Holt's report further states that an "average overall menstrual blood loss is <80 cc over 4-7 days" and that Eilman's blood flow during her time in custody did not appear unusual. (Holt Rep. at 1-2.) While the report itself does not provide a source for the data regarding normal blood loss, Holt testified at deposition that she referred to a gynecology textbook in order to find the specific number, but that her initial estimate had been generally based on her background, training and general knowledge. (R. 549 Ex. B., Deposition Testimony of Dr. Linda Hughey Holt, at 18, 101.) (hereinafter "Holt Dep.") The material upon which Holt relied thus appears to have been "of a type reasonably relied upon by experts in the particular field." Fed. R. Evid. 703.

On this basis, Holt proposes to testify that Eilman's menstrual flow was normal in the amount of 80 ccs of blood loss over a period of four to seven days. However, Holt stated during her deposition that there is "little information . . . of quantifying what a normal menstrual blood loss is, I think because there's such a wide range." (Holt Dep. at 22.) She later stated that a forthcoming medical textbook for which she had written a chapter "wouldn't really cover what's considered to be normal because there is . . . such a wide range of what is normal." (Holt Dep. at 28.) Moreover, Holt's deposition testimony covered a wide range of factors that could affect an individual woman's menstrual blood flow at a particular time, such whether she was near the beginning of her flow (*see*

Holt Dep. at 102-03), whether she was using oral contraceptives (*see* Holt Dep. at 113-14), and whether she was experiencing unusual stress or anxiety (*see* Holt Dep. at 123-24). Holt does not appear to have considered the potential applicability of these factors in reaching her ultimate conclusion that Eilman's blood flow during her time in custody was not unusual. Holt's proposed testimony that 80 ccs of blood flow is a normal amount, and that Eilman's menstrual history was normal, may lead the jury to believe that Eilman could not have produced any greater or lesser amount of blood while in custody, without appropriate consideration of these medical factors.

Thus, even though Holt's qualifications are sound and the basis upon which she reached her opinions acceptable, her testimony is fatally flawed because she has failed to adequately address medical considerations that her deposition testimony acknowledges to be relevant to the facts of this particular case. *See Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999) ("A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant . . . .") Holt's testimony is properly barred due to this methodological concern. Since there is an additional ground upon which it may be barred, however, the Court will continue the analysis in order to address all relevant issues.

### C. Relevance

Paine argues that Holt's proposed testimony is irrelevant because the fact that Eilman had her menstrual period during her time in police custody is undisputed, and testimony as to the amount and normalcy of her blood flow does not bear on any disputed or consequential facts. *See* Fed. R. Evid. 401 ("'Relevant evidence; means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.") Defendants respond that the testimony is relevant because Paine has repeatedly pointed to Eilman's behavior with respect to the blood in order to support her claim

that Eilman's need for mental health assistance was obvious. Thus, Defendants assert, Holt's testimony as to the limited amount of actual blood flow is relevant to their argument that Eilman's alleged "finger painting" with her menstrual blood was not an adequate basis to send her for a psychiatric evaluation. The Court finds that the proposed testimony is relevant in that it is reasonably likely to assist the jury in reconciling conflicting accounts as to Eilman's behavior with her menstrual blood.

### D. Misleading Evidence

Although Holt's testimony is relevant, there is a real concern that it will confuse or mislead the jury rather than assist it in its role as the ultimate trier of fact. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of . . . misleading the jury . . . ." Here, Holt's testimony may lead the jurors to trust her expert testimony above their own consideration of the eyewitness testimony and photographic evidence. Expert testimony may properly be excluded where other evidence in the record is sufficient to allow jurors to "make a determination for themselves" as to the issue in dispute. *See Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 714 (7th Cir. 2004). This is such an instance, and the addition of Holt's methodologically unsound conclusion will only mislead, and not assist, the jury in their role as the ultimate finder of fact.

Paine's Motion In Limine and Motion to Bar the Opinion Testimony and Report of Defendants' Gynecology Expert, Dr. Linda Hughey Holt, is therefore granted due to the methodological concerns implicated in Holt's report and the danger that her testimony will unduly mislead the jury.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 23, 2010