IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person,<br><br>                        Plaintiff,<br>v.<br><br>OFFICER JEFFREY JOHNSON, OFFICER, RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a municipal corporation,<br><br>                        Defendants. | Case No. 06 C 3173<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

      Plaintiff Kathleen Paine ("Paine"), as Guardian of the Estate of Christina Rose Eilman ("Eilman"), filed this suit against the City of Chicago and various members of the Chicago Police Department (collectively, "Defendants"), alleging violations of Eilman's constitutional rights and violations of federal and Illinois law. As more fully set forth in this Court's Memorandum Opinion and Order dated February 25, 2010, Paine brings this suit on behalf of Eilman, her daughter, for injuries that Eilman incurred after the Chicago Police Department released her from custody. Paine has now moved to exclude all or parts of the proposed testimony of eight expert witnesses. Defendants have moved to exclude all or parts of the proposed testimony of seven expert witnesses. The Court held a hearing to examine the scope and admissibility of the testimony. For the reasons

set forth herein, Defendants' Omnibus Motion to Exclude Certain Expert Testimony is granted in part and denied in part as to the testimony of Dr. Randall Epperson.

## STANDARD OF REVIEW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Seventh Circuit has developed a three-step admissibility analysis for expert testimony under Rule 702 and *Daubert*. *See Ervin*, 492 F.3d at 904. First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (quoting Fed.R.Evid. 702). Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable." *Id.* (citing *Daubert*, 509 U.S. at 592-93). Courts are, however, granted "broad latitude when [they] decide[] *how* to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S 137, 142 (1999). Finally, the expert's testimony must be relevant, or "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904.

## DISCUSSION

**I. Defendants' Motion to Bar the Expert Testimony of Dr. Randall Epperson**

Dr. Randall Epperson ("Epperson") is a neuropsychologist who reviewed Eilman's medical records and conducted a lengthy in-person evaluation of her in June 2008. He opines that Eilman's continuing neuropsychological problems "stem from her severe brain injury" sustained in Chicago,

and that it is unlikely that Eilman will be able to "accommodate herself to treatment" for her bipolar disorder or that she will be "competitively employable in the future." (R. 574, Ex. A, Expert Report for Dr. Randall Epperson, at 34-35.) (hereinafter "Epperson Rep.") In a supplemental report, Epperson reviewed additional medical records and clarified his opinion that Eilman will be unable to "competitively work, finish her academic degree, or live independently in the foreseeable future." (R. 574, Ex. B, Supplemental Report of Dr. Randall Epperson, at 8-9.) (hereinafter "Epperson Supp. Rep.").

Defendants challenge Epperson's opinion that Eilman will be unable to competitively work or live independently as unfounded in particular facts or data and not within his professional expertise, and challenge his assumption that Eilman would have completed her bachelor's degree but for the accident in Chicago as speculative.

### A. Qualifications

Defendants do not contest Epperson's qualifications to testify as an expert in the field of neuropsychology. His Curriculum Vitae shows that he has a Ph.D. in clinical psychology and nearly three decades of academic and clinical specialization in the field of neuropsychology. (*See* R. 602, Ex. C, Curriculum Vitae of Dr. Randall Epperson.) (hereinafter "Epperson C.V.") The Court therefore finds him qualified by education and experience to testify as an expert in the field of neuropsychology. *See Reilly v. Blue Cross & Blue Shield United of Wisc.*, 846 F.2d 416, 421 (7th Cir. 1988) (reviewing experts' curricula vitae in order to support an unchallenged finding that the experts were qualified in their fields).

Defendants do argue, however, that Epperson lacks experience or training in the fields of vocational and rehabilitation therapy, and is thus unqualified to opine as to whether Eilman will

eventually be able to live independently or hold a job. Epperson testified at deposition that the core of his practice involves working with other specialists to evaluate patients who have experience brain injury or trauma, and to work with rehabilitation teams to design programs in order to restore patients' functionality. (*See* R. 602, Ex. B., Deposition Testimony of Dr. Randall Epperson, at 7-8.) (hereinafter "Epperson Dep.") During the Court's hearing on this motion, Epperson testified that he has been licensed as a qualified medical evaluator for the State of California since 1992, in which capacity he evaluates individuals' capacity to return to their previous jobs or to train into other available jobs. (*See* Mot. Hr'g Trans., Randall Epperson, at 22, Feb. 2, 2010) (hereinafter "Hr'g Trans.") He explained that he has specialized training in determining whether an individual is able to return to work and to determine that types of work that a person can do. (*See* Hr'g Trans. at 22-23.) Moreover, he frequently evaluates the capacity of an individual who has suffered a traumatic brain injury to return to work, and has done so for sixteen years. (*See* Hr'g Trans. at 22-23.) Therefore, the Court finds that Epperson is qualified by virtue of his experience in this area to offer opinions as to the consequences of traumatic brain injury for a person's ability to work or live independently.

