IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person,<br><br>        Plaintiff,<br> v.<br><br>OFFICER JEFFREY JOHNSON, OFFICER, RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a municipal corporation,<br><br>        Defendants. | Case No. 06 C 3173<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kathleen Paine ("Paine"), as Guardian of the Estate of Christina Rose Eilman ("Eilman"), filed this suit against the City of Chicago and various members of the Chicago Police Department (collectively, "Defendants"), alleging violations of Eilman's constitutional rights and violations of federal and Illinois law. As more fully set forth in this Court's Memorandum Opinion and Order dated February 22, 2010, Paine brings this suit on behalf of Eilman, her daughter, for injuries that Eilman incurred after the Chicago Police Department released her from custody. Paine has now moved to exclude all or parts of the proposed testimony of eight expert witnesses. Defendants have moved to exclude all or parts of the proposed testimony of seven expert witnesses.

For the reasons set forth below, Defendants' Omnibus Motion to Exclude Certain Expert Testimony is denied in its entirety as to the testimony of Dr. Joseph Capell.

## STANDARD OF REVIEW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Seventh Circuit has developed a three-step admissibility analysis for expert testimony under Rule 702 and *Daubert*. *See Ervin*, 492 F.3d at 904. First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (quoting Fed.R.Evid. 702). Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable." *Id.* (citing *Daubert*, 509 U.S. at 592-93). Courts are, however, granted "broad latitude when [they] decide[] *how* to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S 137, 142 (1999). Finally, the expert's testimony must be relevant, or "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904.

## DISCUSSION

**I. Defendants' Motion to Bar the Expert Testimony of Dr. Joseph Capell**

Dr. Joseph Capell is a specialist in physical medicine and rehabilitation. After reviewing Eilman's medical records and evaluating her in person on March 30, 2009, he offers the opinions that Eilman will require extensive medical care and medical interventions as a result of her traumatic

2

brain injury, that she has "suffered a severe impairment of her vocational potential," that the traumatic brain injury has exacerbated her bipolar disorder because it prevents her from taking "necessary and appropriate steps" to control her disease, and that Eilman's brain injury and medical problems "have not impaired her life expectancy to any appreciable degree." (R. 566, Ex. A, Expert Report of Dr. Joseph Capell, at 11-12.) (hereinafter "Capell Rep.") At his deposition, he offered further specifics about the nature of the future medical treatments that he believes Eilman will require, including additional orthopedic surgeries and additional gynecologic care in the event of a pregnancy. Defendants challenge certain of his opinions on the grounds that he lacks expertise in the relevant subject area and that his opinions are not based on reliable facts or reached through a reliable methodology.

### A. Qualifications

Defendants do not contest Capell's qualifications to testify as an expert in the fields of physical medicine and rehabilitation. His Curriculum Vitae reveals that he has had an active career in rehabilitation medicine for more than thirty years. (*See* R. 566, Ex. B, Curriculum Vitae of Dr. Joseph Capell.) The Court accordingly finds him qualified to testify as an expert in rehabilitation medicine. *See Reilly v. Blue Cross & Blue Shield United of Wisc.*, 846 F.2d 416, 421 (7th Cir. 1988) (reviewing experts' curricula vitae in order to support an unchallenged finding that the experts were qualified in their fields).

Defendants challenge four of Capell's opinions on the grounds that he is not qualified to testify as a psychiatric or psychological expert: 1) that Eilman was diagnosed with bipolar disorder in 2005 and that her "psychological condition decompensated" while she was in Chicago (Capell Rep. at 2); 2) that her traumatic brain injury has worsened her ability to monitor and control her

3

bipolar disorder (*see* Capell Rep. at 11-12); 3) that she had emotional difficulties as a child and was "initially, and probably erroneously" diagnosed as having Attention Deficit Hyperactivity Disorder ("ADHD") and Obsessive Compulsive Disorder ("OCD") (*see* Capell Rep. at 2); and 4) that Eilman did well in an outpatient psychiatric program after her February 2005 hospitalization (*see* Capell Rep. at 2). Paine has withdrawn the fourth opinion regarding the outpatient psychiatric program. Paine has also conceded that Capell will not be called on at trial to provide diagnoses of ADHD or OCD, and thus the question of whether he is qualified to opine as to the diagnoses for these conditions is moot.

