IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person, <br><br>   Plaintiff, <br> v. <br><br> OFFICER JEFFREY JOHNSON, OFFICER, RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a municipal corporation, <br><br>   Defendants. | Case No. 06 C 3173 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kathleen Paine ("Paine"), as Guardian of the Estate of Christina Rose Eilman ("Eilman"), filed this suit against the City of Chicago and various members of the Chicago Police Department (collectively, "Defendants"), alleging violations of Eilman's constitutional rights and violations of federal and Illinois law. As more fully set forth in this Court's Memorandum Opinion and Order dated February 22, 2010, Paine brings this suit on behalf of Eilman, her daughter, for injuries that Eilman incurred after the Chicago Police Department released her from custody. Paine has now moved to exclude all or parts of the proposed testimony of eight expert witnesses. Defendants have moved to exclude all or parts of the proposed testimony of seven expert witnesses. The Court held a hearing on the motion. For the reasons stated below, Defendants' Omnibus Motion

to Exclude Certain Expert Testimony is denied as to the expert testimony of Carol Hyland.

**STANDARD OF REVIEW**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) and its progeny. *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Seventh Circuit has developed a three-step admissibility analysis for expert testimony under Rule 702 and *Daubert*. *See Ervin*, 492 F.3d at 904. First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (quoting Fed.R.Evid. 702). Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable." *Id.* (citing *Daubert*, 509 U.S. at 592-93). Courts are, however, granted "broad latitude when [they] decide[] *how* to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S 137, 142 (1999). Finally, the expert's testimony must be relevant, or "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904.

**DISCUSSION**

**I. Defendants' Motion to Bar the Expert Testimony of Carol Hyland**

Carol Hyland ("Hyland") is a rehabilitation expert who has prepared a detailed "life care plan" calculating Eilman's costs of disability-related care and her work capacity and future earning potential.

2

Defendants challenge portions of her Report on the grounds that certain of her opinions are based on the conclusions of other experts, Dr. Epperson and Dr. Capell, whose opinions Defendants also challenge. Defendants also challenge Hyland's opinion that during Eilman's time in Chicago, she was in a manic phase of her bipolar disorder and met the criteria for qualifying as a person with a disability under the Americans with Disabilities Act ("ADA").

**A. Qualifications**

Defendants do not contest Hyland's qualifications in the fields of rehabilitation and life care planning. Hyland's Curriculum Vitae reveals that she has extensive experience as a rehabilitation supervisor, consultant, and counselor, and that she has a strong academic background and other credentials and certifications in the rehabilitation and life care planning areas. (*See* R. 600, Ex. C, Curriculum Vitae of Carol Hyland.) The Court accordingly finds her qualified to offer expert testimony in these areas. *See Reilly v. Blue Cross & Blue Shield United of Wisc.*, 846 F.2d 416, 421 (7th Cir. 1988) (reviewing experts' curricula vitae in order to support an unchallenged finding that the experts were qualified in their fields).

Defendants do challenge Hyland's qualifications to offer the medical and legal opinions that Eilman was in a manic phase of her bipolar disorder, or that she was disabled within the meaning of the Americans with Disabilities Act ("ADA"), during Eilman's time in Chicago Police Department custody. Paine concedes that Eilman is not qualified as a legal expert, and thus that she will not testify as to whether Eilman was disabled under the ADA during her time in Chicago. Paine's attorneys formally stated that they are withdrawing Hyland's testimony on this issue at the hearing on Defendants' Motion to Bar. (Mot. Hr'g. Trans., Carol Hyland, at 5, Feb. 12, 2010.) (hereinafter "Hr'g. Trans.)

**B. Methodology**

Defendants do not bring a general challenge to Hyland's methodology. Her report indicates that she met with Eilman and with Paine, consulted with other experts in this case, and reviewed extensive materials about Eilman's background, medical history, and experiences in Chicago. (*See* R. 571, Ex. A, Expert Report of Carol Hyland, at 2-3.) (hereinafter "Hyland Rep.") The report further states that the costs forming the basis of Hyland's calculations "are either those of her current providers or providers in her community," implying a significant amount of research into the market costs for the types of care and services that Hyland predicts Eilman will require in the future. (*See* Hyland Rep. at 6.) At hearing, Hyland clarified that these figures were drawn from a Medical Fees in the United States manual and from a data bank prepared by the Veterans Administration regarding reasonable fees for medical procedures in a given community. (*See* Hr'g. Trans. at 14-15.)

The Court finds this to be an appropriate basis for the life care plan of an experienced rehabilitation counselor. *See Rivera v. Turabo*, 415 F.3d 162, 170 (1st Cir. 2005) (upholding the admission of expert opinions from a life-care planner whose plan was founded on review of the plaintiff's medical records and an interview with the plaintiff).

Defendants do, however, challenge Hyland's reliance upon the expert reports of Dr. Joseph Capell ("Capell") and Dr. Randall Epperson ("Epperson"), whose opinions Defendants have also challenged in *Daubert* motions.

Defendants challenge Hyland's reliance upon Capell's expert report regarding Eilman's future medical needs for the same reason that they challenge Capell's report itself, on the grounds that he is not qualified to testify as an expert in each of the particular medical fields at issue. As elaborated in the Court's Order regarding Defendants' Motion to Bar Capell's testimony, however,

4

Capell is qualified as a rehabilitation expert. As such, he is qualified to provide opinions related to her future medical needs when considering "the natural trajectory of her condition over a period of years . . . ." (Capell Dep. at 59.) His opinions as to Eilman's potential needs in particular areas are not specific diagnoses or treatment recommendations in those fields, but rather opinions about what her future medical care might involve on the basis of his review of her medical records and his evaluation of her current condition. This testimony is properly within his expertise as an expert in the field of rehabilitation medicine, and does not depend upon a separate expertise in the medical fields at issue. Capell's opinions are the reliable and relevant conclusions of an expert in the field of rehabilitation and physical medicine, and Hyland may appropriately rely upon them in preparing her life care plan. *See, e.g., Santana Otero v. United States*, 428 F. Supp. 2d 34, 50 (D. P.R. 2006) (accepting the calculations of a life care planner whose expert report was based in large part on medical records).

Defendants additionally challenge Hyland's assumption that but for her injuries incurred in Chicago, Eilman would have completed her bachelor's degree and earned the average income of a woman with such a degree. This assumption is founded upon the expert report of Paine's neuropsychology expert, Epperson, and Hyland's independent review of Eilman's records. As explained in the Court's Order regarding Defendants' Motion to Bar Epperson's testimony, his opinion that Eilman will be unable to complete her bachelor's degree as a result of her injuries is reasonably based on his expertise as a neuropsychologist and his review of Eilman's prior academic

records. Defendants do not challenge Hyland's calculation of the average earning potential of a college-educated woman,[1] and thus, her testimony on this matter is admissible.

**C. Relevance**

Defendants do not challenge the relevance of Hyland's opinions. They appear to serve as the primary foundation for Paine's compensatory damages claim. Therefore, the Court finds that Hyland's opinions are relevant and will be helpful to the jury in assessing an appropriate damages figure.

Defendants' Omnibus Motion to Exclude Certain Expert Testimony is therefore denied as to the testimony of Carol Hyland.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 25, 2010

---

[1] At the hearing on Defendants' Motion to Bar, Hyland specified that this data was drawn from the United States Census Bureau's historical income tables. (*See* Hr'g Trans. at 20.)