IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person, </br></br> Plaintiff, </br></br> v. </br></br> OFFICER JEFFREY JOHNSON, OFFICER, RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a municipal corporation, </br></br> Defendants. | Case No. 06 C3173 </br></br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kathleen Paine ("Paine"), as Guardian of the Estate of Christina Rose Eilman ("Eilman"), filed this suit against the City of Chicago and various members of the Chicago Police Department (collectively, "Defendants"), alleging violations of Eilman's constitutional rights and violations of federal and Illinois law. As more fully set forth in this Court's Memorandum Opinion and Order dated February 22, 2010, Paine brings this suit on behalf of Eilman, her daughter, for injuries that Eilman incurred after the Chicago Police Department released her from custody. Paine has now moved to exclude all or parts of the proposed testimony of eight expert witnesses. Defendants have moved to exclude all or parts of the proposed testimony of seven expert witnesses.

For the reasons stated below, Defendants' Omnibus Motion to Exclude Certain Expert Testimony is granted in part and denied in part as to the expert testimony of Dr. Joel A. Dvoskin.

## STANDARD OF REVIEW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Seventh Circuit has developed a three-step admissibility analysis for expert testimony under Rule 702 and *Daubert*. *See Ervin*, 492 F.3d at 904. First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (quoting Fed.R.Evid. 702). Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable." *Id.* (citing *Daubert*, 509 U.S. at 592-93). Courts are, however, granted "broad latitude when [they] decide[] *how* to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S 137, 142 (1999). Finally, the expert's testimony must be relevant, or "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904.

## DISCUSSION

### I. Paine's Motion to Bar the Expert Testimony of Dr. Joel Dvoskin

Dr. Joel Dvoskin ("Dvoskin") is a clinical and forensic psychologist who opines that: 1) Eilman's behavior in Chicago was indicative of mental illness and psychiatric crisis; 2) Eilman was a disabled person; 3) because of her mental illness, Eilman was gravely disabled in that she was

unable to provide for her basic physical needs, and should have been taken for psychiatric evaluation and treatment; 4) each individual Defendant knew or should have known, from observation of Eilman's behavior while in custody, that she was a disabled person in need of psychiatric assistance; 5) Defendants' failure to provide mental health assistance to Eilman was deliberately indifferent to her obviously serious psychiatric needs; 6) the Chicago Police Department ("CPD") violated Eilman's rights under the Americans with Disabilities Act ("ADA"); 7) Sergeant Berglind had no training in the assessment or diagnosis of mental illness and thus Eilman's interview with him was not adequate to determine whether she had a serious mental illness; 8) the CPD and individual Defendants each had a duty to provide Eilman with access to psychiatric assessment and necessary services, and failed to do so; and 9) the standard of care for treatment of individuals with serious mental illness includes discharge planning, even for incarcerated individuals. (*See* R. 565, Ex. A, Expert Report of Dr. Joel A. Dvoskin, at 19-20.) (hereinafter "Dvoskin Rep.") Defendants argue that Dvoskin is not qualified to offer certain of his opinions and that others are irrelevant because they are impermissible opinions about the credibility of witnesses or constitute inadmissible legal conclusions. The Court held a hearing to determine the admissibility and scope of Dvoskin's testimony.

### A. Qualifications

Defendants do not challenge Dvoskin's qualifications to testify as a psychological expert. According to his Curriculum Vitae, Dvoskin has more than three decades of experience as a psychologist, including a full-time private practice for the last fifteen years in forensic psychology. (*See* R. 565, Ex. B, Curriculum Vitae of Joel A. Dvoskin, Ph.D.). The Court accordingly finds him qualified on the basis of his education and extensive experience to offer expert testimony on

psychological matters. *See Reilly v. Blue Cross & Blue Shield United of Wisc.*, 846 F.2d 416, 421 (7th Cir. 1988) (reviewing experts' curricula vitae in order to support an unchallenged finding that the experts were qualified in their fields).

