IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person,<br><br>                Plaintiff,<br>v.<br><br>OFFICER JEFFREY JOHNSON, OFFICER, RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a municipal corporation,<br><br>                Defendants. | Case No. 06 C 3173<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kathleen Paine ("Paine"), as Guardian of the Estate of Christina Rose Eilman ("Eilman"), filed this suit against the City of Chicago and various members of the Chicago Police Department (collectively, "Defendants"), alleging violations of Eilman's constitutional rights and violations of federal and Illinois law. As more fully set forth in this Court's Memorandum Opinion and Order dated February 22, 2010, Paine brings this suit on behalf of Eilman, her daughter, for injuries that Eilman incurred after the Chicago Police Department released her from custody. Paine has now moved to exclude all or parts of the proposed testimony of eight expert witnesses. Defendants have moved to exclude all or parts of the proposed testimony of seven expert witnesses.

For the reasons stated below, Paine's Motion to Bar [the] Opinion Testimony and Report of Warren Evans is granted in part and denied in part.

## STANDARD OF REVIEW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Seventh Circuit has developed a three-step admissibility analysis for expert testimony under Rule 702 and *Daubert*. *See Ervin*, 492 F.3d at 904. First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (quoting Fed.R.Evid. 702). Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable." *Id.* (citing *Daubert*, 509 U.S. at 592-93). Courts are, however, granted "broad latitude when [they] decide[] *how* to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S 137, 142 (1999). Finally, the expert's testimony must be relevant, or "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904.

## DISCUSSION

**I. Paine's Motion to Bar the Expert Testimony of Warren Evans**

Warren Evans, who is an attorney and the Chief of Police for the city of Detroit, Michigan, proposes to offer expert testimony that, in light of the police administrative factors that form the context in which police officers deal with the unique concerns of mentally ill detainees, Defendant

officers could not have transported Eilman for an involuntary mental health evaluation. Paine argues that Evans's testimony and report should be barred because his opinions are either legal conclusions, which are inadmissible, or address matters that are irrelevant. However, Paine does not challenge the entirety of Evans's proposed testimony, but only five specific areas thereof: 1) those unspecified opinions that purportedly offer legal conclusions; 2) Evans's opinion that CPD officers responded reasonably and prudently in their conduct towards Eilman; 3) those specific opinions that are based on psychological or personal analysis; 4) those unspecified opinions that refer to Defendants' compliance with CPD general orders or regulations; and 5) Evans's statement that there are relevant distinctions between local police lockups and jails or prisons with regard to the provision of mental health care.

### A. Qualifications

Paine does not contest that Evans, who is an attorney and a career law enforcement officer, is qualified to testify as an expert witness about police practices and other law enforcement concerns. The Court's review of Evans's Curriculum Vitae reflects that he has thirty-seven years of career experience in the fields of community justice and law enforcement, including extensive legal experience, and that from 2003 through 2009 he was the Sheriff of Wayne County, Michigan, serving a population of more than 2 million citizens in the city of Detroit and its environs. (*See* R. 617, Ex. A, Curriculum Vitae of Warren C. Evans.) On the basis of Evans's education and practical experience, the Court finds him qualified to testify as to law enforcement practices and operational concerns. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (courts "should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area").

With respect to item (3) noted above, however, Paine does challenge Evans's qualifications to testify regarding psychiatric or psychological matters. Evans admits that he does not have specialized experience or expertise in these fields. (*See* R. 559, Ex. B, Deposition Testimony of Warren Evans, at 81.) (hereinafter "Evans Dep.") In fact, when asked to interpret whether Eilman's behavior at a particular point would indicate to Evans "that she may have been incoherent," Evans replied that he could not speculate, to which Paine's counsel replied that he was asking not for Evans's opinion as a psychiatrist or psychologist, but as a layperson. (Evans Dep. at 329.) Subsequently in Evans's deposition, Paine's counsel repeatedly asked Evans to opine on matters of mental health diagnosis and treatment, which Evans repeatedly declined to do. (*See, e.g.*, Evans Dep. at 331, 332, 334.) It is clear, therefore, that Evans does not intend to present himself as a psychiatric expert, and that his opinions cannot be barred on the grounds that he is not qualified to offer psychiatric expert testimony, as he does not intend to do so. (*See* Mot. Hr'g Trans., Warren Evans, at 109-10, Feb. 11, 2010) (hereinafter "Hr'g Trans.")

