IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person, | ) ) ) ) |
| Plaintiff, | ) Case No. 06-cv-3173 ) |
| v. | ) Judge Virginia M. Kendall ) |
| OFFICER JEFFREY JOHNSON, OFFICER, RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a municipal corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kathleen Paine ("Paine"), as Guardian of the Estate of Christina Rose Eilman ("Eilman"), filed this suit against the City of Chicago and various members of the Chicago Police Department (collectively, "Defendants"), alleging violations of Eilman's constitutional rights and violations of federal and Illinois law. As more fully set forth in this Court's Memorandum Opinion and Order dated November 7, 2008, Paine brings this suit on behalf of Eilman, her daughter, for injuries that Eilman incurred after the Chicago Police Department released her from custody. Paine has now moved to exclude all or parts of the proposed testimony of eight expert witnesses. Defendants have moved to exclude all or parts of the proposed testimony of seven expert witnesses.

For the reasons set forth below, Defendants' Omnibus Motion to Exclude Certain Expert Testimony is denied in part and granted in part as to the expert testimony of James L. Kennedy.

## STANDARD OF REVIEW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Seventh Circuit has developed a three-step admissibility analysis for expert testimony under Rule 702 and *Daubert*. *See Ervin*, 492 F.3d at 904. First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (quoting Fed.R.Evid. 702). Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable." *Id.* (citing *Daubert*, 509 U.S. at 592-93). Courts are, however, granted "broad latitude when [they] decide[] *how* to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S 137, 142 (1999). Finally, the expert's testimony must be relevant, or "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904.

## DISCUSSION

**I. Defendants' Motion to Bar the Expert Testimony of James L. Kennedy**

James L. Kennedy is a career law enforcement officer who is currently the Sheriff of Monroe County, Indiana. Although the format of his expert report makes it somewhat difficult to discern the scope of his expert opinions, he appears to opine that Defendant officers violated a number of CPD

General Orders and regulations in their handling of Eilman's detention and that the inconsistencies between the statements of Defendant officers and those of Eilman's fellow detainees "indicate a lack of credibility on the part of individuals or groups of individuals." (R. 563, Ex. A, Expert Report of James L. Kennedy, at 6-8.) (hereinafter "J. Kennedy Rep.") His supplemental report additionally opines that Defendant officers failed to provide Eilman "with access to mental health services as required . . . by accepted practices of law enforcement agencies throughout the United States" and that the CPD "failed to reasonably accommodate" Eilman's mental illness. (R. 563, Ex. B, Supplemental Report of James L. Kennedy, at 2, 9.) (hereinafter "J. Kennedy Supp. Rep.") Defendants challenge Kennedy's qualifications, the methodology by which he reached certain of his conclusions, and the relevance of his opinions.

### A. Qualifications

In support of his qualifications to testify as an expert in the field of law enforcement practices, Kennedy presented a "Synopsis of Resume" summarizing his work experience, education, and membership in professional and community organizations. (*See* R. 563, Ex. C, Synopsis of Resume of James L. Kennedy.) The resume does not contain details about Kennedy's professional experiences, but Kennedy elaborated on his background during his deposition. (*See* R. 563, Ex. D., Deposition Testimony of James L. Kennedy, at 8-29.) (hereinafter "J. Kennedy Dep.").

Defendant, describing Kennedy's relevant experience as having been "the head of the University of Indiana police or the Sheriff of a county of 130,000 people," is unqualified to offer opinions about police practices in the city of Chicago. (R. 563, Def. Memo., at 1.) Whether a proposed expert witness is adequately qualified "can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter

of the witnesses's testimony." *See Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990). There is no requirement, however, that the subject of the witness's proposed testimony precisely overlap with his prior experience in both kind and degree. Moreover, there is no requirement that a proferred expert have an academic degree in the field at issue, as Defendants imply. *See Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (no requirement "that expert witnesses be academics or PhDs").

The Court's review of Kennedy's education and experience, as elucidated in his deposition, demonstrates that he has sufficient law enforcement experience to be qualified as an expert witness in the general field of law enforcement practices. Although he has not served in the police department of a city of Chicago's size, neither has Detroit Police Chief Warren Evans, Defendants' police practices expert. In the unpublished district court case upon which Defendants rely for their assertion that Kennedy's testimony should be barred because his experience is not sufficiently comparable to the facts at issue, the proposed expert in police use of force had no street experience of any kind. *See Caitlin v. Dupage County Major Crimes Task Force*, No. 04 C 2590, 2007 WL 1772175 (N.D. Ill. 2007) (Leinenweber, J.). That is not the case here.

Defendants additionally contest Kennedy's qualifications to offer opinions about the neighborhood into which Eilman was released and about whether Defendant officers violated Eilman's rights under the ADA. Paine has conceded that she will not elicit Kennedy's opinions a trial about the neighborhood of release, and thus the Court need not decide whether he would be qualified to offer such opinions.

