IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person,<br><br>                Plaintiff,<br>v.<br><br>OFFICER JEFFREY JOHNSON, OFFICER, RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a municipal corporation,<br><br>                Defendants. | Case No. 06 C 3173<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kathleen Paine ("Paine"), as Guardian of the Estate of Christina Rose Eilman ("Eilman"), filed this suit against the City of Chicago and various members of the Chicago Police Department (collectively, "Defendants"), alleging violations of Eilman's constitutional rights and violations of federal and Illinois law. As more fully set forth in this Court's Memorandum Opinion and Order dated February 22, 2010, Paine brings this suit on behalf of Eilman, her daughter, for injuries that Eilman incurred after the Chicago Police Department released her from custody. Paine has now moved to exclude all or parts of the proposed testimony of eight expert witnesses. Defendants have moved to exclude all or parts of the proposed testimony of seven expert witnesses. For the reasons set forth herein, Paine's Motion in Limine and Motion to Bar Certain Opinion

Testimony and Related Portions of Report of Dr. Alexander Obolsky M.D. is granted in part and denied in part.

## STANDARD OF REVIEW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Seventh Circuit has developed a three-step admissibility analysis for expert testimony under Rule 702 and *Daubert*. *See Ervin*, 492 F.3d at 904. First, "the witness must be qualified 'as an expert by knowledge, skill, experience, training, or education.'" *Id.* (quoting Fed.R.Evid. 702). Second, "the expert's reasoning or methodology underlying the testimony must be scientifically reliable." *Id.* (citing *Daubert*, 509 U.S. at 592-93). Courts are, however, granted "broad latitude when [they] decide[] *how* to determine reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S 137, 142 (1999). Finally, the expert's testimony must be relevant, or "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin*, 492 F.3d at 904.

## DISCUSSION

**I. Paine's Motion to Bar the Expert Testimony of Dr. Alexander Obolsky**

Dr. Alexander Obolsky ("Obolsky") is a psychiatrist who opines: 1) that Eilman's mental state during her time in custody did not meet the criteria for involuntary admission to a mental health facility, and 2) that it did not substantially limit her ability to perform major life activities. Paine

2

moves to bar "certain" of Obolsky's proposed opinions on the grounds that they are beyond his areas of expertise, or are unsupported by facts in the record, or are irrelevant. The Court held a hearing on Paine's Motion to Bar Obolsky's testimony on February 1, 2010.

### A. Qualifications

Paine does not challenge Obolsky's qualifications to testify as a psychiatric expert. Obolsky's Curriculum Vitae, attached as an exhibit to his report, reveals a lengthy career of both academic and practical experience in the field of psychiatry. (*See* R. 569, Ex. C, Curriculum Vitae of Alexander E. Obolsky, M.D.) At hearing, Obolsky further elaborated about the specifics of his medical education and experience as a clinical and forensic psychiatrist. (*See* Mot. Hr'g Trans., Alexander Obolsky, at 10-14, Feb. 1, 2010) (hereinafter "Hr'g Trans. 1") The Court therefore finds him qualified to offer testimony as an expert psychiatrist.

Paine argues, however, that Obolsky's proffered opinions as they relate to two specific areas should be barred due to his lack of expertise in the relevant area: 1) police practices or procedures, and 2) the meaning of "major life activities" under the ADA.

#### 1. *Police Practices*

Paine states that Obolsky should be barred from testifying as to police practices or procedures for dealing with the mentally ill, as he has no expertise in this area. When questioned during his deposition, Obolsky repeatedly stated that he was "not an expert as to [] police procedure" and did not have opinions as to the scope of police orders for dealing with mentally ill detainees. (*See* R. 569, Ex. B, Deposition Testimony of Alexander E. Obolsky, M.D., at 185, 216.) (hereinafter "Obolsky Dep.") Obolsky's lengthy report does not include any opinions as to the scope of relevant police procedures, or as to whether Defendants complied with applicable police practices. (*See* R.

3

569, Ex. A, Expert Report of A.E. Obolsky, M.D.) (hereinafter "Obolsky Rep."). Instead, Obolsky offers opinions regarding Eilman's behavior while in custody, his interpretations of those behaviors as relevant to her mental condition, and his conclusions as to whether Eilman's behavior required her to be sent for a mental health evaluation while in custody. Obolsky has significant experience in evaluating and addressing the mental health needs of detainees in police custody. (*See* Hr'g Trans 1 at 16-18.) His proffered opinions in this area are therefore properly within Obolsky's expertise as a psychiatrist; as a result, Obolsky's testimony will not be limited on this ground.

