IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person, <br><br> Plaintiff, <br><br> v. <br><br> OFFICER JEFFREY JOHNSON, OFFICER, RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a municipal corporation, <br><br> Defendants. | Case No. 06-cv-3173 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kathleen Paine ("Paine"), as Guardian of the Estate of Christina Rose Eilman ("Eilman"), filed this suit against the City of Chicago and various members of the Chicago Police Department (collectively, "Defendants"), alleging violations of Eilman's constitutional rights and violations of federal law. As more fully set forth in this Court's Memorandum Opinion and Order dated November 7, 2008, Paine brings this suit on behalf of Eilman, her daughter, for injuries that Eilman incurred after the Chicago Police Department released her from custody. Defendants move the court to bar any reference by any trial witness or counsel to Chicago Police Department ("CPD") general orders. Defendants also request that trial witnesses and counsel be barred from suggesting

1

or contending that police officers are constitutionally required to send an arrestee for mental health treatment if she does not pose an imminent danger to herself or others while in custody. For the reasons set forth herein, Defendants' Omnibus Motion to Exclude Certain Expert Testimony is granted in part and denied in part.

**I. Defendants' Motion to Bar Any Reference to CPD General Orders**

Paine's claim under 42 U.S.C. § 1983 for violations of Eilman's Fourth Amendment rights hinges on the issue of whether Defendants acted reasonably in their handling of Eilman's medical needs during her time in CPD custody. Defendants argue that evidence of whether Defendants complied with particular CPD orders is irrelevant, because Defendants' constitutional liability may not be established by reference to their compliance with, or violation of, local police department orders and regulations.

Internal police department policies and procedures have been deemed too variable to constitute an effective measure of whether the Defendants' conduct was objectively reasonable under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 815 (1996); *Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir 2006). Thus, a violation of police orders, practices or regulations is immaterial as to the question of whether a violation of the federal constitution has been established. *See Thompson*, 472 F.3d at 455; *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003); *Pasiewick v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001); *Stoller v. Moore*, 84 F.3d 964, 969 (7th Cir. 1996); *see also Beckham v. Stiles*, 06-c-978, 2009 WL 3335096 (E.D. Wis. Oct. 15, 2009) (Moody, J.); *Longs v. Lebo*, 3:07-cv-83, 2009 WL 799533 (N.D. Ind. Mar. 24, 2009) (Miller, Chief J.). For the same reason, general testimony as to accepted police practices and national standards for police conduct is also inadmissible. *See, e.g., Legg v. Agee*, 05-cv-1354, 2009

WL 56876 at *5 (C.D. Ill. Jan. 6, 2009) (McDade, J.) (applying *Thompson* to find that testimony as to "police best practices, internal standards for police conduct, and the like, are inadmissible").

Paine does not contest that, under *Whren* and *Thompson*, no party to this litigation may rely upon evidence of CPD General Orders in order to establish that Defendants are, or are not, liable for violations of Eilman's Fourth Amendment rights. Paine does argue, however, that there is no bar on using Defendants' failure to comply with CPD procedures in order to establish a claim for punitive damages on the basis of their intentional or willful disregard for Eilman's constitutional rights. Paine also argues that there is no bar on the use of departmental regulations to establish a violation of the ADA's reasonable accommodation requirement.

Paine may be correct that evidence of noncompliance with established polices or procedures is relevant to her claim for punitive damages. Paine relies upon an unpublished district court case in a non-police related proceeding, in which the judge observed that *Thompson* did not clearly "address the potential admissibility of evidence showing a violation of internal agency rules and procedures with regard to a claim for punitive damages." *See Via v. Lagrand*, No. 03 C 3278, 2007 WL 495287 at * 6 (N.D. Ill. Feb. 12, 2007) (Castillo, J.). However, the judge did not rule that such evidence was irrelevant to a claim for punitive damages, and the case was dismissed by stipulation of the parties before further briefing on the applicability of *Thompson* was completed. *See* Stip. of Dismissal, *Via v. Lagrand*, No. 03 C 3278 (N.D. Ill. Feb. 21, 2007).

The Court need not decide whether reference to CPD orders for the purpose of establishing punitive damages is relevant, however, because such evidence would be far more prejudicial than probative under Rule 403. On the probative value side of the equation is the fact that Defendants' failure to comply with their department's own rules and regulations is indicative that they acted with

3

intent, rather than mere negligence or ignorance, when they failed to appropriately manage Eilman's situation. There is ample other evidence to support this proposition in the record, however, including the extensive testimony of other detainees. Balancing this evidentiary value is the fact that evidence of the Defendants' violation of CPD General Orders is highly prejudicial on the issue of their liability, and of such limited probative value that the evidence is inadmissible as a matter of law. Appropriate jury instructions limiting the use of this evidence for consideration of punitive damages only can minimize, but not eliminate, the prejudicial effect. *See United States v. Strong*, 485 F.3d 985, 991 (7th Cir. 2007).

