IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN PAINE, as Guardian of the Estate of CHRISTINA ROSE EILMAN, a Disabled Person, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 06 C 3173 |
| v. | ) ) | Judge Virginia M. Kendall |
| OFFICER JEFFREY JOHNSON, OFFICER RICHARD CASON, OFFICER ROSENDO MORENO, LIEUTENANT CARSON EARNEST, SERGEANT DAVID BERGLIND, DETENTION AIDE SHARON STOKES, OFFICER TERESA WILLIAMS, DETENTION AIDE CYNTHIA HUDSON, DETENTION AIDE CATONIA QUINN, OFFICER DEBORAH MABERY, OFFICER PAMELA SMITH, OFFICER BENITA MILLER, OFFICER PAULINE HEARD, and CITY OF CHICAGO, a municipal corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kathleen Paine ("Paine"), as Guardian of the Estate of Christina Rose Eilman ("Eilman"), filed this suit against various members of the Chicago Police Department and the City of Chicago, alleging civil rights violations in connection with Eilman's arrest and subsequent release from the Second District women's lockup without providing her access to mental health treatment. Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendants Carson Earnest and Pauline Heard (the "Defendants") have filed a Motion for Summary Judgment on Counts X, XXXIII

and XXXIV of Paine's Third Amended Complaint.[1] For the reasons set forth below, Defendants' Motion for Summary Judgment is granted.

## BACKGROUND

This case, now six-years old, raises the issue of whether the Chicago Police Department, and certain of its officers, violated a young, mentally ill woman's constitutional rights when they failed to provide her with mental health treatment while she was in their custody; released her in a dangerous part of the city without her wallet or cellular telephone; after which she was raped and fell, or was pushed, from a seventh-story window in a housing project nearby. Ms. Eilman suffers from permanent brain damage as a result of the fall. The specific facts of this case were previously described in copious detail in the Court's February 22, 2010 opinion and are incorporated herein by reference.

In that opinion, this Court denied all of the defendants' motions for summary judgment on the grounds of qualified immunity. *See Paine v. Johson,* 689 F. Supp. 2d 1027, 1087-88 (N.D. Ill. 2010). The Court found that there was a genuine issue of material fact as to whether the defendants violated the Ms. Eilman's clearly established constitutional rights: (1) to receive care for her medical condition while in the custody of the police; and (2) to not have a state actor, without justification, increase her risk of harm. *Id.* Therefore, the case was set for trial to allow a jury to determine the reasonableness of the officers' actions.

After this Court issued that opinion, ten of the thirteen individual defendants filed an interlocutory appeal in the Seventh Circuit on the question of whether they are protected from this

---

[1] Counts X and XXXIII relate to Defendants Earnest's and Heard's alleged failure to provide medical care to Eilman. Count XXXIV relates to Defendant Heard's alleged failure to respond after creating an increased risk to Eilman's health.

2

suit by the doctrine of qualified immunity. *Paine v. Cason,* 678 F.3d 500, 506 (7th Cir. 2012). On April 26, 2012, the Seventh Circuit affirmed the Court's decision in part, reversed it in part, and remanded the case for further fact-finding[2] to determine whether two defendants are entitled to qualified immunity. *See id.* at 513.

With respect to Defendant Carson Earnest, the Seventh Circuit stated that:

It is not clear whether [Carson Earnest] observed any of Eilman's strange conduct. Earnest treated the call from Eilman's father as a prank: the record does not show why. Although *Johnson v. Jones* puts such factual issues off-limits on an interlocutory appeal, each defendant is entitled to have the district court decide whether he or she violated clearly established rights. On remand, the district court should conduct whatever proceedings are appropriate to determine whether, taking the facts in the light most favorable to Paine, Earnest violated Eilman's clearly established right to medical care while she was at the Eighth District. Earnest can be liable only for what he did; there is no doctrine of supervisory liability for the errors of subordinates...

*Id.* at 512.