   **B. Methodology**

Defendants also argue that Epperson's opinions as to Eilman's prospective inability to work and live independently are without sufficient support and not reached through any accepted scientific method. This opinion, disclosed in Epperson's initial report but elaborated upon in his supplemental report, appears to be founded on Epperson's own evaluation of Eilman as well as upon his review of her medical records. For example, Epperson's supplemental report notes the testimony of one of Eilman's treating physicians that Eilman would be permanently impaired from engaging

4

in advanced schools or seeking employment. (*See* Epperson Supp. Rep. at 7.) In his own evaluation of Eilman, Epperson noted that her current IQ is in the low average range (*See* Epperson Rep. at 20), that her reading comprehension was below the high school graduate level (*See* Epperson Rep. at 24), and that she demonstrated impairment in her functional abilities (*See* Epperson Rep. at 29.) These appear to be adequate bases upon which an expert neuropsychologist can conclude that a patient is unable to live or work independently.

In order to determine whether an expert's methodology meets *Daubert*'s requirements, the Court must consider whether his conclusions are testable, subjected to peer review or publication, produced by a reliable method using some discernable technique, and the result of a generally accepted methodology or process. *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005). However, neither Epperson's reports nor his deposition clearly describe a specific method by which he reached his ultimate conclusions.

### 1. *Ability to Return to Work & To Live Independently*

At the hearing on this motion, Epperson explained that he conducted general psychometric testing of Eilman's mental capacity, using a test of tests that have been used since the 1930s to determine an individual's level of functioning in a variety of discrete areas. (*See* Hr'g Trans. at 33.) Epperson stated that these tests are widely accepted and validated by neuropsychology experts and that his testing of Eilman using these established tests formed the basis for his conclusions about Eilman's current levels of functioning. (*See* Hr'g Trans. at 44-47.) He also testified that many of the tests which he conducted during his evaluation of Eilman are similar or identical to those used by vocational rehabilitation experts in order to determine whether an individual is able to return to work. (*See* Hr'g Trans. at 97-99.) He also administered a number of tests related to skills required

5

for independent living.  (*See* Hr'g Trans. at 100-01.)   He did not, however, test Eilman's ability to perform any specific job or conduct any tests to determine whether she could perform any specific job.  (*See* Hr'g Trans. at 116-17.)

In order to connect his evaluation of Eilman to his ultimate conclusion about her capacity to work or to live independently, Epperson testified that experts in this field frequently rely upon two primary systems in order to determine whether an individual is able to return to work.  (*See* Hr'g Trans. at 23.)  The first, the Social Security Disability System, is a well-established set of guidelines used by the federal system and those it employs to determine whether individuals are qualified to receive disability benefits.  (*See* Hr'g Trans. at 23-24.)  Epperson also referred to the American Medical Association ("AMA") guidelines for evaluating a person's general capacity to return to work.  (*See* Hr'g Trans. at 26-27.)

The guidelines for these two systems were referenced by Epperson during this Court's hearing on this Motion, but Paine's attorney stipulated that they were not disclosed to the Defendants prior to the hearing. (*See* Hr'g Trans. at 115.)  The guidelines thus constitute new disclosures of information relied upon by Epperson in forming his opinions. Federal Rule of Civil Procedure 26(e) allows the parties to supplement the evidentiary foundations for their experts' opinions, but when such supplemental materials are not disclosed prior to a hearing in which they are relied upon as evidence, the Court must decide whether the failure to disclose "was substantially justified or is harmless."  Fed.R.Civ.P. 37(c)(1).  Here, although Epperson testified that his experience applying the newly disclosed guidelines was part of his general expertise in evaluating the functionality of individuals with disabilities, he stated that he did not rely upon the Social Security guidelines in his evaluation of Eilman.  (*See* Hr'g Trans. at 96.)    Thus, the Court finds that the failure to disclose the guidelines prior to hearing was harmless, because they did not

6

constitute a specific basis upon which Epperson's conclusions were reached, nor were they an essential part of his methodology as applied in this case.