As to the first challenged opinion, that Eilman's diagnosed bipolar condition "decompensated" while she was in Chicago, Capell clearly stated during his deposition that he was not "making any diagnosis of a psychological decompensation" and that he was "speaking . . . as a non-expert in the area of psychological issues." (R. 601, Ex. A, Deposition Testimony of Dr. Joseph Capell, at 129.) (hereinafter "Capell Dep.") Rather than offering this statement as an expert psychological opinion, Capell stated that his comment about Eilman's decompensation was intended "only as a transition from one part of the report to another." (Capell Dep. at 133.) He further clarified at the hearing on this Motion that he has no independent basis for the conclusion that Eilman decompensated while in Chicago and does not intend to offer it as his own expert conclusion. (*See* Mot. Hr'g Trans., Joseph Capell, at 66.) (hereinafter "Hr'g Trans.") Because it is clear that this is not offered as an expert opinion as to Eilman's psychological condition, but only as a passing comment in Capell's report, the Court need not decide whether he is qualified to offer it as an expert opinion.

4

With respect to Capell's conclusion that Eilman's traumatic brain injury has worsened her bipolar disorder by preventing her from adequately monitoring and controlling the course of her disease, however, this is offered as an expert opinion on the basis of Capell's background, experience and training in rehabilitation medicine. Defendants argue that the admissibility of this opinion depends on whether Capell is qualified to testify about Eilman's bipolar disorder as a psychological matter. Capell testified, however, that he has extensive experience with patients suffering from traumatic brain injuries who had preexisting psychiatric disorders, and that his conclusion, held to a reasonable degree of medical certainty, is that Eilman's cognitive impairments have lessened her ability to recognize and manage her bipolar disorder. (*See* Hr'g Trans. at 53.) He further stated that the methodology that he employed to reach this conclusion was based in his own clinical experience and training, and not in any areas of psychological or psychiatric expertise. (*See* Hr'g Trans. at 54-55.) Therefore, Capell need not be qualified as a psychiatric expert in order to provide this expert opinion.

During his deposition, Capell elaborated upon his conclusion about Eilman's future medical needs in two areas that Defendants now challenge. First, he stated that on the basis of his review of Eilman's medical records, there were a number of orthopedic surgeries that "could be done in the future." (Capell Dep. at 90-91.) Defendants challenge this opinion on the grounds that Capell is not an expert in the field of orthopedic medicine. However, at hearing Capell testified that he has sufficient expertise to offer opinions as to the future orthopedic needs of a patient and that he frequently prepares life-care plans and offers expert testimony regarding orthopedic needs. (*See* Hr'g Trans. at 55-56.) He therefore appears qualified by virtue of his experience in this area to offer testimony as a rehabilitation expert in this regard.

Second, Capell opined that any future pregnancy of Eilman's would be high risk, requiring "additional visits, additional studies and additional measurements . . . ." (Capell Dep. at 186.) Defendants argue that these conclusions should be barred because he is not an orthopedic or gynecological expert and thus is unqualified to testify as to what Eilman's future medical needs in these areas might be.

Capell is qualified as a rehabilitation expert, however. As such, he is qualified to provide opinions related to her future medical needs when considering "the natural trajectory of her condition over a period of years . . . ." (Capell Dep. at 59.) His opinions as to Eilman's potential future orthopedic or gynecological needs do not appear to constitute specific diagnoses or treatment recommendations in those fields, but rather opinions about what her future medical care might involve on the basis of his review of her medical records and his evaluation of her current condition. TTheThis testimony is properly within his expertise as an expert in the field of rehabilitation medicine, and does not depend upon a separate expertise in orthopedic medicine or gynecology. Accordingly, the Court finds Capell qualified to testify as to Eilman's possible future needs in these two areas.

**B. Methodology**

Defendants also challenge the basis of Capell's opinions that Eilman will need future orthopedic surgeries and that any future pregnancy will be high-risk and require significant medical interventions.

Capell's deposition reflects that his orthopedic recommendations were based on the reports of Eilman's treating physicians, Dr. Fox and Dr. Lee, and that he had not reviewed x-rays or CT scans. (*See* Capell Dep. at 87.) Capell need not have direct knowledge of Eilman's orthopedic condition, as medical experts may properly testify on the basis of a patient's health records and other circumstantial evidence. *See Walker v. Soo Line R. Co.*, 208 F.3d 581, 586-87 (7th Cir. 2000); *see*

6

*also* Fed. R. Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those . . . made known to the expert at or before the hearing . . . ."). These are therefore appropriate foundations for Capell's opinions, as a rehabilitation expert, about what Eilman's future medical needs in the orthopedic context may be.