Defendants do argue, however, that Dvoskin is not qualified to testify concerning the dangerousness of the neighborhood into which Eilman was released, to opine that Eilman's release directly led to her assault and severe injuries, or to offer the legal conclusion that Defendants violated the ADA. Only the first of these three challenges directly relates to the issue of Dvoskin's qualifications; the second and third challenges involve the relevance of an expert witness's testimony as to legal conclusions, which the Court will address below. Dvoskin's Report frequently refers to the dangerous nature of the neighborhood into which Eilman was released, but he does not offer this as an independent expert opinion of his own. Dvoskin mentioned his view of the neighborhood several times during his lengthy deposition testimony, and Defendants' counsel chose not to inquire as to the basis for this observation. (*See* R. 605, Ex. B, Deposition Testimony of Joel A. Dvoskin, Ph.D., at 97, 269, 272.) (hereinafter "Dvoskin Dep.") At no point, however, does Dvoskin hold himself out as an expert qualified to opine on the subject of a neighborhood's dangerousness. Defendants' Motion to Bar his testimony on the grounds that he is not qualified to offer such expert opinions is therefore dismissed as moot.

**B. Methodology**

Dvoskin's Report does not provide a great deal of information about the specific methodology that Dvoskin used in order to formulate his conclusions. The Report does indicate that he relied upon a very length list of sources, including various CPD memos, newspaper reports concerning the facts of this case, Internal Affairs Division investigative statements of various

officers and detention aides, and more than fifty depositions taken from other witnesses in this case. (*See* Dvoskin Rep. at 4-8.) Defendants have not presented a challenge to the data upon which he relied.

Although no party has provided the Court with adequate information upon which to conduct a reasoned discussion of the validity of Dvoskin's general methodology, Defendants do not seek to bar Dvoskin's testimony on methodological grounds. Therefore, the Court need not conduct a methodological analysis. *See United States v. Moore*, 521 F.3d 681, 685 (7th Cir. 2008) ("A judge is not obliged to look into the questions posed by Rule 702 when neither side either requests or assists.").

**C. Relevance**

Defendants challenge Dvoskin's testimony on two primary relevance grounds: first, that it makes impermissible judgments about the credibility of eyewitness testimony; and second, that it uses legal terminology to reach legal conclusions.

*1. Credibility Assessments*

Defendants argue that Dvoskin's testimony should be barred because it involves assessments of the credibility of certain witnesses that infringe on the jury's role as the exclusive finder of fact. Whether or not the testimony of particular witnesses should be considered credible "is generally not an appropriate subject matter for expert testimony . . . ." *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999). That is, experts may not offer opinions as to whether they believe, or disbelieve, the testimony of particular lay witnesses, "because an expert cannot testify as to credibility issues." *Goodwin v. MTD Prod., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000). Paine agrees that no expert witness should be asked or allowed to offer opinions at trial about the credibility of any eyewitnesses.

Moreover, none of Dvoskin's enumerated opinions, above, are challenged as comprising impermissible credibility determinations. In fact, Dvoskin stated at his deposition that although he does have personal opinions about the credibility of certain witnesses, he does not expect to be asked about those opinions or to offer them at trial. (*See* Dvoskin Dep. at 347.) Thus, the issue about whether Dvoskin's credibility commentaries, offered both in his report and throughout his deposition, are properly admissible as expert testimony is largely moot, because all parties agree that they are not admissible.

### 2. *Legal Conclusions*

Defendants also challenge Dvoskin's testimony as "riddled with statements incorporating purely legal terminology to reach legal conclusions." While experts may offer testimony that "embraces an ultimate issue to be decided by the trier of fact," Fed. R. Evid. 704, expert testimony that is "largely on purely legal matters and made up of solely legal conclusions" is inadmissible. *Good Shepard Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). Expert witnesses may not testify as to the meaning of applicable legal standards. *See Bammerlin v. Navistar Intern. Transp. Corp.*, 30 F.3d 898, 901 (7th Cir. 1994) (improperly admitted legal testimony "left the jury adrift and permitted it to return a verdict on a basis that may have been legally and factually flawed").