Evans is therefore qualified to testify as an expert witness with reference to police practices and operational concerns.

**B. Methodology**

Paine does not challenge the methodology by which Evans reached his conclusion. His report states that his opinions are based upon his review of unspecified litigation documents and other evidence as well as upon his "visit and visual inspection of the 2nd District Police Station, lockup, lobby, parking lot and surrounding neighborhoods." (R. 559, Ex. A, Expert Report of Warren C. Evans, at 1.) (hereinafter "Evans Rep.") His summary of the facts relevant to his conclusions reveals an extensive familiarity with the events at issue in this litigation and with the

deposition testimony of the officers who came into contact with Eilman. (*See* Hr'g Trans. at 79-80.) In light of Paine's failure to contest either the materials upon which he relied or the method by which he reached his conclusions, the Court finds Evans's methodology to be sufficiently reliable. *See United States v. Moore*, 521 F.3d 681, 685 (7th Cir. 2008) ("A judge is not obliged to look into the questions posed by Rule 702 when neither side either requests or assists.").

## C. Relevance

The remainder of Paine's objections to Evans's proposed testimony go to the relevance of his opinions, and to whether they relate to matters that will be helpful to the jury's determinations of contested issues of fact.

### 1. Legal Conclusions

As Defendants concede, no expert witness may testify as to bald legal conclusions or as to the applicability or interpretation of a particular statute or regulation. *See Bammerlin v. Navistar Intern. Transp. Corp.*, 30 F.3d 898, 901 (7th Cir. 1994). Paine contends that Evans offers improper legal conclusions when he discusses the importance of Eilman's "liberty interest" and whether her behavior met the legal standard for "involuntary commitment" to a mental health facility. However, these legal terms were not used in a vacuum, but rather in the course of Evans's explanation of the police administrative considerations that affected Defendants' decisions about Eilman's release. (*See, e.g.*, Evans Rep. at 5 (explaining that Eilman's interview with a police sergeant "was specifically done to help determine if the threshold for involuntary mental health treatment was met.")). This opinion is not, therefore, solely legal in nature or consisting solely of legal conclusions. *See Good Shepard Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). Evans's testimony cannot be barred simply because the terminology that he uses implicates legal

5

terms of art. *See Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) ("[A] witness may be properly called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms.").

Paine's motion to bar Evans's testimony "to the extent" that his opinions are legal conclusions is therefore denied.

### 2. *Conduct of CPD Officers*

Paine next argues that one of Evans's opinions should be barred because it "simply tells the jury what result to reach . . . ." The opinion challenged on this ground is Evans's conclusion that the Defendant CPD officers "responded responsibly and prudently in their handling and assessment of" Eilman during her time in CPD custody. (See Evans Rep. at 8.) Both Paine in her Motion and Defendants in their response misread Evans's mention of "responsibly" as opining that the Defendant officers acted "reasonably." (*See* R. 559 at 8; R. 617 at 12-13.) This sentence was misread during Evans's deposition as well, where Evans responded affirmatively to a question which asked whether he had written that CPD officers "responded responsively and prudently." (Evans Dep. at 401-02.)

Because an opinion as to whether Defendants acted responsibly or responsively could be understood by the jury as stating that Defendants acted reasonably, this constitutes an impermissible legal conclusion. While experts may offer testimony that "embraces an ultimate issue to be decided by the trier of fact," Fed. R. Evid. 704, expert testimony that is "largely on purely legal matters and made up of solely legal conclusions" is inadmissible. *Good Shepard*, 323 F.3d at 564. Any opinion that Defendants acted reasonably, or any opinion likely to be understood to that effect, is a legal conclusion as to Defendants' liability under § 1983, and is therefore barred.

6

### *3. Psychological or Personal Opinions*

Paine contends that Evans's opinions should be barred "to the extent" that they comprise psychological or personal analyses, rather than conclusions properly based in Evans's expertise. As noted above, Evans repeatedly explained during his deposition that he is not qualified to offer psychiatric opinions and does not intend to do so. Nevertheless, Paine contests as an inappropriate psychological opinion Evans's explanation of one police officer's use of the word "irrational" in a report describing Eilman's behavior. Evans noted that the word was not used "in any sort of a clinical sense" but rather "seems clearly to describe the 'silliness'" of Eilman's refusal to submit to fingerprinting during processing. (Evans Rep. at 4.) It is not clear why this constitutes a psychiatric conclusion, rather than the permissible opinion of a law enforcement expert as to what another law enforcement officer may have meant when writing her report about her interactions with Eilman. Evans does not opine that Paine was irrational, nor does he make any improper determinations about the credibility of the officer or her report. Thus, Paine has presented no adequate ground upon which this opinion should be barred.