As to Kennedy's opinions about Defendant officers's failure to "reasonably accommodate" Eilman's mental health condition, he does not offer a legal conclusion about whether Paine has

4

shown a violation of the ADA, or even about what would be necessary to make such a showing. Instead, he is offering a law enforcement opinion based on his own experience with the ADA's "accommodations and modifications" in the course of police operations. (*See* J. Kennedy Dep. at 84-85.) Both parties have agreed that no witness will be asked to offer opinions consisting of legal conclusions, and with that caveat, Kennedy may be permitted to testify as to whether Defendants' conduct comported with his experiences of the ADA's requirements for law enforcement accommodations.

Defendants' additional argument that Kennedy is the father of a law partner in Paine's counsels' firm is an issue of bias and credibility that may be raised on cross-examination,[1] and not a reason to bar Kennedy's otherwise competent testimony. *See Braun v. Lorillard Inc.*, 84 F.3d 230, 237-38 (7th Cir. 1996) (expert not disqualified solely because he is, or is related to, one of the litigants). Nor is Kennedy unqualified because he is not one of the usual suspects, as "there is a first time in court for every expert" and experts need not be "professional witnesses" to be qualified in their areas of expertise. *See United States v. Parra*, 402 F.3d 752, 758-59 (7th Cir. 2005). Kennedy is thus qualified to offer his proposed opinions as to Defendants' conduct in light of general law enforcement practices. Whether these opinions are relevant is discussed below.

**B. Methodology**

Kennedy's report does not provide a comprehensive list of the materials upon which he relied in reaching his conclusions, nor does he discuss the methodology by which he reached his opinions. Defendants have not presented a challenge to the data upon which he relied or to his methodology

---

[1] Paine has filed a Motion *in Limine* to preclude cross-examination of Kennedy on the subject of his connection to Paine's counsels' law firm. The Court will fully address this Motion in a subsequent Order.

in general, however. Neither side has provided the Court with adequate information upon which to conduct a reasoned discussion of Kennedy's methodology. As Defendants do not seek to bar Kennedy's testimony on methodological grounds, the Court need not conduct a methodological analysis. *See United States v. Moore*, 521 F.3d 681, 685 (7th Cir. 2008) ("A judge is not obliged to look into the questions posed by Rule 702 when neither side either requests or assists.").

### C. Relevance

#### 1. Credibility Determinations

As explained above, no expert witness may offer an opinion as to whether the testimony of certain witnesses "raises the issue of veracity" or is clearly credible. See *Goodwin v. MTD Prods. Inc.*, 232 F.3d 600, 609 (7th Cir. 2000). Paine concedes that such opinions are not appropriate and that there is no "plan or intention to elicit or to offer such opinions at trial about the credibility of any witnesses in this case." (R. 604, Pl. Resp., at 9.) The parties therefore agree that Kennedy's commentary about the credibility of various eyewitnesses is barred, and this portion of Defendants' motion to bar is moot.

#### 2. CPD General Orders

Defendants' liability under § 1983 for violations of Eilman's Fourth Amendment rights may not be established by reference to police department orders and regulations. *See Whren v. United States*, 517 U.S. 806, 815 (1996); *see also Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006). Defendants thus argue that all of Kennedy's opinions which depend upon CPD orders must be barred as irrelevant. Paine responds, however, that there is no bar on using Defendants' failure to comply with CPD procedures in order to establish a claim for punitive damages on the basis of their intentional or willful disregard for Eilman's constitutional rights. Paine also argues that there

is no bar on the use of departmental regulations to establish a violation of the ADA's reasonable accommodation requirement.

As explained more fully in the Court's Order granting Defendants' Motion in Limine to Bar Any Reference to CPD orders, because there is a serious risk that the jury will consider the Defendants' violation of CPD general orders as evidence of their liability pursuant to § 1983, and because the Supreme Court has specifically barred such use, referring to the orders but then asking the jury to consider them only in their punitive damages calculations or ADA consideration will be far more prejudicial than probative. Kennedy's opinions as to Defendant officers' violations of CPD regulations and procedures are therefore barred.

Kennedy may, however, testify with reference to his personal knowledge of general police practices. Whereas specific, local police standards and "the text of the CPD's General Orders . . . shed[] no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment under *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006), testimony that an officer's tactics "violated standard police practices" more generally "may . . . be deemed relevant to the reasonableness inquiry." *See Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir. 2005). Indeed, *Thompson* reasons that local police orders and standards are "an unreliable gauge by which to measure the objectivity and/or reasonableness of police conduct" because "police rules, practices and regulations vary from place to place and from time to time." *See Thompson*, 472 F.3d at 455. The same concern is not implicated when an expert qualified to do so testifies as to national, standard police practices. Thus, where qualified to do so and where their testimony is otherwise relevant, experts may testify as to nationally accepted standards of police conduct, but not to policies and procedures of specific police departments. Here, the only relevant testimony about general

police practices and procedures goes to the police administrative factors prong of the *Williams/Sides* medical needs test. (*See* R. 419, Mem. Op. & Order, at 13-14.)

Defendants' Omnibus Motion to Exclude Certain Expert Testimony is therefore granted as to Kennedy's opinions regarding CPD orders, but denied as to the other opinions detailed above. The parties agree that Kennedy will not testify regarding the neighborhood into which Eilman was released, will not offer legal conclusions, and will not offer opinions or commentary about the credibility of eyewitness testimony.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 25, 2010