### 2. *"Major Life Activities" and the ADA*

Paine next argues that Obolsky is not qualified to offer opinions about the meaning and applicability of "major life activities" as defined by the ADA, because he has no specialized training in the area of disability evaluation or assessment. This Court finds this argument unpersuasive. Obolsky testified at the Court's hearing on this Motion that he offers opinions about patients' ability to engage in major life activities dozens of times per year in the forensic psychiatry context and hundreds of times per year in his clinical practice. (*See* Hr'g Trans 1 at 14.) He also stated that evaluating an individual's ability to perform major life activities is a regular part of his day-to-day practice, and that discussion of major life activities is "ubiquitous of psychiatric practice and psychiatric education." (Hr'g Trans 1 at 15.) As a trained and experienced psychiatrist, Obolsky appears well-qualified to determine whether an individual's mental state at a particular point in time negatively affected her ability to conduct major life activities.

### B. Methodology

Paine does not challenge the general methodology by which Obolsky reached the opinions presented in his report. At hearing, he explained that forensic psychiatrists commonly rely on third-

4

party sources of information, including records that are contemporaneous with the incidents at issue, depositions taken from other parties involved in a lawsuit, and other materials through which they may evaluate an individual's behavior at a particular time. (*See* Hr'g Trans. 1 at 19-20.) He stated that this is the generally accepted method used by experts in forensic psychology, and that it is commonly accepted that a forensic psychiatrist need not personally interview the individual whose behavior is at issue. (*See* Hr'g Trans. 1 at 22.)

The "Sources of Information" section of Obolsky's Report reveals that he examined Eilman's school records, treatment notes from a number of Eilman's past physicians and medical institutions, internal affairs statements provided by various CPD officers and detention aides, a very lengthy list of the depositions of other witnesses to the events at issue in this litigation and other materials relevant to his reconstruction of Eilman's experiences in Chicago. (*See* Obolsky Rep. at 26-32.) The Court finds this extensive list of sources to be appropriate and adequate to serve as a foundation for Obolsky's proffered opinions.

With respect to Obolsky's opinions about whether Eilman was limited in the performance of a major life activity as a result of her mental condition, Paine argues that his conclusions are unsupported and unreliable. Obolsky's report, however, repeatedly relies upon specific, well-founded portions of the factual narrative in order to make psychiatric findings that Eilman was able to make rational decisions, care for herself, and match her behavior to her surroundings. For example, Obolsky concluded that Eilman was able to make "logical and realistic decision[s]" about matters of personal care and hygiene after reviewing the deposition testimony of a detention aide who offered Eilman a sanitary pad after realizing that she was menstruating, which Eilman refused "because she only use[d] tampons." (Obolsky Rep. at 23-24.) As a second example, Obolsky

5

explained that Eilman's behavior after her release from detention, seeking shelter and water for her medications, reflected that Eilman "was able to take care of her basic needs." (Obolsky Rep. at 26.) Paine's objections that Obolsky's conclusions on this matter differ from those suggested by other facts in the record do not require a finding that Obolsky's testimony is unfounded and factually unreliable. Because the contradiction between Obolsky's provided examples and other testimony as to Eilman's behavior can be adequately addressed upon cross-examination, Obolsky's testimony on the ADA issue cannot be entirely barred on this ground.

**C. Relevance**

Paine further challenges Obolsky's opinions in two areas as irrelevant: 1) the significance of the car accident in which Eilman was involved in February 2005, 2) his comments regarding the trustworthiness of the eyewitness testimony of Euraina Hawkins, Eilman's fellow detainee.

*1. The February 2005 Car Accident*

Paine argues that Obolsky's testimony, presented at his deposition, that there may have been a causal link between Eilman's February 2005 car accident and her May 2006 behavior in Chicago should be barred as irrelevant. (*See* Obolsky Dep. at 202-03.) Obolsky's report does not refer to the car accident in his narrative "history of relevant events." (*See* Obolsky Rep. at 4.)

Although Paine's primary objection to this testimony is that Obolsky cannot draw this causal link with any degree of medical certainty, the real problem with this proposed testimony is whether evidence of a possible cause of Eilman's behavior, discovered only after the events that are at the core of this litigation, is relevant or helpful to the jury. As discussed at length in the Court's Order addressing the proposed expert testimony of David Dix, it is not. With respect to Paine's § 1983 claim, Defendants' liability must be viewed through the lens of whether their conduct was objectively reasonable, and does not take into account an alternative theory of causation for her

6

behavior that was unknown and unknowable at the time of Eilman's detention in Chicago. *Cf. Graham v. Connor*, 490 U.S. 386, 396 (1989) (explaining that the objective reasonableness of an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight").