However, the bar established by *Whren* and *Thompson* provides that CPD orders are not relevant to constitutional claims brought under § 1983, but says nothing about their relevance to alleged violations of other federal statutes. In addition to *Whren*, *Thompson* rested on a line of Illinois cases holding that "violation of self-imposed rules or internal guidelines . . . does not normally impose a general duty . . . ." *Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006). The *Thompson* court was therefore concerned both with the variability of individual police department policies and their relevance to the question of whether a constitutional or legal violation at occurred. Here, there is no evidence the CPD orders comported with the legal requirements of the ADA, such that Defendants can be deemed to have violated the ADA if they violated CPD orders. That is to say, CPD orders could impose a higher standard than that of the ADA—and so Defendant officers could have violated orders, but not the ADA—or could have imposed a lower standard than the ADA, such that even total compliance with the orders would not necessarily translate to compliance with the dictates of the ADA. Therefore, evidence of CPD orders related to the treatment of mentally disabled detainees does not appear to be particularly relevant to the issue of

4

Defendants' liability under the ADA.

Additionally, there is other, more direct, evidence in the record on the issue of whether Eilman was a qualified individual with a disability whom the Defendants failed to reasonably accommodate, and thus evidence of CPD orders on the subject is not so probative as to outweigh their tendency to confuse the jury's consideration of whether Defendants complied with the ADA. Finally, as noted above, there is a serious concern that the jury will not appropriately cabin their consideration of CPD orders to any narrow area in which such use might be permissible, and will instead use evidence of Defendants' violation of the orders in determining constitutional liability.

Because there is a serious risk that the jury will consider the Defendants' alleged violation of CPD General Orders as evidence of their liability pursuant to § 1983, and because the Supreme Court has specifically barred such use, referring to the orders but then asking the jury to consider them only in their consideration of punitive damages or Paine's ADA claims will be far more prejudicial than probative. Defendants' Motion to Bar reference to CPD orders is therefore granted.

**II. Defendants' Motion to Bar Contentions or Suggestions that Police Are Constitutionally Required to Send An Arrestee for Mental Health Treatment if She Does Not Pose an Imminent Danger to Herself or Others While in Custody**

Defendants ask the Court to preclude contentions or suggestions at trial that police are constitutionally required to send a person in custody who does not pose a threat to herself or others for mental health treatment. Defendants argue that they could not have held Eilman for an involuntary health evaluation or treatment unless she was an imminent danger to herself or others.

A review of the record presently before the Court indicates that Eilman was never asked whether she would like to be taken for a mental health evaluation, and that she never refused such an evaluation. Therefore, there is no evidence that any mental health evaluation or even commitment

5

of Eilman would have been "involuntary." Defendants' entire line of argument that they could only have provided Eilman with mental health treatment if she met the criteria for involuntary treatment appears to be based not upon the facts of this case, but upon their reading of CPD General Orders as establishing that an arrestee is in need of mental health treatment only if she is a "person subject to involuntary commitment." (R. 562, Memo., at 3.) However, as Defendants persuasively argue in the first section of this very same motion, their liability under § 1983 is not dependant upon whether they acted in accordance with CPD orders, but upon whether their conduct was constitutionally reasonable.

Paine's Complaint brings claims under § 1983 against individual CPD officers for failure to provide Eilman with mental health treatment in violation of the Fourth Amendment (as incorporated against the states under the Fourteenth Amendment). Once a state takes a person into its custody, it assumes an obligation to provide for his basic needs, including "food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 1005 (1989). Courts apply a four-factor test to evaluate the objective reasonableness of an officer's conduct in the medical needs context. *See Sides v. City of Champaign*, 496 F.3d 820, 823 (7th Cir. 2007). The first factor measures whether the officer has received notice of the detainee's medical need, whether through the detainee's words or through observation of the detainee's physical symptoms. *Id.* at 823, 828. The second factor considers the seriousness of the medical need. *Id.* at 828. "The severity of the medical condition under this standard need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendments. Instead, the Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third factor--the scope of the requested treatment." *Williams v. Rodriguez*,

509 F.3d 392, 403 (7th Cir. 2007). Police interests factor into the reasonableness determination under the fourth factor. *Sides*, 496 F.3d at 828. This final factor "is wide-ranging in scope and can include administrative, penological, or investigatory concerns." *Williams*, 509 F.3d at 403.

These factors, therefore, govern the jury's consideration of whether Defendants acted reasonably in their handling of Paine's alleged need for mental health treatment. Their conduct may not be decided by reference to whether they could have sent her for involuntary mental health treatment, because that standard is drawn from CPD orders, and not from the constitutional requirements governing the provision of medical care to arrestees and detainees. Defendants' Motion to Bar trial witnesses from contending or suggesting that police are constitutionally required to send a person for mental health treatment if she does not pose a threat to herself or others while in police custody is therefore denied, because the standard set forth by Defendants in this motion is inappropriate to the constitutional claims at issue in this case.

Defendants' Omnibus Motion to Exclude Certain Expert Testimony is granted in part and denied in part. No witness or trial attorney may rely upon evidence of CPD General Orders in order to establish Defendants' liability for Paine's § 1983 claims, a claim for punitive damages under § 1983, or Defendants' liability under the ADA. Defendants' request to prevent witnesses from contending or suggesting that police are constitutionally required to send a person for mental health treatment if she does not pose a threat to herself or others while in police custody is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 26, 2010