With respect to Defendant Pauline Heard, the Seventh Circuit stated that:

Pauline Heard was a lockup officer...at the Second District. She does not appear to have been responsible for either evaluating Eilman's need for medical care or making the decision to release her. Paine emphasizes, as the basis for Heard's liability, the fact that she pointed Eilman toward 51st Street after her release. Providing walking directions to someone who has already been released on bond does not violate clearly established rights under either the failure-to-treat theory or the augmented danger theory. Unless the record has other facts that the parties have not discussed, Heard is entitled to qualified immunity.

---

[2] The Seventh Circuit did not cite to any rule or precedent for the concept of re-opening fact discovery after the parties had been given ample opportunity to develop facts and prepare Rule 56 statements and file motions for summary judgment. However, it directed the Court to conduct further fact-finding if necessary. Normally, the parties are given the opportunity to develop their factual record and if they fail to do so, they must rely on the limitations of that record. *See* N.D. Ill. R. 56.1; *see also Stevo v. Frasor,* 662 F. 3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote clarity of summary judgment filings."); *Ammons v. Aramark Uniform Services, Inc.,* 368 F. 3d 809, 817 (7th Cir. 2004) ("We have repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1."); *Bordelon v. Chicago School Reform Bd. of Trustees,* 233 F. 3d 524, 527 (7th Cir. 2000) The facts the parties developed are disputed and this Court ruled as such, that judgment as matter of law could not be entered.

*Id*.

After reviewing these instructions, the Court decided that it should not re-open discovery on these issues. (Doc. 801-2, Transcript of Proceedings on April 30, 2012, at 9.) The parties had already engaged in extensive and voluminous discovery and the Court had already viewed thousands of pages of discovery that had been collected over a multi-year discovery process. There was nothing to be gained by doing more. Rather, the Court directed the parties to examine their Rule 56.1 statements, identify any additional facts contained within those statements that were not previously argued to the Court, and submit additional briefing as to whether those facts, combined with the previously identified and argued facts, create a genuine issue of material fact as to whether the two defendants are entitled to qualified immunity. (*Id.* at 10-11.)

## **STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon*, 233 F.3d at 529. Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v.*

*City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

Since this case is on remand, the Court must also properly apply the Seventh Circuit's mandate in reaching its decision. *See Gertz v. Robert Welch, Inc.,* 680 F.2d 527, 532 (7th Cir. 1982). This requires the Court to execute the decision of the Seventh Circuit. *See id.*; *see also Vendo v. Lektro-Vend Corp.,* 434 U.S. 425, 427-28 (1978). However, observations, commentary or mere dicta touching upon issues that were not formally before the Seventh Circuit do not constitute binding determinations encompassed within the mandate. *See Gertz,* 680 F.3d at 532; *see also Quern v. Jordan,* 440 U.S. 332, 347 n. 18 (1979).

**DISCUSSION**

**I.     The Law of Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Akande v. Grounds*, 555 F.3d 586, 589 (7th Cir. 2009). The availability of qualified immunity turns on a two-part analysis: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the defendant's misconduct. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). Under *Pearson*, the Court may exercise discretion as to which of these issues it addresses first. *See id.* at 818.

In its first opinion, the Court found that Eilman had a clearly established Fourth Amendment right to receive care for her medical condition while in the custody of the police. The Court also found that Eilman had a clearly established Fourteenth Amendment right not to have a state actor, without justification, increase her risk of harm. The Seventh Circuit agreed. *See Cason,* 678 F.3d at 506, 510 ("Police must provide care for the serious medical conditions of persons in custody. That right is clearly established;" "It is clearly established that state actors who, without justification, increase a person's risk of harm violate the Constitution.") (Internal citations omitted.) However, this Court also found that there was a genuine issue of material fact as to whether the Defendants violated these clearly established rights. The Seventh Circuit disagreed. Instead, it found that these Defendants were entitled to qualified immunity unless, on remand, the Court and the parties identified other evidence, not presented to the Seventh Circuit, that raises an issue of material fact as to whether the Defendants violated Eilman's constitutional rights. *See Cason,* 678 F.3d at 512.