In fact, Epperson points to no external standards upon which he relied, either explicitly or by way of background reference, in reaching his conclusion that Eilman's test results reflected an inability to return to work or to live independently. Epperson's conclusions about Eilman's capacities are based upon a reliable foundation and upon sufficient data. The tests which formed the basis of his evaluation of Eilman are reliable and accepted mechanisms by which neuropsychologists may evaluate a patient's level of functioning and general abilities. The ultimate conclusions that Eilman is unable to return to work and unable to live independently, however, are not based on a reliable and accepted method. Epperson references ADA and Social Security standards, but admits that he applied neither to his evaluation of Eilman. Expert opinions reached merely by virtue of the expert's general expertise or intuition are not admissible. *See Zenith Elecs. Corp.*, 395 F.3d at 418. Because Epperson's solid foundation is connected to his ultimate conclusions by nothing more than his *ipse dixit*, his methodology does not satisfy *Daubert*'s requirements. His testimony that Eilman is unable to work or to live independently are therefore barred. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 515 (1997).

### *2. Completion of Bachelor's Degree*

As to Epperson's assumption that Eilman would have completed her bachelor's degree if not for her injuries in Chicago, Defendants argue that it is mere speculation and cannot therefore form the basis of any admissible opinion as to her future employment or academic prospects.

In support of this conclusion, Epperson testified at length during his deposition about his review of Eilman's academic records. (*See* Epperson Dep. at 131-44.) He explained that while Eilman graduated from high school in the 7th percentile of her class, she attended two junior colleges and had GPAs of 3.273 and 2.984. (*See* Epperson Dep. at 138-40.) Epperson also

explained that, having reviewed her academic records and testing, he found there to be "five different indicators" that led him to the conclusion that Eilman's intelligence level before her time in Chicago was in the "high average range." (Epperson Dep. at 155.)

One of the factors upon which Epperson relied in reaching the conclusion that Eilman's mental capacity prior to the accident was in the high average range was the fact that she was accepted to UCLA, which is part of the University of California system that admits only the top 12.5% percent of California students. (*See* Epperson Dep. at 155.) At hearing, he revised this statement on the basis of information that he had researched about UCLA's admission statistics, which revealed that approximately 40% of students transferring from junior colleges were accepted at UCLA. (*See* Hr'g Trans. at 52.) Defendants objected to this modification on the grounds that they did not receive these statistics during discovery and thus were unable to adequately cross-examine Epperson on the basis for this modification of his opinion.

The Court agrees that these materials were not timely disclosed per Federal Rule of Civil Procedure 26(a)(2)(C). However, because his observation about Eilman's admission to UCLA was only one of the factors that Epperson considered in reaching his conclusion that Eilman's intelligence before her injury was in the high average range, and because it appears that the substance of his ultimate opinion that Eilman would have finished college but for her injury is not affected by this new information, the untimely disclosure of the new information is essentially harmless, see Fed.R.Civ.P. 37(c)(1), and thus the new information is admissible as a supplemental disclosure under Rule 26(e)(2). *See Gicla v. United States*, 572 F.3d 407, 411-12 (7th Cir. 2009) (where newly disclosed evidence does not change the substance of an expert's opinions, it may be admitted even as late as the trial itself without causing undue prejudice).

Given this conclusion, Epperson's assumption that Eilman would have been able to finish her degree if not for the injuries she sustained in Chicago appears to be reliably based on his

understanding of her past academic performance. Therefore, contrary to Defendants' argument, it is not mere speculation, and may properly be admitted as a basis for his ultimate opinion, which Defendants do not challenge, that she will now be unable to complete her bachelor's degree.

### C. Relevance

Defendants do not challenge the relevance of Epperson's opinions. They appear to serve as a foundation for Paine's compensatory damages claim, and are relied upon by other experts in damage calculations. Therefore, the Court finds that Epperson's opinions are relevant and will be helpful to the jury in assessing an appropriate damages figure.

Defendants' Omnibus Motion to Exclude Certain Expert Testimony is therefore granted as to the conclusions that Eilman is currently unable to live independently or to return to work, and denied in all other respects as to the testimony of Dr. Randall Epperson.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 25, 2010

9