Those reports reflected proposed surgeries that the treating physicians had decided not to implement while Eilman was under their care, but that Capell believed could be done at a later date. (*See* Capell Dept. at 90-91.) Neither Capell's report nor his deposition reveals the method by which he reached the conclusion that Eilman may require these surgeries later. In order to determine whether an expert's methodology meets *Daubert*'s requirements, the Court must consider whether his conclusions are testable, subjected to peer review or publication, produced by a reliable method using some discernable technique, and the result of a generally accepted methodology or process. *See Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 418 (7th Cir. 2005).

At the Court's hearing on this Motion, Capell testified that he reviewed extensive records including medical records and depositions, and prepared a working document comprising his summaries of the records. (*See* Hr'g Trans. at 10.) He then interviewed Eilman and her mother in order to determine Eilman's current mental condition. (*See* Hr'g Trans. at 11.) During this meeting, he conducted a supplemental medical history interview and a physical examination of Eilman, focusing on neurological and orthopedic matters. (*See* Hr'g Trans. at 24-25.) Capell testified that this method of record review and examination are standard techniques in the rehabilitation field for determining a patient's present and future medical needs. (*See* Hr'g Trans. at 37.) It appears, therefore, that this methodology is generally accepted, that the accuracy of Capell's conclusions could be tested by any other rehabilitation expert conducting the same review of Eilman's records and physical examination, and that his technique is both discernable and sufficiently reliable to support his ultimate opinions.

Defendants also challenge Capell's conclusion that any future pregnancy of Eilman's would be high-risk and require additional medical interventions on the grounds that he did not perform a gynecologic exam. Capell testified, however, that his conclusion on this issue was based on a variety of factors noted by Eilman's treating physicians in their reports. (*See* Capell Dep. at 185-86.) This is an appropriate foundation for his opinions, and there is no need for him to have personally conducted a physical examination of Eilman's reproductive system. *See, e.g., Arnold v. Barnhart*, 473 F.3d 816, 819-20 (7th Cir. 2007) (administrative law judge properly relied upon the expert opinions of a doctor who testified on the basis of medical records and treating physician's report).

Capell's conclusions are therefore based upon appropriate data and information. Defendants' objections appear to go primarily to the weight that the jury should afford his conclusions, and not to their admissibility. For example, Defendants argue that Capell's conclusions are flawed because none of Eilman's treating physicians recommended the surgeries that Capell believes will be necessary in the future. (*See* Hr'g Trans. at 77-78.) Capell testified that he is qualified to predict what a patient's future surgical needs will be, and that his recommendations are very often followed by future treating physicans. (*See* Hr'g Trans. at 45-46.) The differences between the treating physician's reports from earlier in Eilman's history and Capell's current recommendations do not require a conclusion that his methodology in reaching those opinions was so flawed as to be inadmissible.

Therefore, Capell's opinions that Eilman will require future orthopedic surgeries and gynecological interventions in the event of a pregnancy are within his expertise and founded on appropriate data and a sufficiently reliable methodology.

**C. Relevance**

Defendants do not challenge the relevance of most of Capell's opinions. They appear to serve as a foundation for Paine's compensatory damages claim, and are relied upon by other experts in damage calculations.

Defendants do challenge the relevance of Capell's opinion that any future pregnancy would be difficult and high-risk because Eilman has testified that she does not want children. There is no evidence that Eilman is physically unable to have children, however, and a currently stated preference not to have children is not an immutable characteristic. Because Eilman may one day choose to have children, Capell's testimony that any future pregnancy would be high-risk is relevant to this issue of her potential damages. *See* Fed. R. Evid. 401 ("relevant evidence" is that evidence which affects the probable existence of any consequential fact).

Therefore, the Court finds that Capell's opinions are relevant and will be helpful to the jury in assessing an appropriate damages figure. Defendants' Omnibus Motion to Exclude Certain Expert Testimony is denied in its entirety as to the testimony of Dr. Joseph Capell.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 25, 2010