The fact that Dvoskin's testimony references various statutes and uses certain terms that also have legal import is not a reason, by itself, to bar his opinions as constituting impermissible legal conclusions. *See, e.g., Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1059 (9th Cir. 2008) (experts may properly "refer to terminology from applicable law in expressing their opinions"). Thus, those of his opinions which explain that Eilman was gravely disabled are admissible, because such a determination is appropriately within his expertise as a psychiatrist. Opinions (4), (5), (6), and (8), as enumerated above, and Dvoskin's opinion that Defendants' actions

6

led directly to Eilman's injuries, go beyond this realm of permissible legal terminology, however, and present substantive conclusions that Defendants have violated certain legal standards and laws. "Expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepard Manor Found.*, 323 F.3d at 564. Dvoskin cannot therefore be allowed to testify that Defendants' actions were causally linked to Eilman's injuries, that Defendants were deliberately indifferent to Eilman's needs, or that they breached a duty to provide her with psychiatric treatment, all of which are legal conclusions that go to the heart of Paine's § 1983 claims. Nor may he be allowed to testify to the purely legal conclusions that the Defendants knew Eilman was a disabled person in need of psychiatric assistance or that the CPD violated Eilman's rights under the ADA.

Similarly, although Defendants do not directly challenge Dvoskin's opinion that Sergeant Berglind's interview with Eilman was inadequate to determine whether she had a serious mental illness, this opinion as phrased in Dvoskin's report goes directly to the issue of Sergeant Berglind's liability under § 1983, and constitutes an impermissible legal opinion. Dvoskin may testify, however, that standard psychological practice requires an interview with an individual trained in the assessment and diagnosis of mental illness before a determination may be made as to whether an individual has, or does not have, a serious mental illness.

### 3. Testimony That Is Unhelpful to the Jury

Although Defendants challenge Dvoskin's opinion that many untrained laypeople found Eilman's behavior indicative of a mental illness on the grounds that it constitutes an impermissible credibility determination, it is more properly analyzed under the rubric of whether this opinion will be helpful to the trier of fact. In determining whether evidence will be helpful, the Court must consider the "state of knowledge presently existing about the subject of the proposed testimony" in light of the facts of the case. *See United States v. Brown*, 7 F.3d 648, 651-52 (7th Cir. 1993)

(internal quotations omitted). Under this standard, it seems apparent that jurors will be able to interpret whether the terms used by witnesses to describe Eilman's behavior were intended to reflect that she was mentally ill, without the testimony of an expert psychiatrist to that effect. *See Haley v. Gross*, 86 F.3d 630, 633 (7th Cir. 1996) (jury could reasonably infer that eyewitnesses who used terms like "buggy," "needed help," "crazy" perceived that the individual described had mental problems).

Here, Dvoskin's opinion about the eyewitness's assessment of Eilman's mental health would not be helpful to the jury because the interpretation of what the witnesses meant when they used terms such as "nutty," "acting crazy," and "not holding a full deck" is not a task outside the understanding of the average juror. Thus, Dvoskin's testimony on this point is not "specialized knowledge that will assist the trier of fact." Fed. R. Evid. 702. Expert testimony that does nothing more but draw a conclusion that jurors can determine for themselves on the basis of other evidence in the record is not appropriate. *See Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 714 (7th Cir. 2004). Dvoskin's conclusion that Eilman's psychological crisis was obvious to lay witnesses is therefore barred.

Defendants' Omnibus Motion to Exclude Certain Expert Testimony is granted as to Dvoskin's opinions that the individual Defendants knew or should have known that Eilman was a disabled person in need of psychiatric assistance, that Defendants were deliberately indifferent to Eilman's needs, that the CPD violated Eilman's rights under the ADA, and that the CPD and individual Defendants breached a duty to provide Eilman with mental healthcare. The Motion is dismissed as moot with respect to Dvoskin's testimony about the nature of the neighborhood into which Eilman was released, and denied in all other respects. The parties are in agreement that no expert will offer assessments of the credibility of eyewitnesses.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 25, 2010