Paine also challenges Evans's conclusions that Eilman's behavior would not have allowed CPD officers to seek involuntary mental health services for her, arguing that this is a psychiatric determination that he is not qualified to make. As noted below, there is no admissible basis for Evans's opinion in this regard, because he may not refer to either CPD orders or a general sense of national police policies in order to explain CPD practices. Moreover, Evans's conclusion that Defendant officers could not have taken Eilman for an involuntary mental health evaluation constitutes an inadmissible legal conclusion as to one of the ultimate issues in this Court's § 1983 analysis. *See Good Shepard*, 323 F.3d at 564.

Paine's motion to bar Evans's testimony "to the extent" that it is psychological or personal is therefore denied as to his testimony regarding the explanation of the word "irrational," but granted as to whether CPD officers could have taken Eilman for involuntary mental health treatment.

### *4. Reference to CPD General Orders and Regulations*

Paine contends that those of Evans's opinions which relate to the compliance, or noncompliance, of Defendant officers with CPD General Orders must be barred because Chicago Police Department General Orders, policies, and regulations are irrelevant, as such internal policies and procedures are deemed too variable to constitute an effective measure of whether Defendant officers' conduct was reasonable under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 815 (1996); *see also Thompson*, 472 F.3d at 455.

Defendants concede that evidence of, and testimony regarding, CPD orders is inadmissible under this standard, and have in fact moved to bar reference by any witness to such orders. (*See* R. 561 & 562.) Because the rule making such opinions irrelevant to the question of Fourth Amendment violations and thus § 1983 liability is clear, and because Defendants have agreed that they will not elicit Evans's testimony on this topic, Paine's motion to bar is granted in this regard.

In addition to the CPD orders, Evans appeared to argue during the Court's hearing on this Motion that there are nationally consistent, although not identical, police practices and procedures with respect to the treatment of mentally ill arrestees. It is clear that Evans did not present any such arguments in his report or during his deposition, and that his reference to national police practices thus constitute a new disclosure of information relied upon by Evans in forming his opinions. Federal Rule of Civil Procedure 26(e) allows the parties to supplement the evidentiary foundations for their experts' opinions, but when such supplemental materials are not disclosed prior to a hearing in which they are relied upon as evidence, the Court must decide whether the failure to disclose "was

substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Here, the references to standard or consensus police practices, which do not appear to be based in any systematic research conducted by Evans but only in his generalized experience and expertise, almost certainly would have been subject to a challenge to Evans's methodology had they been disclosed earlier. Because Paine has not had an opportunity to adequately respond to the significant problems, under the methodology prong of *Daubert*, implicated by Evans's reliance on national police practices and procedures, the Court finds that his new references to this information as a basis for his opinions is neither substantially justified nor harmless. Accordingly, Evans will not be allowed to rely upon or reference any information regarding general or national police practices and procedures at trial.

### 5. *Distinction Between Lock-ups and Jails or Prisons*

Finally, Paine argues that Evans should not be allowed to testify that police lock-up facilities are held to a lesser standard of care than longer-term jail and prison facilities with respect to the provision of mental health services. Evans's report observes that "lockups do not provide . . . the same level of medical and mental health services that are provided in jails and . . . prisons where the length of stay is longer . . . ." (Evans Rep. at 6.) On the basis of this statement, Paine argues that Evans should not be allowed to testify as to whether lockups and jails or prisons differ in the applicable standard of care for making mental health referrals, an opinion which Evans offers nowhere in his report. During his deposition, Evans responded to a question about whether there was a different standard by stating: "I don't think the standard is different. The custody is different." (Evans Dep. at 83.)

The question of whether Evans should be allowed to offer an opinion as to differing standards of care between lockups and longer-term facilities is therefore moot, as he offers no such opinion

9

in either his report or during his extensive deposition testimony. The motion to bar on this ground is therefore denied.

Paine's Motion to Bar [the] Opinion Testimony and Report of Warren Evans is granted as to any references to CPD General Orders or regulations, his testimony that Defendant officers acted responsibly, and his testimony that CPD officers could not have taken Eilman for involuntary mental health treatment, and denied in all other respects.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 25, 2010