As to Paine's ADA claim, whether she was an individual with a disability entitled to accommodation under the ADA depends on whether her mental disability limited one or more of her major life activities, not whether her disability was caused by bipolar disorder, by a brain injury, or by any other illness. The ADA's implementing regulations explain that: "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." App'x to Part 1630–Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. 1630.2(j).

Obolsky's testimony as to whether Eilman meets the ADA's limitation of major life activities criterion is relevant, but his opinion as to a possible alternative cause for her disability (or lack thereof) is not relevant. Therefore, Obolsky's testimony as to the link between the automobile accident and Eilman's behavior in Chicago is barred as irrelevant. The Court reserves ruling for trial on any potential use of Obolsky's opinions as to other possible causes of Eilman's brian injury for purposes of cross-examination or impeachment with respect to his methodology and the weight that the jury should afford to his testimony.

### 2. The Testimony of Euraina Hawkins

Paine challenges Obolsky's opinion, offered at deposition, that the eyewitness testimony of Euraina Hawkins "was not trustworthy" because of her mental state at the time of the events in question. (*See* Obolsky Dep. at 227.) Experts may not offer opinions as to whether the testimony

of particular witnesses is trustworthy or not. *See Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 609 (7th Cir. 2000). Defendants' counter-argument, that an assessment of Hawkins's mental state is properly within his expertise as a psychiatrist, is insufficient to overcome the clearly established bar prohibiting expert witnesses from making credibility determinations. Obolsky's testimony, even if argued to be a mere evaluation of the usefulness of her testimony in reaching psychiatric conclusions, is likely to be understood by the jury as an expert opinion that Hawkins is not to be believed. This is precisely the usurpation of the jury's role that the bar on expert credibility testimony is designed to prevent. *See United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999) (expert credibility testimony is improper "because it influences a critical function of the jury"). Thus, Obolsky is barred from opining as to Hawkins's credibility as a witness.

### D. Misleading or Confusing Evidence

#### 1. *"Major Life Activities" and the ADA*

As a third ground of objection to Obolsky's proffered opinion regarding Eilman's ability to perform major life activities, Paine argues that the jury would be misled by the testimony because he is not qualified to offer this opinion, because his definition of major life activities varies from that set forth by the ADA and interpreting case law, and because his opinion is at odds with other evidence in the record. The first and last of these challenges are addressed above.

The second contention, that the jury will be confused by an interpretation of major life activities that varies from the legal framework of the ADA, is a potential source of jury confusion. However, Paine's argument is not that Obolsky's definition of major life activities conflicts with the legal definition, or that it is inconsistent with the legal definition, but merely that it is more limited in scope than that envisioned by the current ADA. This is an objection that can be addressed by cross-examination respecting those life activities that Obolsky does not adequately address during

his testimony, if there are any such. Paine has not otherwise shown that the probative value of Obolsky's testimony about major life activities will be outweighed by any of the factors implicated in Rule 403. Thus, Obolsky will be allowed to testify on this issue.

### 2. *"Features" of Certain Psychiatric Illnesses*

Finally, Paine challenges Obolsky's opinion as to whether Eilman had "features" of certain psychiatric illnesses on the grounds that such testimony would be confusing to the jury. Paine argues that this opinion will be confusing to the jury because it is not offered to a reasonable degree of medical certainty. However, medical expert testimony may be offered under *Daubert* and its progeny where it is deemed reliable and relevant even if it is not stated with medical certainty. *See Daubert*, 509 U.S. at 595 ("the focus . . . must be solely on principles and methodology, not on the conclusions that they generate."). Obolsky's testimony is otherwise within his expertise as a trained psychiatrist and reasonably based upon sufficient data and facts in the record, and is therefore admissible even though he proposes to testify that Eilman demonstrated certain "features" of certain psychiatric disorders and does not propose to diagnose her as having those disorders as a matter of medical certainty. Paine's motion to bar this portion of Obolsky's proposed testimony is therefore denied.

Paine's Motion in Limine and Motion to Bar Certain Opinion Testimony and Related Portions of Report of Dr. Alexander Obolsky M.D. is therefore granted as to Obolsky's proffered opinions about the February 2005 car accident and as to the credibility of eyewitness Euraina Hawkins. The Motion is denied in all other respects.

```
                                    _____
                                    Virginia M. Kendall
                                    United States District Court Judge
                                    Northern District of Illinois
```

Date: February 26, 2010