## II.     Failure to Provide Eilman with Mental Health Treatment

The Seventh Circuit has identified four factors that should be considered in determining whether a state actor has violated a person's clearly established constitutional right to receive care for a sufficiently serious medical condition while in custody. *See Sides v. City of Champaign*, 496 F.3d 820, 823 (7th Cir. 2007); *see also Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007). The first factor measures whether the officer has received notice of the detainee's medical need either through the detainee's words or through observation of the detainee's physical symptoms. *Sides,* 496 F.3d at 823, 828. The second factor considers the seriousness of the medical need. *Id.* at 828. "The severity of the medical condition under this standard need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendments. Instead, the

6

Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third factor--the scope of the requested treatment." *Williams*, 509 F.3d at 403. Finally, police interests also factor into the reasonableness determination. *Sides*, 496 F.3d at 828.

On appeal, the Seventh Circuit affirmed this Court's ruling that Plaintiff presented sufficient evidence to create a genuine issue of material fact as to whether Eilman had a sufficiently serious mental health condition to meet the second and third factors under the *Williams* test. *See Cason,* 678 F.3d at 506-07. The Seventh Circuit also implicitly affirmed this Court's ruling that a reasonable juror could find that police interests did not weigh in favor of denying Eilman mental health treatment. *See id.* However, the Seventh Circuit reversed this Court's ruling that there was a genuine issue of material fact as to whether Defendants had sufficient notice of Eilman's medical needs. *See id.* at 512.

### A. Defendant Carson Earnest (Count X)

In reaching its original conclusion, this Court found that the following evidence was sufficient to raise a genuine issue of material fact as to whether Lieutenant Earnest had notice that Eilman had a serious mental health condition that required medical attention. *See Johnson,* 689 F. Supp. 2d at 1068. Earnest was the Watch Commander at the Eighth District Station when Eilman arrived. *Id.* Earnest received multiple reports of Eilman's erratic behavior. First, Officer Cason informed him that Eilman was acting "goofy," experiencing major mood swings and did not appear to be on drugs. *Id.* Based upon this information, Earnest told Cason and Officer Moreno to take Eilman to the hospital. *Id.* However, Cason and Moreno did not have a car to transport Eilman to the hospital. *Id.* Instead of assigning them a different squad car, which he had the authority to do,

7

Earnest ordered Sergeant Berglind (who is not a medical professional) to interview Eilman to determine whether she needed a mental health evaluation. *Id.* Although after conducting the interview, Berglind informed Earnest that he thought everything was ok, Officer Delia later informed Earnest that she had spoken to Mr. Paine who, according to her testimony, told her that Eilman may have bipolar disorder and that he was concerned about her mood swings. *Id.* Earnest decided to disregard the call by challenging its authenticity and ordered Cason to continue processing Eilman's arrest. *Id.* As Watch Commander, Earnest had the authority to transfer Eilman to the hospital for a mental health evaluation. *Id.* Furthermore, he admitted that if an arrestee exhibits signs of a mental illness, that individual should be taken to a hospital. *Id.* Earnest, however, never checked on Eilman and decided not to send her to the hospital. *Id.*

Despite these facts, the Seventh Circuit concluded that based on the record before it, there was no genuine issue of material fact as to whether "Earnest violated Eilman's clearly established right to medical care while she was at the Eighth District" because the record did not show: (1) "whether Earnest observed any of Eilman's strange conduct;" or (2) why "Earnest treated the call from Eilman's father as a prank." *See Cason,* 678 F.3d at 512. It directed this Court, on remand, to consider these omissions and conduct any additional proceedings appropriate to determining whether Earnest violated Eilman's clearly established right to medical care. *See id.* After reviewing the parties' supplemental submissions and Rule 56.1 statements, the Court finds that the Plaintiff has not presented sufficient evidence that was not previously considered by this Court and presented to the Seventh Circuit. Therefore the Court is bound by the Seventh Circuit's ruling that those facts

8

are insufficient to establish Earnest's notice of Eilman's medical needs.[3] *See, e.g., Gertz,* 680 F.2d at 532.

The facts Plaintiff raises that were not originally argued to this Court or reviewed by the Seventh Circuit are: (1) that Earnest knew Delia for twelve years and considered her a reliable police officer; (2) that Earnest admitted he may want to talk to an arrestee, the arrestee's family, and any other persons who have observed the arrestees conduct to determine an arrestee's mental condition;(3) that Officer Delia was a 20-year veteran police officer; (4) that Delia interviewed Eilman and learned that she was from Los Angeles and trying to get home; (5) that Eilman asked Delia to call her stepfather; (6) that Earnest denied Delia's request to use the station's out-of-state phone; (7) that Mr. Paine asked Delia about getting Eilman home to California; and (8) that Delia told Earnest about her own observations of Eilman. (Doc. 806, at 6-7.) However, a number of these facts are not cited in either party's Rule 56.1 statements. Accordingly, the Court disregards these facts. *See Koszola v. Bd. of Educ.,* 385 F.3d 1104, 1109 (7th Cir. 2004) (A district court has discretion to require strict compliance with Rule 56.1 requirements).[4]

Even if the Court were to consider all of Plaintiff's "new" facts, this evidence is still insufficient to create a material issue according to the Seventh Circuit's ruling in this case. First, none of this evidence establishes that Earnest observed Eilman's conduct. The only "new" fact that relates to whether Earnest may or may not have observed Eilman's conduct is Plaintiff's assertion

---

[3]For example, Plaintiff argues the fact that Officer Cason told Earnest that Eilman needed a psychiatric evaluation is evidence that creates a genuine issue as to whether Earnest had sufficient notice of Eilman's condition. However, the Seventh Circuit explicitly considered this fact. *See Cason,* 678 F.3d at 512 ("Cason told him that Eilman needed a psychiatric evaluation and Berglind told him that she didn't. He sided with Berglind."). Since the Seventh Circuit found it insufficient to create a genuine issue of material fact, this Court, on remand, must also find it insufficient.

[4]The facts not listed in the Rule 56.1 statement are fact nos. 3-8.

9

that Earnest had a general practice of speaking to a detainee to determine that detainee's mental condition. (*See* Doc. 806, at 7-8.) However, there is no evidence Earnest followed that general practice in this case. For example, no one witnessed Earnest speaking with Eilman. There is no evidence that Earnest observed Eilman in her cell after he received the report from Sgt. Berglind that Eilman did not need a psychiatric evaluation. Accordingly, there is no evidence that Earnest had first-hand knowledge of Eilman's conduct.

Second, Plaintiff's "new" evidence does not establish any additional basis, not previously considered by the Seventh Circuit, that it was unreasonable for Earnest to disregard the phone call from Eilman's stepfather. While Plaintiff's evidence demonstrates that Officer Delia had no reasonable basis to doubt the identity of the caller, Plaintiff does not provide any evidence proving that Delia communicated the corroborating information to Earnest when she told him about the phone call. For example, there is no evidence that when Earnest originally denied Delia's request to make an out-of-state phone call, he knew she intended to call Eilman's stepfather; there is no evidence that Delia told Earnest that Delia was from Los Angeles; and there is no evidence that Delia told Earnest that Eilman had asked Delia to call her stepfather.[5]

Similarly, the evidence bolstering Delia's credibility is irrelevant because there is no evidence that Earnest questioned her reliability. For example, there is no evidence that Delia explained why she believed the caller was Mr. Paine and then Earnest disregarded that opinion. Rather, the evidence shows that Delia said nothing after Earnest questioned the identity of the caller.

---

[5] Plaintiff has also not presented any evidence that directly undermines the reasonableness of Earnest's opinion. For example, Plaintiff has not presented any statistics regarding the number of "prank" phone calls the Second District receives about the mental condition of its temporary detainees or any evidence regarding the ease of ascertaining the identity of detainees who have just been arrested.

Accordingly, the Plaintiff has not provided any additional evidence, that was not considered by this Court and reviewed by the Seventh Circuit, demonstrating that it was unreasonable for Earnest to question the veracity of the phone call placed by Mr. Paine to the station house. Since the Plaintiff has not identified any additional evidence in the record demonstrating that Earnest had notice of Eilman's medical condition, Earnest is entitled to qualified immunity on this count under the Seventh Circuit's ruling.

### B. Officer Heard (Count XXXIII)

In reaching its original conclusion, and as set forth in its original opinion, this Court found that the following evidence was sufficient to raise a genuine issue of material fact as to whether Officer Heard violated Eilman's right to receive medical attention. *See Johnson,* 689 F. Supp. 2d at 1073-74. Heard worked the Second District lockup with Officer Williams during the Third Watch on May 8, 2006. *Id.* at 1073. At some point during Heard's shift, she heard Eilman repeatedly yell, "[b]itch feed me." *Id.* Detainee Holland, who was in the lock-up from 4:00 p.m. on May 8, 2006 until 10:30 a.m. on May 9, 2006, testified that she heard Eilman yell, call for the guards and ask to use the phone approximately four to six times but that the guards ignored her. *Id.* Holland also avers that she heard Eilman scream for approximately fifteen minutes that her heart hurt and that she could not breathe. *Id.* While she screamed, Eilman banged on the bars of her cell. *Id.* Holland was able to hear the guards joking and laughing about Eilman's complaints. *Id.* While Holland identified Heard as one of the guards that was present while Eilman was screaming, she does not know what, if any, contact she had with Eilman. *Id.* Detainee Warren, who was in the lock-up from 12:50 p.m. on May 8, 2006 to 10:23 p.m. on May 9, 2006, testified that she heard (but never saw) a woman, who she identified as both young and Caucasian, yell: "I'm sick," "help me" and "I have to go to the

hospital." *Id.* at 1073-74. Warren stated that this woman's yelling persisted for one to two hours and originated from a cell behind hers. *Id.* at 1074. Warren's cell was located in a cell block behind Eilman's with an opening facing the opposite direction. *Id.* In response to the yelling, Warren heard a guard yell "shut the fuck up," and "shut the hell up." *Id.* Finally, the Court noted Eilman's odd behavior in repeatedly yelling "bitch feed me," coupled with her general pleas for help, which unlike the ones heard by detainee Harris were not only in specific reference to her heart condition, and her prolonged screaming for hours on end. *Id.*

Despite these facts, each of which was set forth in the original opinion of this Court, the Seventh Circuit concluded that, based on the record before it, there was no genuine issue of material fact as to whether Heard violated Eilman's right to medical care because Heard did "not appear to have been responsible for evaluating Eilman's need for medical care." *Cason,* 678 F.3d at 512. It directed this Court, on remand, to find that Heard is entitled to qualified immunity on this issue "[u]nless the record has other facts that the parties have not discussed." *Id.* After reviewing the parties' supplemental submissions and Rule 56.1 statements, the Court finds that the Plaintiff has not presented any evidence, not previously considered by this Court and presented to the Seventh Circuit.

In her response, Plaintiff cites the following facts that were not presented to the Seventh Circuit: (1) Eilman was one of four detainees in the lockup when Heard came on duty; (2) Heard had access to Eilman's transmittal report, which stated that Eilman appeared to be under the influence of drugs or alcohol, arrogant, uncooperative, and was carrying medication at the time of her arrest;

(3) that Heard had access to Eilman's intake report which stated that she was irrational.[6] These facts do not establish any additional basis, not previously considered by the Seventh Circuit, that Heard had notice of Eilman's condition, much less that she was responsible for evaluating Eilman's need for medical care. (Doc. 806, at 10.)

While Heard may have had access to Eilman's intake report and transmittal report, there is no evidence that Heard reviewed either report. Thus, there is no evidence that Heard knew what those reports stated. The fact that Eilman was one of four detainees adds nothing to the record because there is no dispute that Heard was aware that Eilman was the detainee screaming. Accordingly, the Plaintiff has not identified sufficient additional evidence in the record to circumvent the Seventh Circuit's ruling that Heard was not responsible for evaluating Eilman's condition. Thus, pursuant to the Seventh Circuit's ruling, Heard is entitled to qualified immunity on this count.

### III. Unjustifiable Increase in the Risk of Harm to Eilman (Count XXXIV)

In reaching its original decision that there was a genuine issue of material fact as to whether Officer Heard violated Eilman's constitutional rights by needlessly increasing her risk of harm, this Court identified the following facts: Heard had actual knowledge of Eilman's mental health condition based on observations of her behavior while in custody. *Johnson,* 689 F. Supp. 2d at 1076. She listened to Eilman yell for an extended period of time to no one in particular that she wanted to eat, that she wanted to make a phone call, that her heart hurt and that she could not breathe. *Id.*

---

[6] Plaintiff did cite to other facts concerning Heard's knowledge of Chicago Police Department policies and procedures pertaining to arrestees generally. As this Court previously held, these facts are inadmissible and must be stricken because a violation of police orders, practices or regulations is immaterial as to the question of whether a violation of the federal constitution has been established. *See Johnson,* 689 F. Supp. 2d at 1036, n.2*; Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir 2006); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003); *Pasiewick v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001); *Stoller v. Moore*, 84 F.3d 964, 969 (7th Cir. 1996).

Before releasing her, Heard gave Eilman a property bag containing only a pair of sweatpants.[7] *Id.* at 1076-77. In spite of the fact that Heard knew that Eilman was from California and did not have family in the area, she did not provide Eilman with her phone, money, or medication. *Id.* at 1077. When Heard saw Eilman acting confused in the parking lot of the Second District Station, Heard pointed Eilman towards 51st Street; she never asked Eilman where she needed to go or if she needed directions to public transportation. *Id.* Additionally, while Heard denies seeing it, Detective Zelatoris observed Eilman gesture toward him as if to bless him by making the Sign of the Cross while standing in the station's parking lot. *Id.* Despite being aware of Eilman's bizarre behavior, Heard released and directed Eilman--a young, white woman, thousands of miles from her home--into a high crime area alone (an area that had the highest criminal sexual assault rate in Chicago) and at night with no physical means to leave the area and arguably with an impaired mental ability to think through potential options. *Id.* Heard was aware of the behavior, her inability to communicate effectively while in custody, and from her police report, Heard was also aware that her home was California and not Chicago. *Id.* Despite this knowledge, Heard directed Eilman into the area without even warning her of its dangers, let alone returning her to a safe environment, like Midway Airport. *Id.*

Despite these facts, the Seventh Circuit held that this record did not support a finding that there was a genuine issue of material fact as to whether Officer Heard needlessly increased Eilman's risk of harm because there was no evidence that Officer Heard was responsible for "making the decision to release [Eilman]." *Cason,* 678 F.3d at 512. It directed this Court, on remand, to find that

---

[7] The Court noted that although the record reflects that Eilman's property bag contained only a pair of sweatpants, there is also testimony in the record that Eilman later purchased a bottle of water at JJ Fish. However, there was nothing in the record indicating where Eilman obtained the money to purchase the water.

Heard is entitled to qualified immunity on this issue "[u]nless the record has other facts that the parties have not discussed." *Id.* After reviewing the parties' supplemental submissions and Rule 56.1 statements, the Court finds that the Plaintiff has not presented any evidence, not previously considered by this Court and presented to the Seventh Circuit, that would allow a reasonable jury to find that Heard's actions placed Eilman in dangerous situation that she would not have otherwise faced.

In her response, Plaintiff cites two facts were not presented to the Seventh Circuit: (1) Officer Heard accompanied Officer Williams to Eilman's cell to release her; and (2) Officer Heard directed Eilman to the I-Bond desk in the lockup. (Doc. 806 at 12.) This evidence shows that Heard assisted in processing Eilman's release. It does not show that Heard had input into the decision to release Eilman. Accordingly, Heard is entitled to qualified immunity on this count, pursuant to the Seventh Circuit's ruling, because Plaintiff has not identified any additional evidence in the record demonstrating that Heard was involved in the decision to release Eilman.

## CONCLUSION AND ORDER

For the reasons stated above, Defendants Carson Earnest and Pauline Heard's Motion for Summary Judgment is granted and judgment is entered in their favor.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 11, 2012